James A. Mitchell (Admitted *Pro Hac Vice*)
  MitchellJ@ballardspahr.com
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel: (646) 346-8006
Fax: (212) 223-1942

Robert S. Gutierrez (State Bar No. 143223)
  GutierrezR@ballardspahr.com
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Tel.: 424.204.4400
Fax: 424.204.4350

Attorneys for Defendants
DAVID PECKER and WORLDWIDE MEDIA
SERVICES GROUP, INC. (successor in name to
American Media, Inc.)

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DISTRICT

| | |
|---|---|
| MICHAEL SANCHEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDIA, INC., a Delaware corporation; THE NATIONAL ENQUIRER, INC., a Florida corporation; DAVID PECKER, an individual; DYLAN HOWARD, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-02924 DMG (PVCx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT (C.C.P. § 425.16)**<br><br>[*Memorandum of Points and Authorities, Declarations of Andrea Simpson, James Robertson, and Dylan Howard, and [Proposed] Order filed concurrently herewith*]<br><br>**CTRM**:  8C<br>**DATE**:  July 31, 2020<br>**TIME**:  9:30 A.M. |

DMEAST #40879627 v1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on July 31, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at 350 West 1st Street, Courtroom 8C, Los Angeles, CA, 90012, Defendants David Pecker and Worldwide Media Services Group, Inc. ("WMSG," successor in name to American Media, Inc.) (collectively, "Defendants")[1] will and hereby do move to strike the Complaint of Plaintiff Michael Sanchez ("Plaintiff") in its entirety with prejudice, pursuant to California Code of Civil Procedure ("C.C.P.") § 425.16 (California's "anti-SLAPP law").

As set forth in the accompanying Memorandum of Points and Authorities, Plaintiff's claims for libel, intentional infliction of emotional distress, conspiracy to commit intentional torts, and aiding and abetting commission of intentional torts arise out of Defendants' acts in furtherance of their constitutional right of free speech in connection with a public issue and Plaintiff cannot meet his burden of demonstrating a probability of prevailing on his claims because (i) the statements about which Plaintiff complains are true and therefore cannot be defamatory; (ii) Plaintiff's emotional distress claim is based on the same allegations as his faulty libel claim and therefore fails; and (iii) Plaintiff's conspiracy and aiding and abetting claims fail because they are based on Plaintiff's unmeritorious libel claim.

Defendants' Special Motion to Strike is based on this Notice of Motion and Special Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Andrea Simpson, James Robertson and Dylan Howard, the papers, pleadings, and evidence on file in this case, and any such additional papers, arguments and evidence as may be presented before or at the hearing of this matter.

---

[1] The Complaint lists "The National Enquirer, Inc." as a defendant but, as Defendants previously advised Plaintiff, no such corporate entity currently exists.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1  This Motion is made following the conference of counsel pursuant to Local Rule 7-

2  3 which took place on June 5, 2020.

3

4

5  DATED:    June 30, 2020        Robert S. Gutierrez
                                  James A. Mitchell (Admitted *Pro Hac Vice*)
6                                 **BALLARD SPAHR LLP**

7

8                                 By:  _/s/ Robert S. Gutierrez_____

9                                       ROBERT S. GUTIERREZ
                                  Attorneys for Defendants DAVID PECKER
10                                and WORLDWIDE MEDIA SERVICES
                                  GROUP, INC. (successor in name to
11                                American Media, Inc.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................1

II.  FACTUAL BACKGROUND ......................................................................2

III.  ARGUMENT ..............................................................................................9

    A.  Legal Standard Under California's Anti-SLAPP Statute ...................9

    B.  Plaintiff's Lawsuit Arises From Defendants' Exercise Of Their Rights Of Free Speech Concerning A Public Issue ..........................10

    C.  Sanchez Cannot Demonstrate That There Is A Probability That He Will Prevail On His Libel Claim....................................................12

        1.  The statement that Sanchez tipped off *The National Enquirer* to the story of his sister's affair with Bezos was true. ...........................................................................................13

        2.  The press release did not state or suggest that Sanchez provided AMI with pornographic materials (even though he did). .................................................................................................16

        3.  The press release did not "implicate" Sanchez as the source of the pornographic materials (even though he was the source)...............................................................................18

    D.  Sanchez Cannot Demonstrate A Probability Of Prevailing On His Libel Claim For Intentional Infliction of Emotional Distress ......20

    E.  Sanchez Cannot Demonstrate A Probability Of Prevailing On His Claim For Conspiracy To Commit Intentional Torts ..................20

    F.  Sanchez Cannot Demonstrate A Probability Of Prevailing On His Claim For Aiding And Abetting Commission Of Intentional Torts ...................................................................................................21

IV.  CONCLUSION .........................................................................................22

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Gallimore v. State Farm Fire & Casualty Ins. Co.*,
   102 Cal.App.4th 1388 (2002) ................................................................9

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) ...........................................................................21

*Austin B. v. Escondido Union School Dist.*,
   149 Cal. App. 4th 860 (2007) ..............................................................22

*Barnes-Hind, Inc. v. Superior Court*,
   181 Cal.App.3d 377 (1986) ..................................................................16

*Bartholomew v. YouTube, LLC*,
   17 Cal.App.5th 1217 (2017) .................................................................17

*Black v. Bank of America*,
   30 Cal.App.4th 1 (1994) .......................................................................21

*Brodeur v. Atlas Entertainment, Inc.*,
   248 Cal.App.4th 665 (2016) .................................................................10

*Brown v. Kelly Broad. Co.*,
   48 Cal.3d 711 (1989) ...........................................................................19

*Church of Scientology v. Wollersheim*,
   42 Cal.App.4th 628 (1996) ..................................................................12

*Damon v. Ocean Hills Journalism Club*,
   85 Cal.App.4th 468 (2000) ..................................................................11

*Fabbrini v. City of Dunsmuir*,
   544 F.Supp.2d 1044 (E.D. Cal. 2008) .................................................11

*Fellows v. National Enquirer, Inc.*,
   42 Cal.3d 234 (1986) .......................................................................7, 20

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ...............................................................11

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

*HMS Capital, Inc. v. Lawyers Title Co.*,
   118 Cal.App.4th 204 (2004) .......................................................................10

*Hughes v. Hughes*,
   122 Cal.App.4th 931 (2004) .......................................................................18

