Jeremy S. Goldman (SBN 306943)
jgoldman@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone:  (310) 579-9600
Facsimile:   (310) 579-9650

Attorneys for Defendant
DYLAN HOWARD

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DISTRICT

| | |
|---|---|
| MICHAEL SANCHEZ, an individual,<br><br>           Plaintiff,<br><br>      vs.<br><br>AMERICAN MEDIA, INC., a Delaware corporation; THE NATIONAL ENQUIRER, INC., a Florida corporation;  DAVID PECKER, an individual; DYLAN HOWARD, an individual; and DOES 1 through 10, inclusive,<br><br>           Defendants. | Case No. 2:20-cv-02924 DMG (PVCx)<br><br>**DEFENDANT DYLAN HOWARD'S: (A) NOTICE OF JOINDER IN AMI DEFENDANTS' ANTI-SLAPP MOTION (C.C.P. § 426.16); AND (B) NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(B)(6))**<br><br>[*Memorandum of Points and Authorities and [Proposed] Order filed concurrently herewith*]<br><br>Date: July 31, 2020<br>Time: 9:30 A.M.<br>Crtm: 8C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on July 31, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at 350 West 1st Street, Courtroom 8C, Los Angeles, CA, 90012, Defendant Dylan Howard will and hereby does move to (a) join in the motion of Defendants David Pecker and Worldwide Media Services Group, Inc. (collectively, "AMI Defendants") to strike the Complaint of Plaintiff Michael Sanchez in its entirety with prejudice, pursuant to California Code of Civil Procedure § 425.16; and (b) dismiss each of the causes of action against Mr. Howard for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

As set forth in the AMI Defendants' Memorandum of Points and Authorities, Plaintiff's claims for libel, intentional infliction of emotional distress, conspiracy to commit intentional torts, and aiding and abetting commission of intentional torts arise out of Defendants' acts in furtherance of their constitutional right of free speech in connection with a public issue, and Plaintiff cannot meet his burden of demonstrating a probability of prevailing on his claims because (i) the statements about which Plaintiff complains are true and therefore cannot be defamatory; (ii) Plaintiff's emotional distress claim is based on the same allegations as his faulty libel claim and therefore fails; and (iii) Plaintiff's conspiracy and aiding and abetting claims fail because they are based on Plaintiff's unmeritorious libel claim. Since these arguments apply equally to Mr. Howard, in order to conserve the Court's valuable resources, Mr. Howard moves to join in the AMI Defendants' anti-SLAPP motion.

In addition, as set forth in the accompanying Memorandum of Points and Authorities, each of Plaintiff's claims fails to state a claim against Mr. Howard for the independent reason that the Complaint fails to allege that Mr. Howard took a responsible part in the publication of the corporate press release that Mr. Sanchez

claims is defamatory and forms the predicate for each of the causes of action.

Mr. Howard's motion to dismiss is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the papers, pleadings, and evidence on file in this case, and any such additional papers, arguments and evidence as may be presented before or at the hearing of this matter. This Motion is made following the AMI Defendants' conference of counsel pursuant to Local Rule 7-3 which took place on June 5, 2020.

DATED:  July 1, 2020            FRANKFURT KURNIT KLEIN + SELZ PC

By:  */s/ Jeremy S. Goldman*
     Jeremy S. Goldman
     Attorneys for Defendant
     DYLAN HOWARD

3

DEFENDANT DYLAN HOWARD'S: (A) NOTICE OF JOINDER IN AMI DEFENDANTS' ANTI-SLAPP MOTION (C.C.P. § 426.16); AND (B) NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(B)(6))

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Dylan Howard joins in the anti-SLAPP motion filed by the other named defendants in this case (collectively, the "AMI Defendants") to strike the Complaint in its entirety on multiple grounds. Mr. Howard believes that the motion will resolve all issues against all defendants. However, should the Court choose not to grant the relief sought by all defendants, Mr. Howard is entitled to dismissal from the case on the independent ground that the Complaint fails to allege that he took a responsible part in the publication of the corporate press release that Plaintiff claims is defamatory. In particular, there is no allegation that Mr. Howard authorized, controlled, or directed the content or issuance of the release.

