Jonathan M. Jenkins (State Bar No. 193011)
 jjenkins@jklitigators.com
Lara T. Kayayan (State Bar No. 239384)
 lkayayan@jklitigators.com
Jordan T. Smith (State Bar No. 312798)
 jsmith@jklitigators.com
JENKINS KAYAYAN LLP
444 S. Flower St., Suite 1750
Los Angeles, California 90071
Telephone: (310) 984-6800
Fax: (310) 984-6840

*Attorneys for Plaintiff*
*Michael Sanchez*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION − LOS ANGELES

| | |
|---|---|
| MICHAEL SANCHEZ, an individual, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN MEDIA, INC., a Delaware corporation; DAVID PECKER, an individual; DYLAN HOWARD, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:20-cv-02924-DMG (PVCx) <br><br> **PLAINTIFF MICHAEL SANCHEZ'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16; DECLARATION OF MICHAEL SANCHEZ** <br><br> Action Filed: March 27, 2020 <br><br> Date:   July 31, 2020 <br> Time:   9:30 A.M. <br> Judge:  Hon. Dolly M. Gee <br> Ctrm:   8C |

JENKINS KAYAYAN LLP

**TABLE OF CONTENTS**

I.   INTRODUCTION & BACKGROUND ................................................................. 1

II.  STATEMENT OF FACTS ................................................................................ 2

    A.   Defendants Plot To Publish Derogatory Pieces About Mr.
        Bezos To Curry Political Favor With President Donald J.
        Trump And The Saudi Arabian Government ............................................. 3

    B.   The Affair Between Mr. Bezos And Ms. Sanchez Is Exposed
        And Plaintiff Attempted To Control The Media Narrative On
        Behalf Of His Client ................................................................................... 4

    C.   Defendants Intentionally Defame Plaintiff To Avoid Federal
        Criminal Liability After Their Attempted Extortion Of Mr.
        Bezos Backfired ........................................................................................... 6

III. ARGUMENT ..................................................................................................... 8

    A.   Legal Standard ............................................................................................. 8

    B.   Under *Planned Parenthood*, An Anti-SLAPP Motion Based
        On Factual Insufficiency Cannot Be Granted Before
        Discovery Is Taken ................................................................................... 11

    C.   Defendants Fail To Establish The First Anti-SLAPP Prong ................. 14

    D.   Plaintiff Has Shown A Minimum Level Of Legal Sufficiency
        On Each Of His Claims ............................................................................. 15

        1.   Plaintiff Has Shown A Minimum Level Of Legal
            Sufficiency On His Defamation Claim ......................................... 16

        2.   Plaintiff Has Shown A Minimum Level Of Legal
            Sufficiency On His Intentional Infliction Of Emotional
            Distress Claim ................................................................................. 20

        3.   Plaintiff Has Shown A Minimum Level Of Legal
            Sufficiency On His Conspiracy To Commit Intentional
            Torts Claim ...................................................................................... 22

        4.   Plaintiff Has Shown A Minimum Level Of Legal
            Sufficiency And Triability On His Aiding And
            Abetting Commission of Intentional Torts Claim ........................ 23

    E.   Plaintiff Is Entitled To Leave To Amend Rather Than
        Dismissal .................................................................................................... 24

    F.   Defendants Are Not Entitled To Fees ..................................................... 24

    G.   Plaintiff Should Be Awarded His Fees .................................................... 25

IV.  CONCLUSION ................................................................................................ 25

JENKINS KAYAYAN LLP

ii

# TABLE OF AUTHORITIES

**JENKINS KAYAYAN LLP**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 11

*Baral v. Schnitt*, 1 Cal. 5th 376 (2016) ........................................................ 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................... 11

*Bikkina v. Mahadevan*, 241 Cal. App. 4th 70 (2015).................................. 21

*Brown v. Elec. Arts, Inc.,* 722 F. Supp.2d 1148 (C.D. Cal. 2010) ........................ 24

*Cervantez v. J.C. Penny Co.*, 24 Cal. 3d 579 (1979) .................................. 20

*Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491 (1995)........ 18, 19, 20

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010).............. 11, 16, 18

*Doctors' Co. v. Superior Court*, 49 Cal. 3d 39 (1989) ................................ 22, 23

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 29 Cal. 4th 777 (1996)................................................................................................... 9

*FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133 (2019)......................... 14, 15

*Flatley v. Mauro*, 39 Cal. 4th 299 (2006) .................................................... 11

*Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376 (1970) .............. 21

*Golden v. Anderson*, 256 Cal. App. 2d 714 (1967)...................................... 23

*Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537 (2008)............................................................................................................ 9

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ........................... 10

JENKINS KAYAYAN LLP

*Jackson v. Mayweather*, 10 Cal. App. 5th 1240 (2017)............................16

*Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571 (1995).......................22

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) ...................................9

*Manzari v. Associated Newspapers*, 830 F.3d 881 (9th Cir. 2016) .......................15

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ...........................10

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010) .....................10, 15

*Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092 (1988)............................................20

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990)........................................................................................12

*Nano Found., Ltd. v. Silver*, Case No. 2-19-cv-04237-SVW (PJW), 2019 WL 6723428 (C.D. Cal Aug. 20, 2019)...................................2, 12, 13

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 793 F. App'x 482 (9th Cir. 2019)...................................................................................10

*Navellier v. Sletten*, 29 Cal. 4th 82 (2002)..........................................................9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied*, 139 S. Ct. 1446 (2019)................................passim

*PMC, Inc. v. Kadisha*, 93 Cal. Rptr. 2d 663 (Ct. App. 2000) ................................23

*Ragland v. U.S. Bank. Nat'l Assn.*, 209 Cal. App. 4th 182 (2012) .........................21

*Smith v. Maldonado*, 72 Cal. App. 4th 637 (1999) ...............................................19

*So v. Shin*, 212 Cal. App. 4th 652 (2013)............................................................21

*Time, Inc. v. Firestone*, 424 U.S. 448 (1976)......................................................14

iv

JENKINS KAYAYAN LLP

*TP Link USA Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS (KES), 2020 WL 3063956 (C.D. Cal. Mar. 23, 2020) ................................. 11

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586 (1970) ................................................................................................. 23

*Verizon Delaware, Inc. v. Covad Communications*, 377 F.3d 1081 (9th Cir. 2004) ...................................................................... 10, 12, 24

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) ................................. 10

*Wise v. Southern Pacific Co.,* 223 Cal. App. 2d 50 (1963) ....................... 23

*Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773 (1979) ................................. 23

*Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239 (9th Cir. 2012) ...................... 11

**Rules and Statutes**

California Code of Civil Procedure § 425.16 ........................................ 8

California Code of Civil Procedure § 425.16(b)(1) .............................. 9

California Code of Civil Procedure § 425.16(c)(1) .............................. 25

California Code of Civil Procedure § 425.16(e)(3) .............................. 14

California Code of Civil Procedure § 425.16(e)(4) .............................. 14

Federal Rule of Civil Procedure § 15(a) .............................................. 24

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION & BACKGROUND

This is a case of a media conglomerate scapegoating Plaintiff Michael Sanchez, a California-based talent manager and producer, to avoid federal criminal liability for, among other things, illegally spying on Jeffrey Bezos, the billionaire owner of *The Washington Post*.  Defendants hoped to dig up dirt on Mr. Bezos to curry favor with two of Defendants' powerful allies, President Donald J. Trump and the Government of Saudi Arabia.