*Hustler Magazine v. Falwell*,
   485 U.S. 46 (1988) ....................................................................................20

*James v. San Jose Mercury News, Inc.*,
   17 Cal.App.4th 1 (1993) ............................................................................18

*Kidron v. Movie Acquisition Corp.*,
   40 Cal. App. 4th 1571 (1995) ....................................................................21

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ...................................................................16

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) .....................................................................17

*Manzari v. Associated Newspapers*,
   830 F.3d 881 (9th Cir. 2016) .....................................................................11

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) ...........................12

*Metabolife Intern., Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .....................................................................10

*Miller v. Nestande*,
   192 Cal.App.3d 191 (1987) .......................................................................12

*United States ex rel. Newsham v. Lockheed Missiles and Space Co.*,
   190 F.3d 963 (9th Cir. 1999) .......................................................................9

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal.App.4th 1027 (2008) ...............................................................11, 12

*Old Dominion Branch No. 496 v. Austin*,
   418 U.S. 264 (1974) ..................................................................................12

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) .....................................................................12

DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT

*Planned Parenthood Fed'n of Am. V. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ............................................................................... 10

*Shively v. Bozanich*,
  31 Cal.4th 1230 (2003) ........................................................................................ 19

*So v. Shin*,
  212 Cal.App.4th 652 (2013) ................................................................................ 20

*Stockton Newspapers, Inc. v. Superior Court*,
  206 Cal.App.3d 966 (1988) .................................................................................. 19

*Taus v. Loftus*,
  40 Cal.4th 683 (2007) .......................................................................................... 12

*Vogel v. Felice*,
  127 Cal.App.4th 1006 (2005) .............................................................................. 12

**Rules and Statutes**

California Code of Civil Procedure § 425.16 ................................................................. 1

California Code of Civil Procedure § 425.16(a) ......................................................... 10

California Code of Civil Procedure § 425.16(b)(1) ............................................. 9, 10

California Code of Civil Procedure § 425.16(c)(1) ..................................................... 22

California Code of Civil Procedure § 425.16(e) ......................................................... 10

California Code of Civil Procedure § 425.16(e)(3) ............................................. 10, 11

California Code of Civil Procedure § 425.16(e)(4) ............................................. 10, 11

Local Rule 7-3 .................................................................................................................. 2

**Treatise**

5 B.E. Witkin, California Procedure, *Pleading* § 921 (5th Ed. 2019 and
  Supp. 2020) ............................................................................................................ 21

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.   INTRODUCTION**

Plaintiff Michael Sanchez ("Sanchez") is the brother of Lauren Sanchez ("L. Sanchez"), a woman widely reported to be dating billionaire Jeff Bezos.  Sanchez's tortuous Complaint seeks to paint the picture of an international conspiracy in which he is made to be the fall guy.  When all the plainly irrelevant speculation is put aside, however, it is clear that Sanchez's libel and related claims stem solely from a 2019 press release by the publisher of *The National Enquirer* ("AMI"). Sanchez claims that the press release falsely identified him as the sole source for *The National Enquirer*'s reporting on the Bezos-L. Sanchez affair and falsely accused him of having disclosed to AMI pornographic and other indiscreet materials corroborating the affair.

The evidence demonstrates without question that Sanchez was AMI's source for the information and materials relating to the Bezos-L. Sanchez affair.  While long on fantastical conspiracy theories and obfuscation, Sanchez cannot dodge the conclusive record of his voluminous communications with AMI employees feeding details and photographs documenting the Bezos-L. Sanchez affair – all of which confirm, in indelible black ink, that the press release's identification of Sanchez as AMI's sole source was undeniably true and therefore cannot be defamatory.  The press release did not state, as Sanchez contends, that Sanchez provided AMI with pornographic materials, but even if that was insinuated, the evidence fully demonstrates that Sanchez did just that.

Because Sanchez's libel claim, and his related claims for intentional infliction of emotional distress, conspiracy and aiding and abetting, all stem from Defendants' protected First Amendment activity under California's anti-SLAPP statute, and because Sanchez cannot demonstrate a probability of prevailing on his claims, Sanchez's Complaint should be stricken forthwith.

## II.    **FACTUAL BACKGROUND**

On September 10, 2018, Andrea Simpson, Senior News Editor for American Media, received a lead for a possible story from Michael Sanchez, a Hollywood talent manager.  Sanchez relayed that a friend of his worked for a well-known, Bill Gates-type billionaire who was married and having an affair with a B-list married actress.  Declaration of Andrea Simpson ("Simpson Decl."), ¶ 2.  Simpson later informed her colleagues Dylan Howard, Chief Content Officer at American Media at the time, and James Robertson, an Editor with American Media, of the story tip she had received from Sanchez.  *Id*. ¶¶ 2-4 & Exs. A (redacted for confidentiality) & B; Howard Decl. ¶ 4 & Ex. A (redacted for confidentiality); Robertson Decl., ¶ 2 & Ex. A.

On September 26, 2018, Sanchez followed up with Simpson about the billionaire-affair story prospect.  He told her that his friend had pitched the story to the *Daily Mail* (a British publication), and had been offered $300,000.  Sanchez told Simpson that AMI would need to sign a non-disclosure agreement (NDA) before he could show her the evidence of the affair.  Simpson Decl., ¶ 5.  Simpson later sent emails to Robertson and Andy Tillett, News Editor at American Media, summarizing her conversation with Sanchez, and explaining that the NDA would need to be vague since she did not know the names of the billionaire or actress.  *Id*. & Ex. C; Robertson Decl. ¶ 3 & Ex. B.  Tillett responded by offering the name of "Evan Spiegel" as the possible mystery billionaire.  Simpson responded: "We shall see.  I've been told somewhere between Mark Zuckerberg and Michael Dell.  I'm quite curious."  Simpson Decl., ¶ 6 & Ex. D.

In a September 26, 2018 communication with Simpson, Sanchez was specific about the information he had:

> "NDA should say 'text messages & multiple photos that are deemed to be
> of a sexual and/or inappropriate nature involving, per Source's description
> a Bill Gates-type, well-known billionaire who is married and having a

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1  year-plus affair with a B-list married celebrity.'"

2  *Id.* ¶ 7 & Ex. E.