Mr. Howard respectfully submits that neither Mr. Sanchez—nor any libel plaintiff—should be entitled to sue a non-speaker based solely on his status as an employee of a corporate speaker. Allowing Mr. Sanchez to burden multiple individual defendants with litigation based on a corporate press statement is contrary to controlling law, abusive and chilling of legitimate public speech.

## II. RELEVANT BACKGROUND

Mr. Sanchez alleges that he was defamed by a March 31, 2019 press statement issued by American Media, Inc. ("AMI"), Mr. Howard's former employer. The Complaint quotes from, and cites to, an article in *The Daily Beast*, which contained the AMI statement. *See* Compl. ¶ 61 and FN 13. Although Mr. Sanchez pleads that the statement was released by "Defendants"— referring to the two named corporate entities, David Pecker, Mr. Howard and Does 1-10— the *Daily Beast* article, which is incorporated by reference into the Complaint, attributes the statement solely to "The *National Enquirer*'s parent company," as issued by a spokesperson for defendant "American Media, Inc." *Id.* Neither the Complaint nor the *Daily Beast* article suggests that Mr. Howard individually said anything about

1

DEFENDANT DYLAN HOWARD'S: (A) NOTICE OF JOINDER IN AMI DEFENDANTS' ANTI-SLAPP MOTION (C.C.P. § 426.16); AND (B) NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(B)(6))

Mr. Sanchez or that Mr. Howard was responsible for (or involved in) the content or publication of the corporate statement.

The Complaint alleges Mr. Howard was "AMI's Vice President and Chief Content Officer" and that he exercised "managerial control over all of [The *National Enquirer's*] operations." Compl. ¶ 13. However, the Complaint does not allege that Mr. Howard in any sense authorized the statement or controlled the corporate decision whether to issue the statement or what it would say.[1] For these reasons, set forth in further detail below, the Complaint should be dismissed against Mr. Howard.

## III. ARGUMENT

As pleaded, Mr. Howard is a resident of New York who allegedly caused injury to a California resident. Compl. ¶¶ 13, 17. Under both California and New York law, the allegations are insufficient under any theory to impose liability on Mr. Howard for the statements of his corporate employer.

### A. The First Cause of Action for Defamation Fails

#### 1. The Complaint Improperly Ascribes the Allegedly Defamatory Statements to "Defendants" Collectively

Defamation "allegations are insufficient i[f] . . . they are ascribed to

---

[1] In fact, as Mr. Howard confirms in a declaration submitted in support of the AMI Defendants' anti-SLAPP motion, in mid-February of 2019, more than a month prior to the issuance of the statement, AMI shifted Mr. Howard's role from Chief Content Officer to Senior Vice President of Corporate Development where Mr. Howard had no editorial responsibilities. *See* Declaration of Dylan Howard dated June 30, 2020 ("Howard Decl.") ¶ 3. Mr. Howard left AMI's employ as of March 31, 2020 at the expiration of his contract. *Id.* Mr. Howard further confirmed that he did not take a responsible part in the corporate statement:

> Although I was aware that AMI was issuing a statement, I was not the spokesman, nor did I make any individual comments about Mr. Sanchez's status as the source of the story. I was neither responsible for authorizing the statement nor did I have any control over whether AMI issued the statement in response to Mr. de Becker's comments.

*Id.* ¶ 19.

defendants collectively rather than to individual defendants." *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006) (dismissing libel claim against "Defendants" that failed to specify "who made the alleged libelous or slanderous statements"). This case is akin to *Harris v. Dillman*, where a California federal court dismissed a defamation claim pleaded against all four defendants, who allegedly accused plaintiff of criminal conduct. No. 2:08-CV-98-GEB-CMK, 2008 WL 2383939, at *5 (E.D. Cal. June 6, 2008). The court noted that, as here, the plaintiff "failed to allege who made any statement or the substances of that individual's statement.[2]

The Complaint alleges that "Defendants" published the allegedly defamatory corporate statements. Compl. ¶¶ 6 ("On March 31, 2020, ***Defendants*** issued a false and defamatory press release . . . ."), 61 ("***Defendants*** rushed to issue a defamatory responsive 'statement' to the press . . . ."), 72 (***"Defendants*** released a press statement. . . .") (emphasis added). "Defendants" refers collectively to ***fourteen*** entities and individuals, including AMI, The National Enquirer, Inc., David Pecker, Dylan Howard, and 10 unnamed Does. Compl. ¶¶ 9-14. This group pleading is insufficient to state a defamation claim against Mr. Howard individually and should be dismissed under Fed. R. Civ. P. 8 and the reasoning of *Arikat* and *Harris*.