Defendants succeeded: they discovered that Mr. Bezos was having an extra-marital affair with Plaintiff's sister.  Worse, they obtained intimate photographs of the couple and, in at least one case, a pornographic image of Mr. Bezos.  When caught, Defendants first tried extorting Mr. Bezos by threatening to publicly release the pornographic images.  When that scheme failed, Defendants found themselves in the awkward position of having to explain to federal law enforcement authorities – and the public at large – exactly *how* they had procured the pornographic images.

Mr. Sanchez made for an easy scapegoat: he was already providing media representation services to his sister and Mr. Bezos – namely, negotiating with Defendants to procure some degree of narrative control over how the couple's relationship would be portrayed when the story of their extramarital affair inevitably broke.  Yet, Defendants' false and malicious claims – that Mr. Sanchez had provided them with pornographic images relating to his *own sister* – devastated Mr. Sanchez's career and reputation, destroyed invaluable media relationships that enabled his professional success, and estranged him from his own family.

Defendants now seek protection from the consequences of their false and defamatory statements by requesting that the Court strike the Complaint based on a special motion to strike (the "Motion") that cites outdated cases, ignores applicable federal authority, and conveniently never mentions that California's anti-SLAPP statute applies substantially differently in federal court diversity actions.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO C.C.C.P. § 425.16

JENKINS KAYAYAN LLP

However, under Ninth Circuit precedent, Defendants' Motion is a premature motion for summary judgment pursuant to Rule 56 and therefore an improper attempt to dismiss Mr. Sanchez's claims before he can avail himself of his rightful opportunity to discover evidence supporting his claims. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied*, 139 S. Ct. 1446 (2019).

Thus, because the Motion cannot be ruled on prior to discovery and purports to attack virtually every aspect of Plaintiff's Complaint, what the Anti-SLAPP discovery Plaintiff will require is essentially coextensive with the discovery needs of this entire case. Accordingly, Plaintiff respectfully requests the Court reserve its ruling on the Motion and instead set a scheduling conference so that discovery can immediately proceed on all issues–an approach recently adopted by Judge Wilson in a defamation action. *See Nano Found., Ltd. v. Silver*, Case No. 2-19-cv-04237-SVW (PJW), 2019 WL 6723428, at *2 (C.D. Cal Aug. 20, 2019) ("The resolution of the anti-SLAPP motion is inextricably bound to the resolution of the underlying complaint, so discovery must proceed on all issues…").

Alternatively, Defendants' motion should be outright denied because (1) Defendants have not met their burden to trigger anti-SLAPP protections, (2) Plaintiff has pleaded each of his claims with legal sufficiency, and (3) Plaintiff is entitled to leave to amend to cure any pleading deficiencies before dismissal with prejudice.

## II.   STATEMENT OF FACTS

Plaintiff Michael Sanchez ("Plaintiff" or "Mr. Sanchez") is the owner and Chief Executive Officer of Axis Management, a successful, Hollywood-based talent management and film and television production firm. His work often includes arranging, optimizing, and occasionally suppressing media coverage of his high-profile clients. (Compl. ¶ 19; Sanchez Decl. ¶ 2.) Accordingly, Mr. Sanchez fostered close relationships with reporters and executive management at numerous media outlets – including Defendants Mr. David Pecker ("Mr. Pecker") and Mr. Dylan Howard (Mr.

JENKINS KAYAYAN LLP

Howard"), who effectively managed and controlled Defendant American Media, Inc.'s ("AMI") (collectively, the "Defendants") operations, and Ms. Andrea Simpson ("Ms. Simpson"), who was AMI's California-based reporter and editor.   (Compl. ¶ 20; Sanchez Decl. ¶¶ 3, 12.)

One of Mr. Sanchez's clients was his own sister, Wendy Lauren Sanchez ("Ms. Sanchez"), an Emmy Award-nominated American news anchor, entertainment reporter, actress, pilot, and producer.   (Compl. ¶ 21; Sanchez Decl. ¶ 4.)   As Ms. Sanchez's manager and most trusted confidant for most of her professional career, Mr. Sanchez optimized his sister's career opportunities and portrayal in the media using his skill, experience, and media relationships.   (Compl. ¶ 21; Sanchez Decl. ¶¶ 4-5.) Accordingly, Mr. Sanchez has been privy to and entrusted with virtually all of Ms. Sanchez's business and often complicated personal affairs, including in March 2018, when Ms. Sanchez revealed that she had begun an extramarital affair with billionaire Jeffrey Preston Bezos ("Mr. Bezos") in December 2017.   (Compl. ¶ 22; Sanchez Decl. ¶ 6.)   Ms. Sanchez introduced Mr. Sanchez to Mr. Bezos on or about April 20, 2018; Mr. Bezos was so impressed with Mr. Sanchez's media savvy, expertise, and discretion that Mr. Sanchez soon became the couple's trusted media consultant.   (Compl. ¶¶ 23-25; Sanchez Decl. ¶¶ 7-10.)

### A.   Defendants Plot To Publish Derogatory Pieces About Mr. Bezos To Curry Political Favor With President Donald J. Trump And The Saudi Arabian Government

Mr. Bezos, now Mr. Sanchez's confidant and also the owner of *The Washington Post* (the "Post"), was responsible for publishing a number of articles highly critical of President Donald J. Trump's ("Mr. Trump" or "President Trump") character and policies (Compl. ¶¶ 27-28) as well as the Crown Prince of Saudi Arabia, Mohammed bin Salman's ("MbS") oppressive regime (*id.* ¶35).

Defendants were close allies with MbS and hoped to leverage their relationship with him to expand AMI's media empire into the Saudi kingdom.   (*Id.* ¶ 32.)

JENKINS KAYAYAN LLP

However, this relationship again brought Defendants under federal criminal investigation in early 2019.  (*Id.* ¶ 34.)  As retribution for negative press coverage in the *Post*, Mr. Sanchez alleges that MbS and the Saudi government hacked Mr. Bezos's cell phone in May 2018 by tricking Mr. Bezos into unknowingly installing illegal spyware.  (*Id.* ¶¶ 36-37, 39.)  This illegal tactic was confirmed by investigations by Mr. Bezos's head of security, Mr. Gavin de Becker (Mr. de Becker") and was the subject of investigations by the U.S. Department of Justice and the United Nations Human Rights Commission.  (*Id.* ¶¶ 37, 55, 58, 60; Sanchez Decl. ¶ 36.)  Through this spyware, MbS illegal procured knowledge and evidence of Mr. Bezos's affair with Ms. Sanchez, and later illegally shared it with Defendants.  (Compl. ¶¶ 39, 43; Sanchez Decl. ¶ 36.)

Defendants were also close political allies with President Trump–so close, in fact, that they had committed federal campaign finance violations in order to assist Mr. Trump's 2016 presidential candidacy.  (Compl. ¶¶ 29-30.)  For their role in these federal crimes, Defendants entered into a Non-Prosecution Agreement ("NPA") with the U.S. Attorney for the Southern District of New York in September 2018 which relieved them of criminal liability but required them to refrain from "commit[ting] any crimes" after signing the NPA.  (*Id.* ¶¶ 30-31.)