3      On September 29, 2018, Simpson asked Sanchez if they could meet to

4  discuss a possible deal for AMI to publish a story about the affair.  Simpson Decl.,

5  ¶ 8.  A couple of days later, Sanchez told Simpson that he might need more time

6  because he still didn't have "the package."  *Id.* ¶ 9.  Then, on October 3, 2018,

7  Sanchez proposed that they meet, after which Simpson informed Robertson and

8  Tillett that she was meeting with her source to see the evidence of the alleged

9  affair.  *Id.* ¶ 10 & Ex. F.

10     In a meeting on October 5, 2018, Sanchez showed Simpson text messages

11 and photographs in texts he said the billionaire had sent the actress.  Sanchez did

12 not show Simpson faces or reveal the names of the billionaire and actress.

13 Sanchez assured Simpson that if they made a deal, AMI could send a photographer

14 to capture photographs of secret meetings between the billionaire and the actress.

15 *Id.* ¶ 11.

16     On October 7, 2018, Simpson relayed the following to Robertson:

17     "Met with source

18     He is still not giving me the name or copies of texts.

19     But I did see photos from the texts, no faces.

20     He says the billionaire is in his 50s.  Prob top 7 in the world.  Just doing

21     a look around and by the body, I think it may be Jeff Bezos.

22     Source says his wife is also famous and the mistress's husband is also

23     famous.

24     Texts are sexy and he's in love with the mistress—I've been told they

25     plan on separating from their wife/husband soon.

26     And if we make a deal, we can send a photog [to] get pics of them

27     secretly meeting up."

28  *Id.* ¶ 12 & Ex. G; Robertson Decl., ¶ 5 & Ex. D.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1   On October 12, 2018, Sanchez asked Simpson about the status of the NDA

2   and advised that his friend was going to go with the *Daily Mail* if AMI did not

3   make a deal by the following day.  Simpson Decl., ¶ 13.

4   On October 16, 2018, Sanchez sent Howard an email stating that he was

5   willing to reveal to him the identity of "Bill" – the placeholder for the billionaire's

6   real identity – if it would help finalize negotiations of an NDA with AMI relating to

7   the information and evidence Sanchez claimed to have about the billionaire affair

8   story.  Howard Decl., ¶ 6 & Ex. B.

9   With respect to the identity of the billionaire, Simpson sent an email to

10  Howard on October 16, 2018, stating in part:

11  "Michael said he was going to call you to give you the name.

12  Doesn't have authority or permission to give it to me.

13  Which is absolutely ridiculous.  So you both can discuss separately.

14  If/when he gives it to you, please let me know."

15  Simpson Decl., ¶ 14 & Ex. H; Howard Decl., ¶ 7 & Ex. C.

16  On October 17, 2018, Sanchez sent Robertson an email asking for financial

17  parameters for selling AMI the story about "Jeff Bezos having love affair with a

18  married celebrity," and requesting "at least $300,000 for the story."  Robertson

19  Decl., ¶ 6 & Ex. E.

20  On October 18, 2018, Simpson wrote to Howard:

21  "Thanks for talking to Michael.  Hope he gave you the name so we

22  have some clearer picture of what we're dealing with.  You allowed

23  to tell me?"

24  Howard responded later that day, replying: "Bezos."  This was the first time

25  Simpson learned the identity of the billionaire.  Simpson Decl., ¶ 15 & Ex. I;

26  Howard Decl., ¶ 10 & Ex. D.

27  Sanchez and AMI entered into a Non-Disclosure and Confidentiality

28  Agreement dated as of October 18, 2018.  AMI and Sanchez later entered into an

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1   Exclusive Publishing Agreement relating to information, photographs, and text

2   messages documenting an affair between Bezos and L. Sanchez.  Pursuant to that

3   agreement, Sanchez was paid $200,000 – the most money Howard and Robertson

4   believe AMI has ever paid a source for a story.  Robertson Decl., ¶¶ 7, 9; Howard

5   Decl., ¶ 9.

6         On October 23, 2018, Sanchez met in New York with Howard and Robertson

7   to discuss the evidence he had about Bezos' affair.  Sanchez revealed that the

8   actress involved was his sister, Lauren Sanchez, and he informed them that he had a

9   below-the-belt selfie that Bezos had texted her.  Sanchez told them that he would

10  show them the photograph at a later date.  Sanchez showed Robertson a flash drive

11  containing a summary of text messages and several revealing photographs he said

12  Bezos had sent to Lauren Sanchez.  The photographs included Bezos shirtless,

13  some with a towel around his waist, and two photographs of a woman in a tight, red

14  dress that revealed her cleavage.  Robertson Decl., ¶ 8 & Ex. F; Howard Decl., ¶

15  11.  That same day, Sanchez sent an email to Robertson attaching this material.

16  Robertson Decl., ¶ 8 & Ex. F (redacted for confidentiality).

17        On October 23, 2018, Simpson learned from Howard that the woman having

18  the affair with Bezos was Sanchez's sister.  This was the first time Simpson learned

19  the identity of the woman having an affair with Bezos.  Simpson Decl., ¶ 16.

20        On November 1, 2018, Robertson sent an email to Sanchez and Howard,

21  stating that he "would like to be on FaceTime for the big, ahem, reveal."   The

22  reference was to Sanchez's statement at the October 23, 2018 meeting in New York

23  that he would show them Bezos' below-the-belt selfie.  Sanchez responded:

24  "Sounds great.  Looking forward to seeing you and sharing my big, uh, um, news."

25  Robertson Decl., ¶¶ 10, 11 & Ex. G; Howard Decl., ¶¶ 12, 14 & Ex. E.

26        On November 11, 2018, Sanchez provided Simpson with specifics about the

27  travel plans of Bezos and Lauren Sanchez, information which she later shared with

28  Robertson.  Simpson Decl., ¶ 17.

On November 12, 2018, Sanchez sent Robertson an email that stated in part: "Here are the screenshots (some duplicates and some you may not have seen yet)." Robertson Decl., ¶ 13 & Ex. H (redacted for confidentiality).

On November 19, 2018, seeking further corroboration of the alleged affair, Robertson asked Simpson if Bezos had given Lauren Sanchez any gifts. When Simpson inquired, Sanchez informed her that Bezos had given Lauren a drinking flask, and Simpson relayed this to Robertson. Simpson Decl., ¶ 18; Robertson Decl., ¶ 14.