### 2. The Complaint Fails to Allege that Mr. Howard Took a Responsible Part in the Publication of the Corporate Statement

Under California law, only "[o]ne who takes a responsible part in a publication of defamatory material may be held liable for the publication."

---

[2] New York law is the same. For example, in *TheECheck.com v. NEMC Financial Services Group.,* 2017 WL 2627912 (S.D.N.Y. 2017), the court dismissed a pleading where a plaintiff sued five parties, generally alleging that "Defendants" collectively acted to "harass and defame" the plaintiff by publishing defamatory statements.

3
DEFENDANT DYLAN HOWARD'S: (A) NOTICE OF JOINDER IN AMI DEFENDANTS' ANTI-SLAPP MOTION (C.C.P. § 426.16); AND (B) NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(B)(6))

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 712, 61 Cal. Rptr. 3d 29, 48 (2007).[3] Here, the Complaint does not allege that Mr. Howard took ***any*** part, much less a "responsible part," in the publication of the allegedly defamatory corporate press statement. In particular, there is no allegation that Mr. Howard authorized, controlled, or directed the content or issuance of the release. Accordingly, the Complaint fails to state a claim for defamation against Mr. Howard.

### 3. Mr. Howard Cannot Be Held Liable for the Allegedly Defamatory Statements of His Employer

In introducing Mr. Howard, the Complaint makes the conclusory allegation that Mr. Howard was AMI's Vice President and Chief Content Officer and wielded "managerial control" over the operations of *The National Enquirer* ("TNE"). Compl. ¶ 13. These allegations are insufficient to attribute the allegedly defamatory statements to Mr. Howard.

*First*, Mr. Sanchez's allegation that Mr. Howard "exercise[d] managerial control over all of TNE's operations" is conclusory. Although the Federal Rules do not require detailed factual pleading, a plaintiff is obliged to provide more than "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's attempt to impose the equivalent of alter ego liability against Mr. Howard for the speech of AMI based solely on the rote claim that he had "managerial control" of a tabloid newspaper should be rejected.

---

[3] New York law is to the same effect. *See Kiar v. Jordan*, 217 A.D.2d 981, 981, 630 N.Y.S.2d 825 (N.Y. App. Div. 1995) (dismissing a defamation claim where defendant "neither made the alleged defamatory statements nor participated in their publication"); *Kraus v. Brandstetter*, 202 A.D.2d 396, 397, 610 N.Y.S.2d 527 (N.Y. App. Div. 1994) (finding the complaint should not be reinstated against three defendants who did not participate in the publication of the alleged defamatory statement); *McGill v. Parker*, 179 A.D.2d 98, 106, 582 N.Y.S.2d 91 (N.Y. App. Div. 1992) (dismissing a defamation claim because the "mere receipt of an alleged libelous statement does not establish libel on the part of the person who receives the statement").

***Second,*** even fully crediting the allegation that Mr. Howard had "managerial control" over the operations of TNE does not establish or even imply that he controlled the operations of its owner, AMI, let alone that he controlled AMI's public statements. *See Sakuma v. Zellerbach Paper Co.*, 25 Cal.App.2d 309, 321–322, 77 P.2d 313 (1938) (business manager of newspaper not liable where no evidence he took responsible part in publication of allegedly libelous article). Illustrative of the point is *Treppel v. Biovail Corp.*, No. 03 CIV. 3002 (PKL), 2005 WL 2086339, at *3–4 (S.D.N.Y. Aug. 30, 2005), in which the court rejected an attempt by a plaintiff to sue a corporation's general counsel and other individuals based on the theory that they were responsible for the corporation's defamatory statements. Recognizing the potential for a plaintiff to burden non-speakers with claims of defamation, the court refused to "simply infer that [the individuals] were involved in the creation or the publication of the statements at issue." Based on that logic, the court stated, "all officers, employees and authorized agents of [the company] would be vulnerable to a defamation charge." The court criticized plaintiff for "strategically substituting" allegations against "defendants" instead of the company; doing so elevates "form over substance" and avoids the required allegation that each defendant played a substantive role in the publication of the statement.