Hoping to curry favor with President Trump and MbS, who shared disdain for Mr. Bezos and the *Post*, Defendants began to plot a "hit piece" on Mr. Bezos by publishing embarrassing details of his personal life.  (*Id.* ¶ 40.)  Mr. Sanchez alleges that Defendants received assistance from MbS, including unlawfully receiving the criminally obtained proof of Mr. Bezos's affair with Ms. Sanchez.  (*Id.* ¶ 41.)

**B.    The Affair Between Mr. Bezos And Ms. Sanchez Is Exposed And Plaintiff Attempted To Control The Media Narrative On Behalf Of His Client**

In July 2018, Ms. Simpson unintentionally revealed to Mr. Sanchez that Defendants somehow knew of the affair between Mr. Bezos and Ms. Sanchez; Mr. Sanchez alleges that by this time, Defendants had already illegally obtained proof of

JENKINS KAYAYAN LLP

the affair from MbS's hack of Mr. Bezos's phone.  (*Id*. ¶ 43; Sanchez Decl. ¶¶ 12-13.)
Although Mr. Sanchez was able to stall the publication of any details related to Ms.
Sanchez's affair with Mr. Bezos for several months, he elected to get ahead of the story
in October 2018 by entering into an agreement to cooperate with Defendants in order
to further delay and assert control over inevitable publication of the affair.  (Compl. ¶¶
43, 46; Sanchez Decl. ¶¶ 14-17.)  Pursuant to this agreement, between at least October
2018 and March 2019, Mr. Sanchez discussed the affair with Defendants (including,
but not limited to, Mr. Howard, AMI News Director James Robertson ("Mr.
Robertson") and Ms. Simpson, via dozens of emails, text messages, and telephone
calls.  (Compl. ¶ 47; Sanchez Decl. ¶ 17.)  During this time, Mr. Sanchez provided a
face-to-face viewing of limited evidence corroborating the affair, including a few text
messages and non-pornographic photographs provided by Ms. Sanchez.  (Compl. ¶ 46;
Sanchez Decl. ¶¶ 16-17.)

In January 2019, Defendants again unintentionally revealed that sources other
than Mr. Sanchez provided them with information about Ms. Sanchez's affair with Mr.
Bezos, when AMI sent Mr. Bezos and Ms. Sanchez identical "request[s] for comment"
regarding intimate details of their affair.  (Compl. ¶¶ 49-50; Sanchez Decl. ¶¶ 19-21.)
These requests contained numerous false allegations, mistakes, and assertions that Mr.
Sanchez had never provided to or discussed with Defendants, which confirmed Mr.
Sanchez's suspicion that they had received this erroneous information from sources
other than Mr. Sanchez.  (Compl. ¶¶ 49-50; Sanchez Decl. ¶¶ 19-21.)  Two days after
Ms. Sanchez and Mr. Bezos received these requests for comment, on January 9, 2019,
Defendants publicized their story outing their affair.  (Compl. ¶ 54; Sanchez Decl. ¶
25.)  The online article, as well as a print version published a few days later, contained
information, content, and material not given to Defendants by Mr. Sanchez.  (Compl. ¶
54; Sanchez Decl. ¶¶ 25-26.)  Mr. Sanchez alleges that this information came from one
or more of Defendants' other sources.  (Compl. ¶ 54; Sanchez Decl. ¶¶ 25-27.)

JENKINS KAYAYAN LLP

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO C.C.C.P. § 425.16

**C.    Defendants Intentionally Defame Plaintiff To Avoid Federal Criminal Liability After Their Attempted Extortion Of Mr. Bezos Backfired**

After Defendants published articles outing his affair with Ms. Sanchez, Mr. Bezos quickly enlisted Mr. de Becker to conduct a thorough investigation of Defendants' sources and motives for publishing the "hit piece" against him.  (Compl. ¶ 55; Sanchez Decl. ¶ 28.)   Fearing the consequences of this investigation, Defendants sought to extort Mr. Bezos by threatening to publish graphic pornographic images of Mr. Bezos and Ms. Sanchez–including nine pornographic or quasi-pornographic photos and a "below the belt selfies" or "d*ick pic" that Mr. Bezos had allegedly sent Ms. Sanchez (collectively, the "Pornographic Materials")–unless Mr. Bezos called off Mr. de Becker's investigation and publicly stated that Defendants articles were not "politically motivated."  (Compl. ¶¶ 55-57; Sanchez Decl. ¶¶ 29-31.)   Mr. Sanchez alleges that Defendants, after learning of yet another federal investigation into their illegal actions, conspired to scapegoat Mr. Sanchez as the sole source of the information behind their publications outing Ms. Sanchez's affair with Mr. Bezos in order to avoid criminal liability.  (Compl. ¶ 59; Sanchez Decl. ¶¶ 32-35.)   Defendants were desperate to unfairly and untruthfully blame Mr. Sanchez in order avoid criminal consequences for illegally obtaining the Pornographic Materials and extorting Mr. Bezos; they knew that if they were found to have committed these crimes, they would face prosecution and the previously discussed NPA would be rescinded, subjecting Defendants to prosecution for their earlier campaign finance crimes committed on behalf of President Trump.  (Compl. ¶ 59; Sanchez Decl. ¶¶ 33-35.)

On March 30, 2019, Mr. de Becker penned an article in *The Daily Beast* revealing (1) Defendants' extortion and illegal cooperation with MbS to obtain the stolen Pornographic Materials and (2) that Defendants relied on one or more sources *other than* Mr. Sanchez to gather their information on Mr. Bezos's affair with Ms. Sanchez.  (Compl. ¶ 60; Sanchez Decl. ¶ 36.)   The following day, March 31, 2019, Defendants rushed to issue a responsive press release (the "Press Release") promoting

6

JENKINS KAYAYAN LLP

their demonstrably false claim that Mr. Sanchez was the "single-source" for all of Defendants' investigations (including the Pornographic Materials):

> Despite the false and unsubstantiated claims of Mr. de Becker, American Media has, and continues to, refute the unsubstantiated claims that the materials for our report were acquired with the help of anyone other than the single source who first brought them to us. The fact of the matter is, ***it was <u>Michael Sanchez who tipped the National Enquirer off to the affair</u> on Sept. 10, 2018, and over the course of four months provided <u>all</u> of the materials for our investigation***. His continued efforts to discuss and ***<u>falsely represent our reporting</u>***, and ***<u>his role in it</u>***, has **waived any source confidentiality**. ***There was <u>no involvement by any other third party whatsoever</u>*** (emphasis added).

(Compl. ¶ 61; Sanchez Decl. ¶¶ 37-42).

Mr. Sanchez was not and could not have been the source of the Pornographic Materials because *he never possessed them*.  (Compl. ¶ 68; Sanchez Decl. ¶¶ 41-43.) In April 2019, FBI agents served Mr. Sanchez with a subpoena to appear before the federal grand jury convened to investigate Defendants, and Mr. Sanchez provided sworn testimony one month later.  (Compl. ¶ 68; Sanchez Decl. ¶ 43.)  The FBI conducted a comprehensive forensic search and audit of all of Mr. Sanchez's computers and electronic devices and correctly concluded–as did Mr. de Becker's own investigators–that Mr. Sanchez had never been in possession of the Pornographic Materials.  (Compl. ¶ 68; Sanchez Decl. ¶ 43.)