On November 21, 2018, Simpson met with Sanchez in Los Angeles. Robertson and Howard participated in the meeting remotely via FaceTime. Simpson Decl., ¶ 19; Robertson Decl., ¶ 15; Howard Decl., ¶ 15. During the meeting, Sanchez showed Simpson a printed photograph of what Sanchez said was a below-the-belt selfie of Bezos. Sanchez said that Bezos had texted the selfie to Lauren Sanchez, and that Lauren had later shared the photo with Sanchez through the Signal messaging app – a digital messaging service that uses end-to-end encryption to allow users to communicate without leaving a trail. Sanchez said that he had printed a screenshot of the photograph. *Id.* Robertson and Howard witnessed all of this via FaceTime. Robertson Decl., ¶ 15; Howard Decl., ¶ 15.

Later that day, Sanchez sent a follow-up email to Robertson and Howard, confirming that he had provided "Confidential Information" to AMI and was "looking forward to hearing Andrea [Simpson] describe" the below-the-belt selfie. Robertson Decl., ¶ 15 & Ex. I; Howard Decl., ¶ 15 & Ex. F.

On November 23, 2018, Howard requested Simpson to ask Sanchez if he was receiving the cooperation of Bezos and Lauren Sanchez when providing AMI with information about the affair. Simpson Decl., ¶ 20. On November 27, 2018, Simpson, after having asked Sanchez, responded to Howard: "He says Lauren and Jeff are NOT in cooperation with him. Neither one have a clue." *Id.* ¶ 21 & Ex. J. Later that day, Sanchez provided Simpson with personal information about his

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1  sister's and Bezos's respective marital situations.  Simpson passed the information

2  along to Howard and Robertson.  *Id*. ¶ 22; Robertson Decl., ¶ 16.  On November 29

3  and 30, 2018, Sanchez provided Simpson with more personal information about

4  Bezos and Lauren Sanchez, including their upcoming travel plans.  Simpson later

5  relayed this information to Howard and Robertson.  Simpson Decl., ¶¶ 23-24;

6  Robertson Decl., ¶¶ 17, 18.

7  　　　　On January 9, 2019, the *National Enquirer* published an article entitled,

8  "Married Amazon Boss Jeff Bezos Getting Divorce Over Fling With Movie

9  Mogul's Wife."  This was the first article the *National Enquirer* published about

10  the Bezos-Sanchez affair.  Robertson Decl., ¶ 21; Howard Decl., ¶ 20.

11  　　　　On March 30, 2019, an op-ed piece by Bezos' security consultant, Gavin de

12  Becker, was published in *The Daily Beast*.  Entitled "Bezos Investigation Finds the

13  Saudis Obtained His Private Data, de Becker wrote, in part:

14  　　　　"AMI has repeatedly insisted they had only one source on their

15  　　　　Bezos story, but the *Journal* reports that when the *Enquirer*

16  　　　　began conversations with Michael Sanchez, they had "already

17  　　　　been investigating whether Mr. Bezos and Ms. Sanchez were

18  　　　　having an affair."  Michael Sanchez has since confirmed to

19  　　　　Page Six that when the *Enquirer* contacted him back in July,

20  　　　　they had already "seen text exchanges" between the couple.

21  　　　　If accurate, the *WSJ* and Page Six stories would mean, clearly

22  　　　　and obviously, that the initial information came from other

23  　　　　channels—another source or method."

24  　　　　Directly under this statement in de Becker's op-ed – as a post-publication

25  *Daily Beast* update on March 31, 2019 – appeared the following statement:

26  　　　　"*[On Sunday, AMI issued a statement insisting that "it was*

27  　　　　*Michael Sanchez who tipped the National Enquirer off to the*

28  　　　　*affair on September 10, 2018, and over the course of four months*

DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT

1    *provided all of the materials for our investigation."*

2    *<u>Read the full statement here</u>. – ed.]*"

3    Robertson Decl., ¶ 19 & Ex. J; Howard Decl., ¶ 17 & Ex. G.

4         The update linked to a March 31, 2019 *Daily Beast* article entitled "National

5    Enquirer Says Saudis Didn't Help on Bezos Story."  The article stated that the

6    "*National Enquirer's* parent company said it had one and only one source for its

7    blockbuster exposé of Jeff Bezos: Michael Sanchez, the brother of Bezos'

8    girlfriend Lauren Sanchez."  Consistent with the fact that there was no Saudi

9    involvement in AMI's investigation or reporting of the affair between Bezos and

10   Lauren Sanchez, the article reported that an American Media spokesman responded

11   to de Becker's *Daily Beast* op-ed with the following:

12        *Despite the false and unsubstantiated claims of Mr. de*

13        *Becker, American Media has, and continues to, refute the*

14        *unsubstantiated claims that the materials for our report*

15        *were acquired with the help of anyone other than the*

16        *single source who first brought them to us. The fact of*

17        *the matter is, it was Michael Sanchez who tipped the*

18        *National Enquirer off to the affair on Sept. 10, 2018, and*

19        *over the course of four months provided all of the materials*

20        *for our investigation.  His continued efforts to discuss and*

21        *falsely represent our reporting, and his role in it, has waived*

22        *any source confidentiality.  There was no involvement by any*

23        *other third party whatsoever.*

24   Robertson Decl., ¶ 20 & Ex. K; Howard Decl., ¶ 18 & Ex. H.

25        This press release is the sole basis for Sanchez's claims in this lawsuit.

26   (Cmpt., ¶¶ 6, 62-67, 72).  Sanchez alleges that this statement was "intentionally

27   false and defamatory" in three ways.

28        *First*, Sanchez claims that he did not tip *The National Enquirer* off to the

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

affair on September 10, 2018, alleging that Defendants first contacted *him* about the affair in July 2018.  (Cmpt. ¶ 63).  Sanchez contends that he then sought to "delay and soften the inevitable public disclosure of the affair."  *Id.*

*Second*, Sanchez alleges that the statement about Sanchez's "continued efforts" to "falsely represent [AMI's] reporting, and his role in it" referred to his previous and public denials that he had provided Defendants with Pornographic Materials, even though, according to  Sanchez,  he never provided Defendants with Pornographic Materials.  (Cmpt., ¶ 66).

*Third*, and similarly, Sanchez claims that the statements that he "provided all of the materials for [AMI's] investigation" and "[t]here was no involvement by any other party whatsoever" implicated Sanchez as AMI's "single source," including of Pornographic Materials and other materials that Sanchez claims he did not provide to Defendants.  (Cmpt., ¶ 67).