The allegation that Mr. Howard's role as Chief Content Officer of TNE suffices to subject him to a defamation claim might have been more plausible had Mr. Sanchez's claim derived from ***journalism*** that Mr. Howard authored or edited in that role. *See Jones v. Calder*, 138 Cal. App. 3d 128, 134, 187 Cal. Rptr. 825, 829 (Ct. App. 1982), *aff'd,* 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) (participating in publication of an allegedly defamatory ***article*** can subject an ***editor*** to liability). But the statement here was contained in a corporate ***press release***, not an article published in TNE. Moreover, the statement was not even issued by TNE,

the sole entity over which Mr. Howard is alleged to have exercised managerial control. There is nothing pleaded that Mr. Howard was in a position to authorize or control press releases issued by AMI. Nor is it appropriate to infer that non-CEO level employees were in a position to control or authorize AMI press statements.

### B. The Second Cause of Action for Intentional Infliction of Emotional Distress and Third Cause of Action for Conspiracy Fail For the Reasons Stated in the AMI Defendants' Motion Papers

As set forth in the AMI Defendants' motion papers (pages 20-21), California does not recognize a civil claim for conspiracy. Nor does California recognize a cause of action for intentional infliction of emotional distress that is based solely on speech-related acts that cannot support a libel claim. These causes of action should be dismissed against Mr. Howard.

### C. The Fourth Cause of Action for Aiding and Abetting Fails Because Mere Knowledge is Insufficient

As set forth above, in order to hold Mr. Howard liable for the allegedly defamatory statements of his former employer, Mr. Sanchez must allege that he took a "responsible part" in their publication. Because Mr. Sanchez has failed to do so, the defamation claim should be dismissed against Mr. Howard. By this same logic, Mr. Howard cannot be held liable for aiding and abetting the alleged defamation and/or intentional infliction of emotional distress. This is true even if he was aware that a statement would be issued and he did not prevent it. *Casella v. SouthWest Dealer Services, Inc*,. 157 Cal. App. 4th 1127, 1140–1141 (2007) (mere knowledge that a crime is being committed and the failure to stop it is insufficient to establish aiding and abetting liability). Instead, he must be alleged to have had both actual knowledge of the wrong and to have provided "substantial assistance or encouragement" such that his actions were a substantial factor in causing harm to plaintiff. *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328 (2014);

*American Master Lease LLC v. Idanta Partners, Ltd.* 225 Cal. App. 4th 1451, 1476 (2014) (requiring substantial assistance and causation).[4]

As described above, Mr. Sanchez fails to allege that Mr. Howard provided "substantial assistance" to AMI with respect to the issuance of the press release. The Complaint does not allege that it was Mr. Howard who caused, directed or authorized the March 31, 2019 press release. Whatever harm Mr. Sanchez allegedly suffered was not caused by anything that Mr. Howard did with respect to the corporation's issuance of that press release. The mere allegation that Mr. Howard was a manager when his employer issued the statement is not enough to state an aiding and abetting claim under California or New York law. Even if the Complaint suggests that Mr. Howard was aware of the issuance of the press release, such awareness would not be tantamount to substantially assisting its release.

## IV. CONCLUSION

For these reasons, and the reasons set forth in the AMI Defendants' anti-SLAPP motion, the claims against Mr. Howard should be dismissed in their entirety and with prejudice.

DATED: July 1, 2020

Respectfully submitted,

FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Jeremy S. Goldman*
Jeremy S. Goldman
Attorneys for Defendant
DYLAN HOWARD

---

[4] New York law similarly requires the pleading of facts showing that the alleged aider and abettor rendered substantial assistance, requiring that (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the wrong to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated. *See Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.,* 64 A.D.3d 472, 476 (N.Y. App. Div. 2009).