Defendants' untrue and defamatory Press Release significantly harmed Mr. Sanchez economically and emotionally.  (Compl. ¶ 70; Sanchez Decl. ¶¶ 44-45.) Many of his long-time clients have stopped working with him, film and television production deals were destroyed, and the media contacts he relied upon to perform his job–relationships Mr. Sanchez spent decades or more cultivating–no longer return his calls or wish to associate with him.  (Compl. ¶ 70; Sanchez Decl. ¶¶ 44-45.)

JENKINS KAYAYAN LLP

Defendants' defamatory statements have irreparably damaged Plaintiff's business reputation, destroyed his ability to earn a living, and estranged him from his own family. (Compl. ¶ 70; Sanchez Decl. ¶¶ 44-45.)  As such, on March 27, 2020, Mr. Sanchez filed suit against Defendants for libel (Compl. ¶¶ 71-76), intentional infliction of emotional distress (*id.* ¶¶ 77-80), conspiracy to commit intentional torts (*id.* ¶¶ 81-85), and aiding and abetting commission of intentional torts (*id.* ¶¶ 86-89).

Defendants filed the instant Motion requesting the Court strike the entirety of Plaintiff's Complaint under California's anti-SLAPP statute. (Dkt. 13.)  Defendants argue that the "evidence demonstrates without question that Sanchez was AMI's source" for all of Defendants' information supporting its reporting on the affair between Mr. Bezos and Ms. Sanchez.  Tellingly, though, despite submitting several declarations and dozens of exhibits in support of its Motion, Defendants **never reveal when, how, or even _whether_ AMI obtained the "d\*ck pic" or the other Pornographic Materials**.  Rather, it attempts to (1) hide behind state court decisions, many of which are outdated or do not apply in federal court, to avoid responsibility for its intentionally defamatory and untrue statements which have destroyed Mr. Sanchez's career and (2) prematurely force the Court into dismissing Mr. Sanchez's Complaint for lack of factual sufficiency before Mr. Sanchez can even engage in discovery on his claims.

Plaintiff's Complaint, and each action alleged therein, is well pled.  Defendants' factual disagreements and supplemental evidence presented in its Motion are improper at this early stage of litigation.  As such, instead of simply denying the Motion on the merits, the Court should reserve judgment on the Motion until discovery is complete.

## III.  ARGUMENT

### A.  Legal Standard

California law allows for pre-trial dismissal of strategic lawsuits against public participation ("SLAPPs"), which are **entirely meritless suits** brought "primarily to chill the valid exercise of Constitutional rights of freedom of speech[.]"  Cal. Civ. Proc. Code § 425.16; *see also Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 29 Cal. 4th

8

777, 783 (1996) (SLAPPs are "meritless suit[s] filed primarily to chill the defendant's exercise of First Amendment rights."); *Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1542-43 (2008) (anti-SLAPP statute enacted to "provide a procedure for expeditiously resolving nonmeritorious litigation[.]").  Section 425.16 provides a "screening" procedure under which a defendant can file a special motion to strike certain claims if they arise "from any act of [the defendant] in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution" so long as the claims arise "in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1).

California's anti-SLAPP law is not absolute and "does not insulate defendants from ***any*** liability for claims arising from the protected rights of petition of speech.  It only provides a procedure for weeding out, at an early stage, ***meritless*** claims arising from protected activity."  *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (emphasis in original).  Thus, the special motion to strike prescribed by Section 425.16 only applies to wholly baseless and frivolous causes of action that "lack ***even minimal merit***[.]" *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002) (emphasis added) (internal citations omitted); *Hansen*, 171 Cal. App. 4th. at 1542-53.

Although the applicability of California's anti-SLAPP statute in the Ninth Circuit has been questioned in recent years,[1] under current precedent, anti-SLAPP motions are evaluated substantially differently in federal court than in California state court. In the federal context, anti-SLAPP motions are properly analyzed as hybrids of motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and motions for summary judgment under Rule 56.  *Planned Parenthood*, 890 F.3d 828 at 833, 836

---

[1] *See, e.g., Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof").

JENKINS KAYAYAN LLP

("Anti-SLAPP motions are hybrids of motions to dismiss and motions for summary judgment.").   In addition to failing to mention that Ninth Circuit courts treat anti-SLAPP motions as hybrids of motions to dismiss and motions for summary judgment, Defendants conveniently omit that federal courts in diversity jurisdiction cases have refused to enforce various procedural limitations imposed by the California anti-SLAPP statute that "result in a direct collision" with the Federal Rules of Civil Procedure.  *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980); *see also, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (provision requiring discovery stay pending a decision on an anti-SLAPP special motion to strike "collide[s] with the discovery-allowing aspects of Rule 56" and therefore "cannot apply in federal court."); *Verizon Delaware, Inc. v. Covad Communications*, 377 F.3d 1081, 1091 (9th Cir. 2004) (state court prohibition on granting leave to amend conflicts with the Federal Rules and therefore cannot be enforced in federal court proceedings).

Motions brought in federal court under Section 425.16 are evaluated in two steps.  In order to prevail on an anti-SLAPP motion, "a defendant must show that: (1) the acts that form the basis of the plaintiff's complaint were taken in furtherance of the defendant's free speech rights and (2) the plaintiff does not have a reasonable probability of prevailing on its claims."   *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 793 F. App'x 482, 485 (9th Cir. 2019) (citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010)).  Regardless of whether the challenge on the second prong is legal or factual, the "required probability that [a plaintiff] will prevail need not be high," *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010); rather, a plaintiff must show "***only a minimum level of legal sufficiency and triability.***" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted).

If a defendant's arguments under the second prong are "founded on ***purely legal*** arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards[.]" *Planned Parenthood*, 890 F.3d at 833 (citing *Z.F. v. Ripon Unified Sch. Dist.*, 482 F.

10

JENKINS KAYAYAN LLP

App'x 239, 240 (9th Cir. 2012)).   In contrast with state court procedure, federal plaintiffs "can properly respond [to purely legal challenges] merely by showing sufficiency of the pleadings" but ***need not "submit evidence to oppose contrary evidence that was never presented by defendants."*** *Id.* at 834.   Thus, ***Plaintiff has no burden*** under *Planned Parenthood* to produce evidence that would be admissible at trial in response to Defendants' challenges to the legal sufficiency of the Complaint.

In a Rule 12(b)(6) anti-SLAPP inquiry, courts "consider the pleadings and supporting and opposing affidavits, but do not make credibility determinations or compare the weight of the evidence." *Flatley v. Mauro*, 39 Cal. 4th 299, 326 (2006) (emphasis added); *see also, e.g., TP Link USA Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS (KES), 2020 WL 3063956, at *4 (C.D. Cal. Mar. 23, 2020) (district courts apply 12(b)(6) standards in evaluating anti-SLAPP motions challenging only the legal sufficiency of a claim).