## III.  **ARGUMENT**

### A.   **Legal Standard Under California's Anti-SLAPP Statute**

California's Anti-SLAPP statute provides an expedited procedure whereby a defendant can file a special motion to strike unmeritorious lawsuits that arise "from any act of [defendant] in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  C.C.P. §425.16(b)(1) (brackets added).  The special motion to strike "shall" be granted unless the plaintiff can demonstrate "there is a probability that the plaintiff will prevail on the claim."  *Id.*  The Ninth Circuit permits anti-SLAPP motions in federal court diversity actions.  *United States ex rel. Newsham v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).  "The goal is to eliminate meritless or retaliatory litigation at an early stage of the proceedings."  *Gallimore v. State Farm Fire & Casualty Ins. Co.*, 102 Cal.App.4th 1388, 1396 (2002).  To confirm the broad application of the anti-SLAPP statute, the California Legislature amended the statute in 1997 to

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1   expressly state that it should be "construed broadly." C.C.P. § 425.16(a).

2       The Court employs a two-step process in evaluating a special motion to

3 strike. It "first looks to see whether the moving party has made a threshold

4 showing that the challenged causes of action arise from protected activity. . . .  If

5 the moving party meets this threshold requirement, the burden then shifts to the

6 other party to demonstrate a probability of prevailing on its claims." *Brodeur v.*

7 *Atlas Entertainment, Inc.,* 248 Cal.App.4th 665, 674 (2016). *See also Metabolife*

8 *Intern., Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (applying California's

9 anti-SLAPP statute).

10       A plaintiff opposing an anti-SLAPP motion must produce evidence that

11 would be admissible at trial to meet his burden. *HMS Capital, Inc. v. Lawyers Title*

12 *Co.,* 118 Cal.App.4th 204, 212 (2004). If he cannot do so, the Court must strike the

13 Complaint. C.C.P. § 425.16(b)(1). "A defendant's anti-SLAPP motion should be

14 granted when a plaintiff presents an insufficient legal basis for his or her claims or

15 when no sufficiently substantial evidence exists to support a judgment for him or

16 her." *Planned Parenthood Fed'n of Am. V. Ctr. for Med. Progress*, 890 F.3d 828,

17 833 (9th Cir. 2018).

18
19   **B.**    **Plaintiff's Lawsuit Arises From Defendants' Exercise Of Their Rights Of Free Speech Concerning A Public Issue**

20       The statements about which Plaintiff complains constitute two types of

21 protected activity under C.C.P. § 425.16(e):

22       (1)    "[a] statement . . . made in a place open to the public or a public

23             forum in connection with an issue of public interest," C.C.P.

24             § 425.16(e)(3) (brackets added); and

25       (2)    "conduct in furtherance of the exercise of the constitutional right

26             of . . . free speech in connection with a public issue or an issue of

27             public interest. C.C.P. § 425.16(e)(4).

28 Because the statements about which Sanchez complains were contained in a

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1  press release,[2] they were made in a public forum, as it is well-settled that press

2  releases and news articles fall within the ambit of a public forum for purposes of

3  the anti-SLAPP statute.  *See Damon v. Ocean Hills Journalism Club*, 85

4  Cal.App.4th 468, 476 (2000) (newsletter was  public forum); *Fabbrini v. City of*

5  *Dunsmuir*, 544 F.Supp.2d 1044, 1050-51 (E.D. Cal. 2008) ("The city's press

6  release and the 'news articles' constituted statements in public fora" for purposes of

7  California's Anti-SLAPP statute); *Manzari v. Associated Newspapers*, 830 F.3d

8  881, 887 (9th Cir. 2016) ("Having published an article on a topic of public interest

9  . . . , the Daily Mail easily satisfied its initial burden."); *Nygard, Inc. v. Uusi-*

10  *Kerttula*, 159 Cal.App.4th 1027, 1038 (2008) ("We conclude that newspapers and

11  magazines are public fora within the meaning of section 425.16, subdivision

12  (e)(3).")

13      The statements were also made "in connection with an issue of public

14  interest" within the meaning of C.C.P. § 425.16(e)(3) and (4).  The Ninth Circuit

15  requires that courts, in applying California's anti-SLAPP statute, "must

16  construe . . . 'issue of public interest' broadly" so as to include any "topic of

17  widespread, public interest" or "person . . . in the public eye."  *Hilton v. Hallmark*

18  *Cards*, 599 F.3d 894, 906-907 (9th Cir. 2010).  An issue of public interest is *any*

19  *issue in which the public is interested*" and encompasses the lives of the rich and

20  famous.  *Nygard*, 159 Cal.App.4th at 1042 (emphasis in original).

21      Sanchez concedes in his Complaint that the Bezos-Sanchez affair, including

22  the identity of Defendants' source for the story and evidence of the affair, was a

23  matter of great public interest.  Indeed, the Complaint emphasizes an investigation

24  by Bezos into the source of the leaks of his text messages to Lauren Sanchez, and

25  proffers the theory that Bezos' phone was hacked by Saudi Arabia.  (Cmpt., ¶¶ 32-

26  _____

27  [2] *See* Cmpt., ¶ 6 ("Defendants issued a false and defamatory press release"); ¶ 61

28  ("Defendants rushed to issue a defamatory responsive "statement" to the press").

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

41).  Bezos' investigation and the Saudi hacking theory received widespread media attention.  *See*, *e.g.*, Exs. G & H to Howard Decl.; Ex. 4 to Cmpt.  The issue of leaks concerning a public figure like Bezos, one of the richest men in the world, easily meets the public interest standard under California law.  *Nygard*, 159 Cal.App.4th at 1042; *see also Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628, 651 (1996) (public interest demonstrated by media coverage).

Because Defendants have demonstrated that the anti-SLAPP statute applies, the burden shifts to Sanchez to come forward with admissible evidence demonstrating a probability he will prevail on his claims.  For the reasons set forth below, Sanchez cannot do so.