Courts must accept as true all "well-pleaded factual allegations" in a complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and must also draw all reasonable inferences in the light most favorable to the non-moving party, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### B.   Under *Planned Parenthood*, An Anti-SLAPP Motion Based On Factual Insufficiency Cannot Be Granted Before Discovery Is Taken

When a defendant's anti-SLAPP motion to strike is not "purely legal" but rather "a factual challenge, then the motion must be treated as though it were a motion for summary judgment [under Rule 56] and discovery must be permitted." *Planned Parenthood*, 890 F.3d at 833 (citing *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012).  In such a case, "***discovery must be allowed, with opportunities to supplement evidence [and pleadings] based on the factual***

JENKINS KAYAYAN LLP

1   **challenges, before any decision is made by the court.**"  *Id.* at 834 (affirming district

2   court's "declining to evaluate the factual sufficiency of the complaint at the pleading

3   stage"); *Covad Communications*, 377 F.3d at 1091 (California anti-SLAPP prohibition

4   on granting leave to amend after anti-SLAPP motion is filed cannot be enforced in

5   federal court proceedings); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

6   1079 (9th Cir. 1990) (Ninth Circuit requires that the policy favoring amendment be

7   applied with "extreme liberality.").

8         Recently faced with a similar anti-SLAPP motion in a defamation action,

9   another court in the Central District reserved judgment on the anti-SLAPP motion and

10   ordered discovery pursuant to *Planned Parenthood*.  *See Nano*, 2019 WL 6723428, at

11   *2.  The defendant in *Nano* filed an anti-SLAPP motion challenging "both the legal

12   and factual sufficiency of the Plaintiffs' complaint" which alleged defamation and

13   other intentional torts.  *Id.*  Judge Wilson found that **because the defendant had**

14   **challenged the legal and factual sufficiency** of the complaint, the "**issues raised by**

15   **the parties are best addressed on summary judgment**" because "the Court needs more

16   information to adequately address **even the first prong**" of the anti-SLAPP inquiry.  *Id.*

17   (emphasis added).  Thus, Judge Wilson found it "inappropriate" to decide the motion

18   to strike and ordered discovery on the claims addressed by the anti-SLAPP motion as

19   well as the remaining claims.  *Id. ("Planned Parenthood* therefore prevents the Court

20   from deciding on the anti-SLAPP motion until discovery has been allowed.")

21         A similar result is warranted here.  Defendants' anti-SLAPP motion raises

22   numerous, primarily factual or mixed factual and legal, challenges to Plaintiff's

23   Complaint.  Defendants argue that Plaintiff cannot establish factual sufficiency for

24   each of the four claims at issue in this action, basing each argument on the factual

25   sufficiency of the libel claim.  S*ee* Mot. at 13:1-20:1 (arguing factual sufficiency of

26   libel claim, including over fifty citations to three separate declarations and twelve

27   exhibits); *id.* at 20:2-24 (arguing that the Court should strike intentional infliction of

28   emotional distress claim because "Sanchez cannot prevail on his libel claim, he

*JENKINS KAYAYAN* LLP

similarly cannot prevail on his claim for intentional infliction of emotional distress which is based on the same alleged acts."); *id.* at 20:25-21:24 (arguing that the Court should strike conspiracy claim "[b]ecause Sanchez cannot demonstrate a probability of prevailing on his defamation claim, he similarly cannot prevail on his conspiracy claim which is based on the alleged defamation."); *id.* at 21:25-22:6 (arguing that the Court should strike aiding and abetting claim "[b]ecause Sanchez cannot demonstrate a probability of prevailing on his claims for libel or intentional infliction of emotional distress, he similarly cannot demonstrate a probability of prevailing on his claim for aiding and abetting the commission of intentional torts").

Because each and every of Defendants' challenges address, at least in part, the factual sufficiency of the Complaint, the issues Defendants' Motion raises are best addressed on summary judgment.  *See Nano*, 2019 WL 2723428, at *2; *Planned Parenthood*, 890 F.3d at 833.  Given the complexity of Defendants' motion, the Court should not attempt to parse out which arguments are purely legal–and thus potentially appropriate for immediate judgment on the pleadings under Rule 12(b)(6)–and which are factual challenges subject to Rule 56.  Rather, consistent with *Planned Parenthood* and *Nano*, should the Court not simply deny Defendants' motion on the merits, it ***should order thorough discovery to be allowed before any decision striking Plaintiff's Complaint under Section 425.16.***

This action provides additional policy reasons for the Court to order appropriate discovery before adjudicating Defendants' summary judgment motion.  Plaintiff has alleged that the defendant has engaged in a secret scheme to defame Plaintiff and scapegoat him in an effort to conceal Defendants' actual source of the Pornographic Materials, which underpins his conspiracy claim against Defendants.  (*E.g.*, Compl. ¶¶ 81-85.)  ***Defendants alone possess the evidence needed to prove these claims at issue.*** Without allowing Plaintiff to engage in discovery on these allegations, it would be ***manifestly unfair*** to strike Plaintiff's case because he did not have sufficient evidence of Defendants' secret scheme and behind-closed-doors conspiracy to defame him.

13

**C.    Defendants Fail To Establish The First Anti-SLAPP Prong**

To meet their burden of showing that the challenged claims "aris[e] from" protected activity, Defendants must show that their defamatory statements were made in exercise of their rights of free speech concerning a "issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3)-(4).  This inquiry is itself dependent upon a "two-part analysis rooted in the statute's purpose and internal logic" which requires the Defendant to prove both a "public issue" and a specific "connection" to that public issue.  *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149 (2019).  For the "public issue" analysis, the "focus of [the court's] inquiry must be on the 'specific nature of the speech' rather than on any 'generalities that might be abstracted from it.'"  *Id.* at 152 (citations omitted).  As for the "connection" requirement, it is "not enough that the statement refer to a subject of widespread public interest"; rather, the defendant must show that the statement "in some manner itself contribute[s] to the public debate."  *Id.* at 150 (citations omitted).  ***It is not enough that Defendants' statements refer to or relate to a matter of broad public interest; their statements must further the public debate***.

Defendants' special motion to strike fails both prongs.  First, the specific nature of the defamatory statements that form the basis of Plaintiff's claims were not, as Defendants claim, "a matter of great public interest."  Mot. at 11:21-23.  While some aspects of the general factual backdrop may be of great public interest (such as the Saudi Arabian Crown Prince hacking Jeff Bezos's phone), Defendants' specific statements involved leaks of a martial affair and related salacious pictures.  These statements were reckless and offensive lies about Mr. Sanchez's handling of confidential matters regarding his client's marital affairs.  Defendants cannot and have not met their burden simply by stating that Bezos is famous for being "one of the richest men in the world."  Mot. at 12:3-4; *see Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976) (scandalous divorce of well-known persons did not involve issue of public interest "even though the marital difficulties of extremely wealthy individuals may be

14

JENKINS KAYAYAN LLP

of interest to some portion of the reading public").

Second, the connection between Defendants' false and defamatory statements about Mr. Sanchez and the public interest asserted by Defendants is attenuated at best. Defendants have not shown how such defamatory statements themselves "contributed to the public debate," *FilmOn.com*, 7 Cal.5th at 150; concealing their actual source by scapegoating Mr. Sanchez as the sole source of all information and materials obtained by Defendants involving his sister and client do not contribute to any public debate.