### C. Sanchez Cannot Demonstrate That There Is A Probability That He Will Prevail On His Libel Claim

The elements of a libel claim are: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.  *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007).  "The sine qua non of recovery for defamation . . . is the existence of falsehood."  *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 283 (1974).  A "public or private figure libeled by allegations relating to matters of public concern must prove those statements to be false."  *Miller v. Nestande*, 192 Cal.App.3d 191, 198 (1987).  "The plaintiff cannot be said to have carried this burden so long as the statement appears *substantially* true."  *Vogel v. Felice*, 127 Cal.App.4th 1006, 1021 (2005) (emphasis in original).  Inaccuracy in the details is not actionable as long as the "gist" or "sting" of the remark is justified.  *Id.*; *Partington v. Bugliosi*, 56 F.3d 1147, 1161 (9th Cir. 1995).  "Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (quoting R. Sack, Libel, Slander, and Related Problems 138 (1980)).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

Here, Sanchez cannot meet his burden of demonstrating a probability of prevailing on his libel claim because the challenged statements are indisputably true.

### 1. The statement that Sanchez tipped off *The National Enquirer* to the story of his sister's affair with Bezos was true.

The evidence demonstrates that the statement that Sanchez tipped *The National Enquirer* off to the affair on September 10, 2018 is indeed true, and Sanchez did in fact leak his own sister's affair with Bezos to Defendants. Sanchez simply cannot rebut the overwhelming evidence showing, among other things, that:

(a)   On September 10, 2018, Sanchez gave Simpson a lead on a story about a billionaire having an affair with a married actress. This fact is corroborated by Simpson's contemporaneous email to Howard informing him about the tip. Simpson Decl. ¶ 2 & Ex. A; Howard Decl., ¶ 4 & Ex. A.

(b)   The identity of the billionaire was still unknown to Defendants as of September 26, 2018, as evidenced by the proposed NDA's reference only to "a Bill Gates-type, well-known billionaire who is married and having a year-plus affair with a B-list married celebrity." Simpson Decl., ¶ 7 & Ex. E.

(c)   The identity of the billionaire was still unknown to Defendants as of October 7, 2018, as evidenced by Simpson's email to Robertson and Tillett stating that she had met with the source but "[h]e is still not giving me the name or copies of texts" and "Source says his wife is also famous and the mistress's husband is also famous." Simpson Decl., ¶ 12 & Ex. G; Robertson Decl., ¶ 5 & Ex. D.

(d)   Sanchez acknowledged that he was Defendants' only source for the billionaire affair story when, on October 12, 2018, he threatened that the story would go to the *Daily Mail* if AMI did not make a deal by the

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1   following day.  Simpson Decl. ¶ 13.

2   (e)   Although AMI staff speculated that the billionaire was Bezos based on

3   general details provided by Sanchez, his identity was still unknown to

4   Defendants as of October 16, 2018, as evidenced by Sanchez's email

5   to Howard stating that he was willing to reveal the identity of "Bill" –

6   the placeholder name for the billionaire's actual name – if it would

7   help finalize negotiations of the NDA.  Howard Decl., ¶ 6 & Ex. B.

8   Simpson's email to Howard that same day, stating that Sanchez

9   planned to call Howard to reveal the name and asking Howard to let

10   her know when he did so, further corroborates the fact that Defendants

11   did not know the billionaire's identity as of October 16, 2018.

12   Simpson Decl., ¶ 14; Howard Decl., ¶ 7.

13   (f)   Howard did not know that the billionaire was Bezos until on or about

14   October 18, 2018, as evidenced by Simpson's email asking Howard if

15   Sanchez had given him the billionaire's name during their phone call,

16   and Howard's email responding, "Bezos."  Simpson Decl., ¶ 15 & Ex.

17   I; Howard Decl. ¶ 10 & Ex. D.

18   (g)   The identity of the married woman having the affair with Bezos was

19   unknown to Defendants until October 23, 2018, when Sanchez

20   disclosed for the first time to Howard and Robertson (and Howard

21   then passed the information on to Simpson) that the  woman  was his

22   sister, Lauren Sanchez.  Robertson Decl., ¶ 8; Howard Decl., ¶ 11.

23   Thus, the evidence plainly establishes that, contrary to Sanchez's claim,

24   Sanchez did leak his own sister's affair with Bezos to Defendants.  It was ***not***

25   Defendants who first contacted Sanchez about the affair.  Accordingly, the

26   statement that "it was Michael Sanchez who tipped the *National Enquirer* off to the

27   affair on September 10, 2018" is true and cannot, as a matter of law, be defamatory.

28   Indeed, Sanchez's allegations to the contrary are not only belied by the

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

evidence, they are simply illogical.  Sanchez alleges that Simpson called him in July 2018 and purportedly "revealed that AMI and TNE [*The National Enquirer*] were looking into his sister's affair" and that he thereafter agreed to meet with her, "[u]sing the cover of 'a friend of a client who works for a Bill Gates-type billionaire is interested in selling a story about the billionaire's extramarital affair with a B-list actress." (Cmplt., ¶ 43).  The evidence, however, demonstrates that *Simpson first received a tip* – and from Sanchez himself – *two months later*. Logically, if Simpson *had* approached Sanchez about his sister's affair, Sanchez would have had no reason to make up a cover in the first place or mask the identities of the billionaire and actress.  He simply would have confirmed the affair to Simpson.  Nor would there have been any reason to pay Sanchez an exorbitant sum of money for information AMI would already have had.

Similarly unavailing is Sanchez's allegation that a January 22, 2019 email from Howard "admitted . . . "that Defendants had first uncovered the Bezos/ Sanchez affair from another source." (Cmplt., ¶ 64).  Sanchez quotes Howard as stating, "The untold story – if you will – has not been told as to how we uncovered the story.  I'm saving it for my tombstone."  *Id.*  No part of Howard's statement suggests that he had any source other than Sanchez.  Rather, recognizing Sanchez's concern about being identified as the source, Howard assured Sanchez that it was part of Howard's long-standing journalistic ethic not to reveal source identities (which is why he referenced his "tombstone") and that he had no intention of disclosing the extraordinary and as-of-yet "untold story" that it was the brother of Bezos's mistress who leaked all of the details and information about his own sister's affair.   Howard Decl., ¶ 23 & Ex. I.

Given the overwhelming evidence demonstrating the truth of the statement that Sanchez tipped *The National Enquirer* off to the affair in September 2018, Sanchez's self-serving, uncorroborated, and illogical allegations to the contrary – all of which are disproven by the voluminous documentary evidence – are

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1 insufficient for Sanchez to overcome his burden of establishing a probability of

2 prevailing on his claim that the statement was false.