Defendants' failure to meet their burden on the first step is dispositive, and the Court need not address any of Defendants' arguments to legal or factual sufficiency. However, even if the Court is inclined to address legal sufficiency, Defendants' arguments still fail under the second prong of the anti-SLAPP inquiry.

### D.    Plaintiff Has Shown A Minimum Level Of Legal Sufficiency On Each Of His Claims

In order to survive the second inquiry in an anti-SLAPP motion to strike, Plaintiff's Complaint need only show a "minimum level of legal sufficiency and triability." *Dakar*, 611 F.3d at 598 ("the second step of the anti-SLAPP inquiry is often called the minimal merit prong."); *Manzari v. Associated Newspapers*, 830 F.3d 881, 889 (9th Cir. 2016) (plaintiff alleging defamation need only establish "her claim has 'minimal merit'" to survive anti-SLAPP motion).   The Court cannot analyze triability without allowing Plaintiff the benefit of discovery, and thus must not make any ruling regarding "triability" under Rule 56 at this stage of the litigation.   *See Planned Parenthood*, 890 F.3d at 833.   Because Defendants' factual and legal sufficiency arguments are tortuously intertwined throughout its Motion, the Court should likewise withhold its ruling on "legal sufficiency" until discovery is completed.

If the Court is inclined to parse out Defendants' purely legal arguments to make a ruling on "legal sufficiency"–no easy task given Defendants' abundant citations throughout its Motion to declarations and exhibits not contained in the Complaint–it must first accept as true all of the Complaint's well-pled factual allegations and draw

JENKINS KAYAYAN LLP

1   all reasonable inferences in favor of Mr. Sanchez.  *See Daniels-Hall*, 629 F.3d at 998

2   (courts ruling on legal sufficiency of pleadings must accept well pled allegations and

3   draw all reasonable inferences in light most favorable to non-moving party).

         1.    <u>Plaintiff Has Shown A Minimum Level Of Legal Sufficiency On His Defamation Claim</u>

6   ***Defendants make no purely legal arguments that Plaintiff has not met the***

7   ***pleading requirements for defamation***; rather they argue that the "overwhelming

8   evidence show[s]" that the challenged statements are true based on evidence

9   independent of the Complaint presented in witness declarations in support of the

10  Motion.  Mot. at 13:9; *see id*. at 13:1-20:1 (arguing factual sufficiency of libel claim

11  including over fifty citations to three separate declarations and twelve exhibits).

12  Because each of Defendants' arguments attacks factual sufficiency and rely on

13  evidence independent of the Complaint, these arguments are not suitable for

14  determination under Rule 12(b)(6) but rather ***require full and adequate discovery***

15  ***before the court may determine the factual sufficiency of such claims*** under Rule 56.

16  *See Planned Parenthood*, 890 F.3d at 833.  This claim is not yet ripe for the Court's

17  analysis, as Defendants raise no purely legal, 12(b)(6) arguments with respect to the

18  defamation claim.

19        If, however, the Court deems that Defendants' arguments are purely challenges

20  to the legal sufficiency of the Complaint, and thus accepts all of Plaintiff's allegations

21  as true and draws all reasonable inferences in favor of Mr. Sanchez, Defendants have

22  not, and cannot, establish that the Complaint does not meet the minimum level of legal

23  sufficiency required of the defamation claim.

24        "The elements of a defamation claim are (1) a publication that is (2) false, (3)

25  defamatory, (4) unprivileged, and (5) has a natural tendency to injury or causes special

26  damage."  *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259 (2017) ("a written

27  communication that is false, that is not protected by any privilege, and that exposes a

28  person to contempt or ridicule or certain other reputational injuries, constitutes libel.")

JENKINS KAYAYAN LLP

16

Defendants concede the first element, that the defamatory statements at issue were *published*. Mot. at 10:28-11:1 ("the statements about which Sanchez complains were contained in a press release" and therefore "were made in a public forum"). Defendants likewise do not argue or present evidence that the defamatory statements at issue were privileged or did not have a natural tendency to cause injury or special damages. Rather, defendants argue that the defamatory statements at issue were true, substantially true, or not defamatory. Defendants are wrong on all three counts.

> a.   *Defendants' statements that Mr. Sanchez was the source of the Pornographic Materials are demonstrably false and defamatory*

The Press Release falsely stated that Mr. Sanchez (1) "**tipped the National Enquirer off** to the affair **on September 10, 2018**," (2) "provided **all** of the materials for our investigation" over "the course of four months," and "[t]here was **no involvement by any other third party whatsoever**," and (3) "falsely represent[ed] our reporting, and his role in it." (Compl. ¶ 61.) However, Plaintiff has pleaded, and thus adequately established under Rule 12, that the Press Release was intentionally false in at least three ways. (*Id*. ¶¶ 62; 63-68.) Any disagreement by Defendants of this well-pled allegation is a factual challenge subject to Rule 56, not Rule 12.

First, Mr. Sanchez adequately alleged that it was *Defendants* who first contacted Mr. Sanchez in July 2018 with information on Bezos's affair with Mr. Sanchez's sister, two months before Defendants' press release claimed Mr. Sanchez approached Defendants. (*E.g., id.* ¶¶ 43, 63.) Defendants' attempt to demonstrate that Mr. Sanchez did in fact leak his own sister's affair in September 2018 through declarations and exhibits amounts to a premature factual challenge for the trier of fact.

Second, Mr. Sanchez adequately alleged that he was not Defendants' source for **all** of the information AMI uncovered on Bezos's affair with Mr. Sanchez's sister (*e.g., id*. ¶ 65.), which by inference would include the Pornographic Materials, some of which purportedly depicted his own sister. *See Couch v. San Juan Unified Sch.*

17

JENKINS KAYAYAN LLP

*Dist.*, 33 Cal. App. 4th 1491, 1500-01 (1995) (defamatory statements are to be read "in their original context with respect to the totality of the circumstances."); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts must draw all reasonable inferences in the light most favorable to the non-moving party when evaluating legal sufficiency of pleadings).   Additionally, Plaintiff has pleaded that Defendants *admitted* to Mr. Sanchez that "Defendants had first uncovered the Bezos/Sanchez affair from another source entirely" (*id*. ¶ 64) and further admitted to the general public that Defendants had a source independent of Mr. Sanchez who had provided audiotapes (*id*. ¶ 65).   Defendants never assert that Mr. Sanchez provided them with these audiotapes.  It is therefore reasonable to infer that someone other than Mr. Sanchez gave Defendants the audiotapes as Mr. Howard publicly acknowledged.

Moreover, Mr. Sanchez adequately alleged he was not and could not have been the source of the Pornographic Materials because he never possessed them.  (*E.g., id*. ¶ 68 (Mr. Sanchez "never possessed" the Pornographic Materials and the FBI and Mr. Gavin de Becker independently concluded after thorough investigation that Mr. Sanchez had never been in possession of the Pornographic Materials); ¶ 67 ("Plaintiff did not provide the Defendants with the Pornographic Materials […] or many of the other materials included in TNE stories about the affair.").)  Defendants' attempt to demonstrate otherwise through declarations and exhibits amounts to a premature factual challenge for the trier of fact.