### 2. The press release did not state or suggest that Sanchez provided AMI with pornographic materials (even though he did).

5       Sanchez claims that AMI's statement about his "continued efforts" to

6 "falsely represent [AMI'S] reporting, and his role in it" referred to his denials that

7 he had provided Defendants with pornographic materials. However, the press

8 release does not state that Sanchez provided AMI with pornographic materials, and

9 the facts and circumstances surrounding the press release do not support Sanchez's

10 proffered innuendo. *Barnes-Hind, Inc. v. Superior Court*, 181 Cal.App.3d 377, 387

11 (1986) ("[W]here the language is ambiguous and an explanation is necessary to

12 establish the defamatory meaning, the pleader must do two things: (1) Allege his

13 interpretation of the defamatory meaning of the language (the 'innuendo,' …);

14 (2) support that interpretation by alleging facts showing that the readers or hearers

15 to whom it was published would understand it in that defamatory sense (the

16 'inducement').")

17       AMI's statement was published in the *Daily Beast* the day after, and in direct

18 response to, de Becker's op-ed reference to Sanchez's claim that AMI already

19 knew about the Bezos affair and had approached him for details, thus leading

20 possible credence to the theory of a Saudi connection to the leaks. *The Daily Beast*

21 positioned a link to AMI's press release directly after de Becker's statement that it

22 was possible that "the initial information [about the Bezos affair] came from other

23 channels" since Sanchez claimed (as he does here) that AMI approached *him* about

24 the Bezos affair. Such positioning confirms that AMI's statement about Sanchez's

25 "continued efforts to discuss and falsely represent our reporting, and his role in it"

26 referred to Sanchez's claim that he was not the one who had tipped off *The*

27 *National Enquirer* about the affair. *See Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th

28 Cir. 2005) ("When evaluating the threshold question of whether a statement is

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

reasonably capable of sustaining a defamatory meaning, we must interpret the statement 'from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made.'"), citing *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993) (citation omitted)*; Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) ("Context does resolve the matter.")  Indeed, as Defendants' evidence demonstrates, Sanchez *was* Defendants' source for the Bezos affair.  Thus, Defendants' statement that Sanchez was falsely denying that fact was true and therefore could not be defamatory.

Sanchez does not and cannot prove the requisite "inducement, that is to say, circumstances which would indicate that the words were understood in a defamatory sense showing that the situation or opinion of the readers was such that they derived a defamatory meaning from them." *Bartholomew v. YouTube, LLC*, 17 Cal.App.5th 1217, 1227 (2017).  Of course, even if Sanchez could demonstrate that readers would interpret AMI's statement as meaning that Sanchez provided AMI with pornographic materials related to the affair, the statement still would not be defamatory because the evidence demonstrates that Sanchez *did* share with AMI a below-the-belt selfie of Bezos.  Simpson Decl., ¶ 19; Robertson Decl., ¶ 15; Howard Decl., ¶ 15.  And this is entirely consistent with the fact that Sanchez wrote to Simpson on September 26, 2018 that the NDA should describe the information that he had as "text messages & multiple photos that are ***deemed to be of a sexual and/or inappropriate nature***."  Simpson Decl. ¶ 7 & Ex. E (emphasis added).  The evidence establishes not only that Sanchez had the below-the-belt selfie of Bezos, but that he knew how to describe it and was looking to disclose it to Defendants.  Indeed, after sharing the photo with Simpson, Sanchez wrote to Robertson and Howard that he was "looking forward to hearing Andrea describe it."  Robertson Decl., ¶ 15 & Ex. I; Howard Decl., ¶ 15 & Ex. F.

The record also demonstrates that on October 23, 2018 Sanchez provided Robertson with copies of several provocative photographs – many of which are the

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1  same ones that Sanchez describes in his Complaint as "Pornographic Materials."

2  (Cmpt., ¶ 57); Robertson Decl., ¶ 8 & Ex. F; Howard Decl., ¶ 11.

3      Therefore, even under Sanchez's unreasonable interpretation, the statement

4  would be substantially true because it does not "alter the complexion of the

5  essential facts." *James v. San Jose Mercury News, Inc.*, 17 Cal.App.4th 1, 17

6  (1993) (statement in newspaper column that plaintiff public defender violated

7  California law, when in fact the person who committed the violation was an

8  investigator working on public defender's team, was substantially true); *Hughes v.*

9  *Hughes*, 122 Cal.App.4th 931, 936, 939 (2004) (filmmaker defendant's statement

10  "Our dad's a pimp" was substantially true, given "substantial evidence that plaintiff

11  had engaged in pimping" in the past).  The fact that Sanchez showed Simpson a

12  print-out of a below-the-belt selfie that he told her Bezos had texted to Lauren

13  Sanchez – and with Howard and Robertson participating by FaceTime –

14  demonstrates that Sanchez did provide Defendants with material he himself

15  described as pornographic.

16          **3.    The press release did not "implicate" Sanchez as the source**
               **of the pornographic materials (even though he was the**
17              **source).**

18      Sanchez similarly alleges that the statement that Sanchez "provided all of the

19  materials for [AMI's] investigation" and "[t]here was no involvement by any other

20  party whatsoever" implicated Sanchez as the "single source" who provided

21  Defendants with pornographic materials.  (Cmpt., ¶ 67).  Again, however, the press

22  release makes no such statement, the facts and circumstances do not support

23  Sanchez's interpretation, and the evidence demonstrates that Sanchez was indeed

24  AMI's sole source of personal details and evidence of the affair.  The evidence also

25  demonstrates, in vivid detail, that Sanchez not only had a below-the-belt selfie of

26  Bezos, but bragged to AMI about "sharing [his] big, uh, um, news," and showed

27  the photograph to AMI.  Robertson Decl., ¶ 15 & Ex. I; Howard Decl., ¶ 15 & Ex.

28  F.  The statement is thus substantially true.  And while Sanchez claims that the

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

1    press release statements suggest that Sanchez had supplied Defendants with

2    pornographic materials depicting his sister (Cmpt., ¶ 72), nothing in the challenged

3    statements, or any of *The National Enquirer*'s articles on the Bezos-Sanchez affair

4    make any hint, much less statement, that Sanchez  provided pornographic materials

5    of Lauren Sanchez.