<u>Third</u>, Mr. Sanchez adequately alleged that Defendants' statement about Mr. Sanchez's "continued efforts" to "falsely represent [AMI's] reporting, and [Mr. Sanchez's] role in it" was an obvious reference to Mr. Sanchez's previous public denials that he provided Defendants with the Pornographic Materials.  (*Id*. ¶ 66.)  Mr. Sanchez's denials were true; accordingly, Defendants' statement that Mr. Sanchez's *true* denials were *false* was therefore deliberately false and defamatory.

Defendants argue that the Press Release "did not state or suggest that Sanchez provided AMI with [the] [P]ornographic [M]aterials (even though he did)" and thus

18

1    "the facts and circumstances surrounding the press release do not support Sanchez's

2    proffered innuendo."   Mot. at 16:3-10.   However, to survive a motion on the

3    pleadings, Mr. Sanchez need only show that a statement is "reasonably susceptible" to

4    "a defamatory interpretation" in order for it to "become a question for the trier of fact

5    whether or not it was so understood."   *Smith v. Maldonado*, 72 Cal. App. 4th 637, 647

6    (1999).   This question "must be resolved by considering whether the reasonable or

7    'average' reader would [] interpret the material" as defamatory "in their original

8    context with respect to the totality of the circumstances."   *Couch*, 33 Cal. App. 4th at

9    1500-01.   Here, a reasonable AMI reader would interpret the Press Release's assertion

10   that Mr. Sanchez was the sole source of "all materials for [AMI's] investigation" to

11   mean that Sanchez had provided AMI with the Pornographic Materials related to the

12   affair given AMI's previous reporting on the Pornographic Materials.   (*See e.g.*,

13   Compl. ¶ 54 (AMI published an online article on January 9, 2019 discussing the affair

14   between Ms. Sanchez and Mr. Bezos and included a reference to a "steamy picture too

15   explicit to print here"); *id.* ¶ 60 (Mr. de Becker's March 30, 2019 column in *The Daily*

16   *Beast* revealed that AMI had procured "embarrassing photos" of Mr. Bezos, aka the

17   Pornographic Materials).)

18       Thus, AMI's statements in the Press Release are, at the very least, "reasonably

19   susceptible" to a "defamatory interpretation."   Attempts to overcome this reasonably

20   defamatory interpretation through declarations not in the Complaint amount to

21   premature factual challenges reserved for summary judgment or the trier of fact.

22              b.   *Defendants' statements that Mr. Sanchez was the sole*
23                   *source of materials other than the Pornographic Materials*
24                   *are also false and defamatory*

25       Mr. Sanchez alleges that he "did not provide Defendants with the Pornographic

26   Materials (some of which purportedly depicted his own sister) **or many of the other**

27   **materials included in [AMI] stories about the affair**."   (Compl. ¶ 67.)   Defendants

28   argue that "because Sanchez does not identify what these purported materials are, he

JENKINS KAYAYAN LLP

cannot establish that he was defamed […] by being identified as Defendants' source for them." Mot. at 19:6-11. Not only does the Complaint specifically state which other materials are in question (*e.g.,* Compl. ¶ 56 ("intimate text messages"); ¶ 65 ("audiotapes")), but Defendants again ignore that allegations of defamatory statements are to be read "in their original context with respect to the totality of the circumstances." *Couch*, 33 Cal. App. 4th at 1501.

 2. <u>Plaintiff Has Shown A Minimum Level Of Legal Sufficiency On His Intentional Infliction Of Emotional Distress Claim</u>

 ***Defendants again make no purely legal arguments that Plaintiff has not met the pleading requirements for Intentional Infliction of Emotional Distress "IIED"***; rather they argue that "California courts do not permit a plaintiff to prevail on a claim for IIED where, as here, it is based solely on speech-related acts that cannot support a claim for libel." Mot. at 20:2-16. This argument necessarily depends on the factual sufficiency of the libel claim, again relying on declarations and exhibits independent of the Complaint, and is therefore not appropriate for the Court's analysis until Plaintiff is afforded full discovery. *See Planned Parenthood*, 890 F.3d at 833.

 If, however, the Court deems any of Defendants' arguments are purely challenges to the legal sufficiency of the Complaint, and thus accepts all of Plaintiff's allegations as true and draws all reasonable inferences in favor of Mr. Sanchez, Defendants have not, and cannot, establish that the Complaint does not meet the minimum level of legal sufficiency required of the IIED claim.

 A cause of action for IIED requires "(1) extreme and outrageous conduct," (2) conducted with "the intention of causing or, reckless disregard of the probability of causing, emotional distress," which (3) was the actual and proximate cause of the Plaintiff's "severe or extreme emotional distress." *Cervantez v. J.C. Penny Co.*, 24 Cal. 3d 579, 593 (1979). Outrageous behavior includes when the defendant "acts intentionally or unreasonably with the recognition that the acts are likely to result" in mental distress. *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1122 (1988).

JENKINS KAYAYAN LLP

20

"[E]motional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry" so long as it is "severe" and not "trivial or transitory." *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970). Emotional distress is "severe" when it is "of such substantial quality or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Id.; see also Bikkina v. Mahadevan*, 241 Cal. App. 4th 70, 88-89 (2015) (defendant's public statements against plaintiff were sufficiently "severe" to survive anti-SLAPP motion to strike claim of IIED upon showing of plaintiff's "great stress" including stomach problems, chest pains, insomnia, and fear that he would lose his job). Plaintiffs have pleaded each of these elements in sufficient detail. (*E.g.,* Compl. ¶¶ 77-80.)

Defendants only argue that Defendants' false and defamatory statements cannot be "extreme and outrageous" because Defendants intentionally defamed Mr. Sanchez "in response to statements by Sanchez[.]" Mot. at 20:16-23. The case Defendants cite, *So v. Shin*, 212 Cal. App. 4th 652 (2013), ***actually supports Plaintiff's request for the Court to order discovery*** on this issue of fact. In *So*, the defendant argued on demurrer that a doctor "act[ing] with anger and hostility" could not, as a matter of law, constitute "outrageous conduct" when he was "attempting to calm plaintiff." *Id.* at 671. The Court rejected the defendants' argument and held that "[t]here is no bright line standard for judging outrageous conduct and [...] its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility." *Id.* at 671-72. Here, the Court should reject Defendants' bright line argument that defamatory statements cannot be extreme or outrageous so long as they are made in response to statements of the defamed party.

Rather, whether conduct is outrageous is a question of fact, and thus not appropriate for the Court to consider until Plaintiff is allowed discovery. *Ragland v. U.S. Bank. Nat'l Assn.*, 209 Cal. App. 4th 182, 204 (2012) (outrageous conduct is "a question of fact"); *see also Fletcher*, 10 Cal. App. 3d at 397 (insurer's conduct was

21

JENKINS KAYAYAN LLP

1  outrageous enough to constitute IIED when it, knowing the insured was in dire

2  financial straits, threatened insured with a lawsuit to recover previous policy payments

3  to coerce insured into surrendering his policy).