6        Nor does Sanchez's claim that he "did not provide Defendants with . . . many

7    of the other materials included in TNE stories about the affair" (Cmpt., ¶ 67)

8    support a libel claim.  Because Sanchez does not identify what these purported

9    materials are, he cannot establish that he was defamed – *i.e.*, "expose[d] . . . to

10   contempt or ridicule or certain other reputational injuries" – by being identified as

11   Defendants' source for them.  *Shively v. Bozanich*, 31 Cal.4th 1230, 1242 (2003).

12       Moreover, given the evidence of Sanchez meeting with Simpson in person to

13   share evidence of Bezos' below-the-belt selfie, Sanchez cannot demonstrate that his

14   reputation would be injured by a statement that he had provided Defendants with

15   something less personal and inappropriate.  *See Stockton Newspapers, Inc. v.*

16   *Superior Court*, 206 Cal.App.3d 966, 983 (1988) ("none of the claimed

17   inaccuracies raise a triable issue of material fact because they do not materially

18   advance or enhance the sting of the account"), *disapproved on other grounds*,

19   *Brown v. Kelly Broad. Co.*, 48 Cal.3d 711 (1989).  Of course, Defendants' evidence

20   establishes that Sanchez did in fact provide Defendants with a slew of personal text

21   messages and numerous photographs exchanged between Bezos and Lauren

22   Sanchez, as well as information about their respective travel plans and personal

23   marital situations.  Robertson Decl., ¶¶ 8, 12-13, 15-18 & Exs. F, H & I; Howard

24   Decl., ¶¶ 11, 15 & Ex. F; Simpson Decl., ¶¶ 11-12, 17-19, 22-24.

25       Thus, Sanchez cannot demonstrate that the statement that he and he alone

26   provided all of the materials for AMI's investigation was defamatory.

27       Because Sanchez cannot demonstrate a probability of prevailing on his claim

28   that the press release published in *The Daily Beast* was defamatory, Defendants'

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT

special motion to strike Sanchez's libel claim should be granted.

### D.    Sanchez Cannot Demonstrate A Probability Of Prevailing On His Libel Claim For Intentional Infliction of Emotional Distress

U.S. Supreme Court case law precludes a defamation plaintiff from successfully pleading alternative theories in an effort to avoid First Amendment restrictions.  *See Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988).  In the same vein, California courts do not permit a plaintiff to prevail on a claim for intentional infliction of emotional distress where, as here, it is based solely on speech-related acts that cannot support a claim for libel.  *Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 245 (1986) ("to allow an independent cause of action for the intentional infliction of emotional distress, based on the same acts which would not support a defamation action, would allow plaintiffs to do indirectly what they could not do directly").

Thus, because Sanchez cannot prevail on his libel claim, he similarly cannot prevail on his claim for intentional infliction of emotional distress which is based on the same alleged acts.  Moreover, given that the challenged statements were made in response to statements made by Sanchez – to the effect that he had not approached Defendants with the tip about the Bezos-L. Sanchez affair – Sanchez cannot demonstrate that Defendants' conduct was "extreme and outrageous and exceeded the bounds tolerated in a civilized society."  Cmpt., ¶ 78; *So v. Shin*, 212 Cal.App.4th 652, 671 (2013) (intentional infliction of emotional distress requires extreme and outrageous conduct that exceeds all bounds of decency in a civilized society).  Accordingly, Sanchez cannot demonstrate a probability of prevailing on his claim for intentional infliction of emotional distress.

### E.    Sanchez Cannot Demonstrate A Probability Of Prevailing On His Claim For Conspiracy To Commit Intentional Torts

"*Conspiracy is not a cause of action*, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves,  share

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-511 (1994) (emphasis added).  An allegation of conspiracy may, however, be pleaded as part of a tort claim to hold people liable who did not directly participate in the commission of the tort.  5 B.E. Witkin, California Procedure, *Pleading* § 921 (5th Ed. 2019 and Supp. 2020).   To prove conspiracy, "[a plaintiff is] required to provide substantial evidence of three elements: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (brackets added).  The Complaint alleges that Defendants participated in a conspiracy with each other to defame Sanchez and scapegoat him in an effort to conceal Defendants' actual source of the pornographic materials.  (Cmpt., ¶ 82).  Because Sanchez cannot demonstrate a probability of prevailing on his defamation claim, he similarly cannot prevail on his conspiracy claim that is based on the alleged defamation.

Additionally, "[i]t has long been the rule in California that '[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.'" *Black v. Bank of America*, 30 Cal.App.4th 1, 4 (1994), quoting *Wise v. Southern Pacific Co.*, 223 Cal.App.2d 50, 72 (1963).  Indeed, because a corporation is "a legal fiction that cannot act at all except through its employees and agents," and because "[a] corporation cannot conspire with itself any more than a private individual can" (*Black*, 30 Cal.App.4th at 6), further grounds support dismissal of the conspiracy claim.

**F.    Sanchez Cannot Demonstrate A Probability Of Prevailing On His Claim For Aiding And Abetting Commission Of Intentional Torts**

While liability may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

duty and gives substantial assistance or encouragement to the other to so act (*Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 879 (2007)), it requires the commission of an intentional tort.  Because Sanchez cannot demonstrate a probability of prevailing on his claims for libel or intentional infliction of emotional distress, he similarly cannot demonstrate a probability of prevailing on his claim for aiding and abetting the commission of intentional torts.

## IV.   <u>CONCLUSION</u>

Despite the drama and intrigue Sanchez seeks to create, his Complaint boils down to the simple allegation that he was libeled by being identified as the source for AMI's information and evidence for its reporting of the Bezos-L. Sanchez affair – after Sanchez falsely stated to the public that he was not the source.  Because Defendants have established that the statements in the challenged press release are true, Sanchez cannot demonstrate a probability of prevailing on his claims.  Accordingly, Defendants respectfully request that the Court strike Sanchez's Complaint with prejudice and award attorneys' fees and costs to Defendants under C.C.P. § 425.16(c)(1).

DATED:    June 30, 2020          Robert S. Gutierrez
                                 James A. Mitchell (Admitted *Pro Hac Vice*)
                                 **BALLARD SPAHR LLP**

                                 By:   /s/ Robert S. Gutierrez
                                      ROBERT S. GUTIERREZ
                                 Attorneys for Defendants DAVID PECKER
                                 and WORLDWIDE MEDIA SERVICES
                                 GROUP, INC. (successor in name to
                                 American Media, Inc.)

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400