3.  <u>Plaintiff Has Shown A Minimum Level Of Legal Sufficiency On
    His Conspiracy To Commit Intentional Torts Claim</u>

6  ***Defendants again make no purely legal arguments that Plaintiff has not met***

7  ***the pleading requirements for conspiracy***; like Plaintiff's IIED claim, Defendants

8  merely argue that the conspiracy claim fails because Plaintiffs cannot show factual

9  sufficiency of the libel claim, which is substantially based on the same behavior.  This

10 argument is therefore not appropriate for the Court's analysis until Plaintiff is afforded

11 full discovery.  *See Planned Parenthood*, 890 F.3d at 833.

12 If, however, the Court deems any of Defendants' arguments are purely

13 challenges to the legal sufficiency of the Complaint, it must accept all of Plaintiff's

14 allegations as true and draw all reasonable inferences in favor of Mr. Sanchez.  Under

15 this standard, Defendants have not established that the Complaint does not meet the

16 minimum level of legal sufficiency required of the conspiracy claim.

17 A conspiracy cause of action requires proof of three elements: "(1) the formation

18 and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy,

19 and (3) damages arising from the wrongful conduct."  *Kidron v. Movie Acquisition*

20 *Corp.*, 40 Cal. App. 4th 1571, 1582 (1995).  Defendants concede that Plaintiff has

21 adequately pleaded the first and second elements (Mot. at 21:10-13), and Plaintiff has

22 sufficiently pleaded damages (Compl. ¶¶ 84-85).

23 Defendants only argue that agents and employees of a corporation cannot

24 conspire with their corporate principal or employer where they act in official capacities

25 on behalf of the corporation and not as individuals for their individual advantage."

26 Mot. at 21:16-24.  However, California law "does not preclude the subjection of agents

27 to conspiracy liability for conduct which the agents carry out 'as individuals for their

28 individual advantage[.]'"  *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 47 (1989)

22

JENKINS KAYAYAN LLP

1    (citing *Wise v. Southern Pacific Co.,* 223 Cal. App. 2d 50, 72 (1963)).  Here, Plaintiff

2    has properly alleged that Mr. Pecker, Mr. Howard, and fictitious Does 1 through 10

3    participated in a conspiracy to defame Mr. Sanchez and scapegoat him by "acting

4    jointly and for their individual benefit."  (Compl. ¶ 82.)

5         Moreover, the California Supreme Court has held that that agents, corporate

6    directors, and officers "may be held liable, ***as conspirators or otherwise***, for violation

7    of their own duties towards persons injured by the corporate tort" **so long as such**

8    **persons "directly order, authorize, or participate in the corporation's tortious**

9    **conduct."** *Doctors' Co.*, 49 Cal. 3d at 48; *see also Wyatt v. Union Mortg. Co.*, 24 Cal.

10   3d 773, 785 (1979) ("Personal liability […] may rest upon a "conspiracy" among the

11   officers and directors to injure third parties through the corporation."); *PMC, Inc. v.*

12   *Kadisha*, 93 Cal. Rptr. 2d 663, 666 n.4 (Ct. App. 2000) (same); *United States Liab. Ins.*

13   *Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970); *Golden v. Anderson*, 256 Cal.

14   App. 2d 714, 719-720 (1967).  Here, Plaintiff has adequately alleged that Mr. Pecker,

15   Mr. Howard, and fictitious Does 1-10 are personally liable for their participation in a

16   conspiracy by "acting jointly" to defame Mr. Sanchez and scapegoat him through the

17   corporation, specifically by using AMI's Press Release.  (Compl. ¶ 82.)

18        Thus, Plaintiff has properly alleged facts that subject each Defendant to personal

19   conspiracy liability for conduct they carried out (1) as individuals for their own

20   advantage and (2) through the corporation to injure a third party.  Any disagreement of

21   this well-pled allegation is a factual challenge subject to Rule 56, not Rule 12.

22              4.    Plaintiff Has Shown A Minimum Level Of Legal Sufficiency And
                     Triability On His Aiding And Abetting Commission of Intentional
23                   Torts Claim

24

25        ***Defendants again make no legal arguments that Plaintiff has not met the***

26   ***pleading requirements for his aiding and abetting commission of intentional torts***

27   ***claim***.  Defendants only argue that the conspiracy claim fails because Plaintiffs cannot

28   show factual sufficiency of the libel claim, which is substantially based on the same

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO C.C.C.P. § 425.16

JENKINS KAYAYAN LLP

behavior.  This argument is therefore not appropriate for the Court's analysis until Plaintiff is afforded full discovery.  *See Planned Parenthood*, 890 F.3d at 833.

### E.    Plaintiff Is Entitled To Leave To Amend Rather Than Dismissal

Even if the Court finds that any or all of Plaintiff's claims are legally insufficient as currently pled, it cannot strike the Complaint without first allowing Plaintiff leave to amend any pleading deficiencies.  *See* Fed. R. Civ. Proc. § 15(a).  The Ninth Circuit has held that an automatic denial of a plaintiff's right to amend an initial complaint pursuant to an anti-SLAPP special motion to strike is in "direct collision" with the Federal Rules of Civil Procedure.  *Covad*, 377 F.3d at 1091 ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment.").  The purpose of the anti-SLAPP statute ("the early dismissal of meritless claims") would "still be served if plaintiffs eliminated the offending claims from their original complaint" because "the anti-SLAPP remedies remain available to defendants" for the amended complaint.  *Id.*

### F.    Defendants Are Not Entitled To Fees

Even if the Court deems it proper to dismiss the Complaint without prejudice, anti-SLAPP remedies such as attorney's fees are not available to Defendants.  *Brown v. Elec. Arts, Inc.,* 722 F. Supp.2d 1148, 1155 (C.D. Cal. 2010).  The Brown Court decided that attorney's fees were not available to the prevailing defendant because even though the anti-SLAPP motion brought against the plaintiff's initial complaint was granted, the prevailing defendant had only achieved a temporary and "technical" victory since the Ninth Circuit requires that plaintiffs be given an opportunity to amend their initial complaint.  *Id.*  Here, Defendants would not be entitled to fees, even if they prevailed on the Motion, because Plaintiffs are entitled to amend any pleading deficiencies.  *See* Fed. R. Civ. Proc. § 15(a).

JENKINS KAYAYAN LLP

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO C.C.C.P. § 425.16

### G.     Plaintiff Should Be Awarded His Fees

Having failed to establish the first step of the anti-SLAPP inquiry, and having ignored the anti-SLAPP procedure as it applies in the Ninth Circuit, Defendants' motion lacks merit and is therefore frivolous.  California law calls for an award of attorney's fees in such circumstances.  Cal. Civ. Proc. Code § 425.16(c)(1) (mandatory fee award for "frivolous" filing or one "solely intended to cause unnecessary delay").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court reserve its ruling on the Motion and instead set a scheduling conference so that discovery on all issues can immediately proceed.  Alternatively, should the Court be inclined to rule on the merits, the Motion should be outright denied because (1) Defendants have not met their burden to trigger anti-SLAPP protections, (2) Plaintiff has pleaded each of his claims with legal sufficiency, and (3) Plaintiff is entitled to leave to amend to cure any pleading deficiencies before dismissal with prejudice.


Dated: July 10, 2020                    JENKINS KAYAYAN LLP


                                        By:   /s/ Jonathan M. Jenkins
                                              Jonathan M. Jenkins

                                              *Attorneys for Plaintiff*
                                              *MICHAEL SANCHEZ*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
PURSUANT TO C.C.C.P. § 425.16