UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|

| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 1 of 17 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO STRIKE [13] AND MOTION TO DISMISS [15]**

On March 27, 2020, Plaintiff Michael Sanchez filed a Complaint against Defendants American Media, Inc. ("AMI"), The National Enquirer, Inc., David Pecker, and Dylan Howard asserting the following claims: (1) libel, (2) intentional infliction of emotional distress ("IIED"), (3) conspiracy to commit intentional torts, and (4) aiding and abetting commission of intentional torts.[1] [Doc. # 1.] On June 30, 2020, Defendants American Media and Pecker filed a motion to strike ("MTS") the Complaint in its entirety under California's statute restricting Strategic Lawsuits Against Public Participation ("anti-SLAPP"), California Civil Procedure Code section 425.16. [Doc. # 13.] On July 1, 2020, Defendant Howard filed a notice of joinder in the MTS and also filed his own motion to dismiss ("MTD") the Complaint under Federal Rule of Civil Procedure 12(b)(6). [Doc. # 15.] Plaintiff filed an opposition to the MTS and MTD [Doc. # 21], and Defendants filed a reply to the MTS, although not to the MTD [Doc. # 24].

For the reasons set forth below, Defendants' anti-SLAPP MTS is **GRANTED in part**, Howard's MTD is **GRANTED**, and both parties' requests for attorney's fees are **DENIED**. The Court also *sua sponte* **DISMISSES** Defendant Pecker. The remainder of the MTS is held in abeyance pending targeted discovery.

**I.
FACTUAL BACKGROUND**

The following are allegations drawn from the Complaint.[2] Defendant AMI is the parent company of the company that publishes *The National Enquirer* ("TNE"), a weekly tabloid

---

[1] Defendant The National Enquirer, Inc. has since been voluntarily dismissed from the case. [Doc. # 20.]

[2] When considering allegations or evidence relating to an anti-SLAPP motion to strike, federal courts apply "different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 2 of 17 |

newspaper. Compl. at ¶¶ 9–11. Defendant Pecker is AMI's Chairman and Chief Executive Officer, and Defendant Howard is AMI's Vice President and Chief Content Officer. *Id.* at ¶¶ 12–13.

Plaintiff is the owner and CEO of Axis Management, a Hollywood-based talent management and film and television production firm. His work includes "arranging, optimizing, and occasionally suppressing media coverage of his high-profile clients." *Id.* at ¶ 19. Through his work, Plaintiff has made numerous deals with AMI and built connections with reporters and executive management at media outlets, including Pecker and Howard. *Id.* at ¶ 20.

One of Plaintiff's clients was his sister, Wendy Lauren Sanchez, a news anchor, entertainment reporter, actress, pilot, and producer. Plaintiff helped facilitate the growth of Ms. Sanchez's career and "optimized Ms. Sanchez's portrayal in the media by using his skill, experience, and media relationships to 'kill' media stories that cast her in an unflattering light" and "eliminate rivals competing for Ms. Sanchez's career opportunities." *Id.* at ¶ 21.

Accordingly, Plaintiff had knowledge of and was entrusted with Ms. Sanchez's business and personal affairs. In March 2018, Ms. Sanchez revealed to Plaintiff that she had been involved in an extramarital affair with billionaire Jeffrey Bezos, the founder and CEO of Amazon.com and owner of *The Washington Post*, since December 2017. *Id.* at ¶¶ 22–2. Plaintiff eventually became the couple's independent media consultant and devised a plan to keep the extramarital affair out of the media spotlight until Ms. Sanchez and Bezos had told their spouses and families and were ready to go public. *Id.* at ¶¶ 24–25.

Plaintiff alleges that between May 1, 2018 until at least February 17, 2019, the Saudi Arabian government illegally gained access to the contents of Bezos' phone, including intimate and occasionally explicit text message exchanges with Ms. Sanchez, which Defendants then obtained to publish a derogatory piece about Bezos and gain political favor. *Id.* at ¶¶ 34-41. AMI had previously entered into a non-prosecution agreement ("NPA") with the United States Attorney of the Southern District of New York, admitting to violating campaign finance laws and agreeing that should it commit any further crimes, it would thereafter be subject to prosecution for any federal criminal prosecution. *Id.* at ¶ 30, n.2.

In July 2018, Andrea Simpson, an AMI editor, called Plaintiff, and the two met. *Id.* at ¶¶ 3, 43. Without revealing Ms. Sanchez and Bezos' affair, Plaintiff "confirmed Defendants had the

---

*Progress*, 890 F.3d 828, 833 (9th Cir. 2018). For the reasons stated herein, the Court applies the standard of Federal Rule of Civil Procedure 12(b)(6) and thus accepts all factual allegations in the Complaint as true solely for the purpose of deciding the anti-SLAPP MTS and Howard's MTD.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 3 of 17 |

story about his sister and Mr. Bezos and was able to deflect Defendants' investigation and slow the public emergence of the affair." *Id.* at ¶ 43. In late October 2018, Plaintiff elected to get ahead of the story "to tactically limit the backlash against his sister and Mr. Bezos" and "entered into a confidential deal to cooperate strategically with Defendants." *Id.* at ¶ 46. He "agreed to confirm the existence of the affair and provide a face-to-face viewing of corroborating evidence, including a few text messages and non-pornographic photographs shared by Ms. Sanchez – but only under conditions that would give him some control over the timing of the story and the manner in which the affair was portrayed in TNE, *Us Weekly*, and other AMI publications, as well as to shape and soften the story during the drafting process." *Id.*

Between October 2018 and March 2019, Plaintiff discussed the Bezos-Sanchez affair with Simpson, AMI News Director James Robertson, and Defendant Howard. *Id.* at ¶ 47. In a contract dated January 1, 2019, in anticipation of the pending public disclosure of her affair, Ms. Sanchez retained Plaintiff to provide crisis management, strategic communications, public and media relations services. *Id.* at ¶ 48. On January 7, 2019, Defendant Howard sent Bezos a "request for comment" email seeking comment regarding certain intimate details about the affair, and Robertson sent an identical request for comment email to Ms. Sanchez. Bezos and Ms. Sanchez requested that Plaintiff respond on their behalf, so Defendant Howard then forwarded the detailed 44-point request for comment to Plaintiff. *Id.* at ¶ 49. Plaintiff alleges that the request for comment contains assertions that he never discussed with Defendants, including details of how Bezos and Ms. Sanchez met, details about Bezos' family, and specific details about hotels and planes the couple had used. *Id.* at ¶ 50.

The same day that Bezos and Ms. Sanchez announced their affair on January 9, 2019, TNE and another tabloid, *Page Six*, publicized news of it. The TNE articles included content and material not given to Defendants by Plaintiff. *Id.* at ¶ 54.

Bezos' head of security, Gavin de Becker, investigated the identity of Defendants' sources and whether the TNE article was motivated by politics. *Id.* at ¶ 55. Defendants told Bezos that they had obtained additional intimate text messages between him and Ms. Sanchez, as well as graphic images of them, which Plaintiff refers to as the "Pornographic Materials." *Id.* at ¶ 56. In a public online post, Bezos published the email communications from Defendant Howard and other AMI employees expressing that AMI would publish the Pornographic Materials unless Bezos and de Becker signed a settlement agreement and issued public statements affirming that they had no information that Defendants' coverage of Bezos' affair "was politically motivated or influenced by political forces." *Id.* at ¶ 58.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 4 of 17 |

On March 30, 2019, online publication *The Daily Beast* published an op-ed by de Becker questioning whether Plaintiff was the sole source of TNE's story and revealing that Defendants had also demanded that de Becker issue a public statement that his investigation had concluded that Defendants had not relied on "any form of electronic eavesdropping or hacking in their news-gathering process." *Id.* at ¶ 60, n.11 (citing Gavin de Becker, *Bezos Investigation Finds the Saudis Obtained His Private Data*, The Daily Beast (March 30, 2019), https://www.thedailybeast.com/jeff-bezos-investigation-finds-the-saudis-obtained-his-private-information?ref=home (last visited December 10, 2020)).[3] De Becker "concluded with high confidence that the Saudis had access to Bezos' phone, and gained private information. As of today, it is unclear to what degree, if any, AMI was aware of the details." de Becker, *Bezos Investigation Finds the Saudis Obtained His Private Data*, The Daily Beast (March 30, 2019).

The next day, an AMI spokesperson issued the following statement, which was published in another piece by *The Daily Beast*:

> Despite the false and unsubstantiated claims of Mr. de Becker, American Media has, and continues to, refute the unsubstantiated claims that the materials for our report were acquired with the help of anyone other than the single source who first brought them to us. The fact of the matter is, it was Michael Sanchez who tipped the National Enquirer off to the affair on Sept. 10, 2018, and over the course of four months provided all of the materials for our investigation. His continued efforts to discuss and falsely represent our reporting, and his role in it, has waived any source confidentiality. There was no involvement by any other third party whatsoever (emphasis added).

Compl. at ¶ 62, n.13 (citing *National Enquirer Says Saudis Didn't Help on Bezos Story*, The Daily Beast (March 31, 2019), https://www.thedailybeast.com/national-enquirer-says-saudis-didnt-help-onbezos-story (last visited March 17, 2020)).

Plaintiff denies that he tipped off AMI to the affair in September 2018 and asserts that Howard has alluded to other sources. *Id.* at ¶¶ 63–65. He alleges that he truthfully made public denials that he had provided Defendants with the Pornographic Materials and was not the source of the Pornographic Materials because he never possessed them. *Id.* at ¶¶ 63–68.

Plaintiff alleges significant economic harm and emotional distress due to the statements in AMI's press release. Compl. at ¶ 70.

---

[3] The Court may consider documents incorporated by reference in a Complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 5 of 17 |

# II.
# LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id*.

### B. Anti-SLAPP Motion to Strike

California's anti-SLAPP statute "permits a defendant to pursue early dismissal of meritless lawsuits arising from conduct by the defendant in furtherance of the right of petition or free speech." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network*, 742 F.3d 414, 419 (9th Cir. 2014); Cal. Civ. Proc. Code § 425.16. Resolution of an Anti-SLAPP motion calls for a two-step procedure. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003). First, the defendant must show that the challenged action arises from protected activity—*i.e.*, "the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue[.]'" *See id.* (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). If the court determines that the plaintiff seeks relief "based on allegations arising from activity protected by the statute, the second step is reached." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). The second step requires the plaintiff to demonstrate a probability of prevailing on his or her claims. *LaMarche*, 31 Cal. 4th at 733; *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002) ("the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 6 of 17 |

sustain a favorable judgment if the evidence submitted by the plaintiff is credited") (internal quotations omitted).[4]

In the second step of the anti-SLAPP analysis, federal courts apply "different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). The Ninth Circuit recently determined that a conflict exists between California's anti-SLAPP law and the Federal Rules of Civil Procedure ("FRCP"). *Id*. In order to prevent a situation that "would effectively allow the state anti-SLAPP rules to usurp the federal rules," courts may apply the standards of either FRCP 12(b)(6) or FRCP 56 when analyzing the merit of a plaintiff's claim. *Id*. at 834. *See also Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50) ("Procedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure.").

Accordingly, during the second step's analysis, the Court examines the basis of the anti-SLAPP motion and then analyzes the merits of the plaintiff's claim under either the federal motion to dismiss or summary judgment standard, depending on whether the motion challenges the legal sufficiency or the factual sufficiency of the claim. *See Penrose Hill, Ltd. v. Mabray*, -- F. Supp. ---, 2020 WL 4804965, at *5 (N.D. Cal. Aug. 18, 2020) (determining the standard to be applied at the second step). If the summary judgment standard is applied, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court" to avoid a "stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court." *Planned Parenthood*, 890 F.3d at 834.

California and federal courts also differ with respect to granting leave to amend if an anti-SLAPP movant succeeds. California courts do not grant leave to amend. *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001) (leave to amend following successful anti-SLAPP motion in state court "would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy"). Federal courts, on the other hand, employ Rule 15(a)'s more liberal policy of generally granting a plaintiff leave to amend his first Complaint. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[T]he purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint."); *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1140 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017) ("[I]t is generally error to grant a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting

---

[4] Although exemptions to application of the anti-SLAPP statute exist, *see* Cal. Civ. Proc. Code § 425.17, no parties argue that they apply in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 7 of 17 |

the plaintiff leave to amend.") (citing *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004)).

If a court grants leave to amend, anti-SLAPP remedies, including fees and costs, remain available after amendment if the offending claim is reasserted. *Verizon Del. Inc.*, 377 F.3d at 1091.

# III.
# DISCUSSION

Defendants contend that they have met their burden at the first step because the AMI press release was in a public forum and made in connection with an issue of public interest. MTS at 18. They argue that at the second step, Plaintiff does not establish a probability of prevailing on any of his four claims because the press release contained no falsehoods necessary for a libel claim, and that his remaining claims rely on establishing libel. *Id.* at 2, 12–21. Howard also argues that the claims against him should be dismissed due to Plaintiff's failure to allege his specific involvement with issuing the press release. MTD at 4–10.

Plaintiff argues that because Defendants make both factual and legal challenges to his Complaint, under *Planned Parenthood*, he must be given the opportunity to conduct discovery to oppose Defendants' motion. Opp. at 15–18. He does not specifically address Howard's arguments in his MTD.

The Court addresses first the parties' arguments regarding Howard's MTD, then the anti-SLAPP MTS.

**A.    Defendant Howard's MTD**

Howard argues that the claims against him must be dismissed because the Complaint does not specifically allege that he took any part in issuing the press release that underlies Plaintiff's defamation, IIED, conspiracy, and aiding and abetting claims. An officer may be held liable for an intentional tort he committed on behalf of the corporation even though the corporation is also liable. *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 393 F. Supp. 3d 968, 978 (E.D. Cal. 2019). Only someone "who takes a responsible part in a publication of defamatory material," including a newspaper editor, "may be held liable for the publication." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 712 (2007).

Plaintiff alleges only that "Defendants rushed to issue a defamatory responsive 'statement'" and does not specifically allege how Howard participated in the statement's drafting and release.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 8 of 17 |

Compl. at ¶ 61.  He makes only more general allegations, such as that Howard was "AMI's Vice President and Chief Content Officer and exercises managerial control over all of TNE's operations" and, along with Defendant Pecker, "effectively manage[s] and control[s] AMI's and TNE's media operations."  *Id.* at ¶ 13.  The allegations in the Complaint do not, without more, plausibly allege Howard's involvement in making the allegedly defamatory statement.  Furthermore, Plaintiff's Opposition fails to oppose Howard's arguments in his MTD.  *See Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum.").

The Complaint fails to allege that Howard took "a responsible part" in publishing the press release at issue in this case.  *Overstock.com*, 151 Cal. App. 4th at 712.  For the same reasons, and because it contains even fewer allegations with regard to Defendant Pecker's involvement, the Complaint fails to adequately allege that Pecker took part in issuing the press release and committing any intentional tort.  Howard's MTD is thus **GRANTED**, and all claims against Howard are **DISMISSED**, with leave to amend.  The Court *sua sponte* **DISMISSES** Pecker from the action, with leave to amend.

### B.    Anti-SLAPP MTS

#### 1.  Protected Activity

To satisfy the first anti-SLAPP prong, the defendant must show that the activity challenged by the plaintiff was taken "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b)(1).  The statute specifies four types of protected activity:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 9 of 17 |

constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e)(1)-(4); *see Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1147 (2016).

AMI argues that its press release falls under both the third category as made in a public forum in connection with an issue of public interest and under the fourth "catch-all" category. MTS at 17-19; *see FilmON.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 144–45 (2019). Plaintiff does not contest that the press release constitutes a "writing made in a place open to the public or a public forum" that satisfies that element of section 425.16(e)(3) or "any other conduct" under section 425.16(e)(4). *See* Opp. at 19-20; *see also Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1051 (E.D. Cal. 2008) (finding a press release and news articles to be statements in public fora); *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1161 (2004) (holding that a news publication is a public forum).

At issue, however, is whether Defendant AMI's statements about *Plaintiff* are "in connection with a public issue" or "in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code §§ 425.16(e)(3), (4). The California Supreme Court recently clarified that "a statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue." *FilmOn.com*, 7 Cal. 5th at 151. It went on to hold that "the inquiry of whether a statement contributes to the public debate is one a court can hardly undertake without incorporating considerations of context—including audience, speaker, and purpose." *Id.* at 151–52. Here, the speaker is an AMI spokesperson, who provided the press release to at least one online news outlet, *The Daily Beast*, for the purpose of rebutting an op-ed in *The Daily Beast* written by Bezos' security investigator, de Becker, published the day prior. The statement is thus a response in a literal "public conversation" sparked by AMI's publication of the Bezos story and continued by de Becker's op-ed and other articles cited in Plaintiff's Complaint. *See FilmOn.com*, 7 Cal. 5th at 151. Moreover, Plaintiff's allegations indicate that the broader context of the Bezos story implicates election interference and international relations, which are matters of great public interest. *See, e.g.*, Compl. at ¶¶ 30–38 (describing AMI's NPA with the U.S. Attorney of the Southern District of New York and the United Nations Human Rights Commission's January 2020 demand for an investigation into Saudi Arabian use of spyware on media organizations and journalists).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 10 of 17 |

AMI has therefore met its burden to demonstrate that the statements in the press release are protected under the anti-SLAPP statute. The burden shifts to Plaintiff to prove his probability of prevailing on his claims.

### 2. Probability of Prevailing on Claims

AMI asserts that Plaintiff's claims are legally deficient, while Plaintiff argues that AMI's legal and factual attacks are inextricably intertwined, and therefore discovery is required under *Planned Parenthood*. The Court examines each claim in turn.

### a. Defamation

Defamation requires "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injury or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007); *see also* Cal. Civ. Code § 45 (defining libel, a form of defamation, as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."). "The sine qua non of recovery for defamation is the existence of falsehood." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 155 (2013). Falsehood is analyzed by looking at "whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Id.* at 156 (citation omitted). The court must consider the totality of the circumstances when making this inquiry. *Id.* If the statement appears substantially true, or the "gist" or "sting" of the remark is justified even if the details are inaccurate, the statement is not defamation. *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1021 (2005).

The only elements AMI contests are the requirement that the statements be false and defamatory. *See* MTS at 20–26; Reply at 8–10.[5] Plaintiff alleges that three specific statements in the press release are false:

---

[5] The Court finds that the Complaint sufficiently alleges the remaining elements that the press release is a publication, unprivileged, and with a tendency to cause special damage. Defendants do not argue that Plaintiff is a public figure such that Plaintiff would also need to allege and ultimate prove "actual malice," and the Court declines to apply the standard for a public figure without the benefit of the parties' briefing. *See Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858, 867 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 11 of 17 |

1. "The fact of the matter is, it was Michael Sanchez who tipped the National Enquirer off to the affair on Sept. 10, 2018, . . . .";
2. "His continued efforts to discuss and falsely represent our reporting, and his role in it . . . ."; and
3. Plaintiff "provided all of the materials for [AMI's] investigation" and "[t]here was no involvement by any third party whatsoever."

Compl. at ¶ 61. He alleges that the first statement is false because an AMI employee, Simpson, first reached out to him about the Bezos story in July 2018, and he received an email from Howard on January 22, 2019 stating: "The untold story – if you will – has not been told as to how we uncovered the story. I'm saving it for my tombstone." *Id.* at ¶¶ 63–65. He alleges that the second statement is an "obvious reference to [his] previous and public denials . . . that [he] had provided Defendants with the Pornographic Materials," and because his denials are true, Defendants' statement is false. *Id.* at ¶ 66. Finally, according to the Complaint, because Plaintiff did not provide to AMI the Pornographic Materials or many of the materials included in TNE's stories about the affair, the third statement is also false. *Id.* at ¶ 67.

In its Reply, AMI concedes that it attacks only the factual sufficiency of the first statement but asserts that the second and third statements are legally insufficient because Plaintiff drew unsupportable inferences from the statements, and his defamation claim rests on those inferences, not on the statements themselves. Reply at 8–10. With respect to the second statement, AMI argues that "nothing in the press release actually states or even implies that Sanchez provided AMI with pornographic materials." *Id.* at 8. Similarly, AMI argues that the third statement did not implicate Plaintiff as the source of the Pornographic Materials. *Id.* at 9.

The Court applies the Rule 12(b)(6) standard to Plaintiffs' claims of defamation based on the second and third statements to determine if the Complaint sufficiently states those legal claims. *See Planned Parenthood*, 890 F.3d at 834; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the legal sufficiency of the defamation claims, the Court does not rely on the exhibits attached to Defendants' MTS, for to do so in a 12(b)(6) motion would convert it to a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12.

### i. Statements challenged for legal sufficiency

A defamation claim may be decided as a question of law if no reasonable reader or listener "could have reasonably understood the statement in the alleged defamatory sense." *Balzaga v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 12 of 17 |

*Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1339 (2009). "The defamatory character of language is measured 'according to the sense and meaning . . . which such language may fairly be presumed to have conveyed to those to whom it was published.'" *Id.* at 1338 (2009) (quoting *Savage v. Pacific Gas & Electric Co.*, 21 Cal. App. 4th 434, 447(1993)). Courts must, from the perspective of the reader or listener, determine "the sense or meaning of the language of the complaint for libelous publication according to its natural and popular construction." *Id.* (quoting *Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 688 (1994)). In doing so, courts examine the entire context of the statement and the "knowledge and understanding of the audience to whom the publication was directed." *Id.* (quoting *Monterey Plaza Hotel v. Hotel Emp'ees & Restaurant Emp'ees*, 69 Cal. App. 4th 1057, 1064–1065 (1999)).

The Court thus examines together the following challenged statements from AMI's press release to determine whether a reasonable reader would understand AMI as stating that Plaintiff saw and provided it with the Pornographic Materials: Plaintiff "falsely represent[ed]" AMI's reporting" and "provided all of the materials for [AMI's] investigation," and "[t]here was no involvement by any third party whatsoever."

The plain meaning of these statements is that Plaintiff alone provided all material related to the Bezos story to AMI and that he is lying if he denies it. Defendants argue that the statement merely means that Plaintiff provided materials for the *investigation*, with the implication that AMI's investigation uncovered the Pornographic Materials on its own. But the Complaint contains citations to several news articles that refer to Plaintiff as the paid source of the story and materials.[6] Any reasonable reader of the articles linked in the Complaint would come away with the fair understanding that AMI threatened Bezos with the publication of numerous intimate photos and that Plaintiff was the sole source of the story, including those photos. And "even if a statement is literally accurate, defamation may be proven if it has a false implication." *Hawran v. Hixson*, 209 Cal. App. 4th 256, 293 (2012). The statements that no third party was involved, that Plaintiff

---

[6] *See* de Becker, *Bezos Investigation Finds the Saudis Obtained His Private Data*, The Daily Beast (March 30, 2019) (describing a front-page *Wall Street Journal* article and other articles describing Plaintiff as the sole source of the story and mentioned the intimate photos AMI threatened to publish); Jeff Bezos, *No thank you Mr. Pecker*, Medium (February 7, 2019), https://medium.com/@jeffreypbezos/no-thank-you-mr-pecker-146e3922310f (last visited December 10, 2020) (publishing emails sent by Defendant Howard describing each intimate photo AMI threatened to publish); James Robertson, Andrea Simpson, and Dylan Howard, *Married Amazon Boss Jeff Bezos Getting Divorce Over Fling With Movie Mogul's Wife*, The National Enquirer (January 9, 2019) https://www.nationalenquirer.com/videos/jeff-bezos-divorce-lauren-sanchez-cheating-affair-photos-exclusive/ (describing "erotic selfies—including one steamy picture too explicit to print here" in the initial TNE revelation) (last visited December 10, 2020).

Case 2:20-cv-02924-DMG-PVC   Document 32   Filed 12/29/20   Page 13 of 17   Page ID #:324

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-2924-DMG (PVCx) | Date | December 29, 2020 |
|---|---|---|---|

| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 13 of 17 |
|---|---|---|---|

provided all materials for the investigation, and that Plaintiff's denials of his involvement are false would reasonably be understood to have the defamatory sense Plaintiff alleges.

The Complaint also satisfies the element of falsehood by alleging that AMI had sources other than Plaintiff for the Pornographic Materials, Plaintiff never possessed the Pornographic Materials or provided them to AMI, and a forensic search of his computers and electronic devices revealed that he never possessed them. *See* Compl. at ¶¶ 34–41, 68.

Accordingly, applying the Rule 12(b)(6) standard, Plaintiff has sufficiently stated his libel claim against AMI.

### ii. Statements challenged for factual sufficiency

AMI also maintains factual challenges to Plaintiff's claim. The parties dispute whether "it was Michael Sanchez who tipped the National Enquirer off to the affair on Sept. 10, 2018," as AMI asserted in the press release, and whether any source other than Plaintiff produced the Pornographic Materials to Defendants.

AMI argues that *Planned Parenthood*'s discovery requirement need not apply because the current evidentiary record is so overwhelmingly in its favor. AMI has provided declarations by Howard, Simpson (the initial employee with whom Plaintiff spoke), and employee James Robertson; copies of articles attached to Plaintiff's Complaint; and unauthenticated copies of emails between Plaintiff, Howard, Simpson, and Robertson, as well as emails among AMI employees about the Bezos story. *See* MTS Exhibits [Doc. # 13-1]. In opposition, Plaintiff has submitted only his declaration, which closely tracks the allegations in his Complaint. [Doc. # 22.]

Under *Planned Parenthood*, Plaintiff is not obligated to provide more without discovery. *See* 890 F.3d at 834 ("[D]iscovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court."). The cases to which Defendants cite are inapposite, as in each case, the court granted anti-SLAPP motions to strike claims that were legally, not factually, insufficient. *See, e.g.*, *Zweizig v. Nw. Direct Teleservices, Inc*, No. CV 15-02401-HZ, 2018 WL 6062316, at *2 (D. Or. Nov. 20, 2018) (striking counterclaims that were inadequately stated as a matter of law); *see also Tensor Law P.C. v. Rubin*, No. CV 18-01490-SVW (SKx), 2019 WL 3249595, at *4 (C.D. Cal. Apr. 10, 2019) (the court "need not refer to any of the evidence submitted by Defendant in deciding whether Plaintiff has set forth a legally sufficient claim against Defendant"). For example, one district court determined that discovery on the issue of whether certain documents were protected under a provision of anti-SLAPP law was unnecessary because the plaintiff was already in possession of all of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|

| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 14 of 17 |
|---|---|---|---|

documents needed to resolve that particular issue. *Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*, No. CV 17-01499-L (AGSx), 2019 WL 1242446, at *4 (S.D. Cal. Mar. 18, 2019). The court ultimately granted the anti-SLAPP motion because whether litigation privilege applied to the documents could be decided as a matter of law. *Id.* at *7. Similarly, a bankruptcy case cited by Defendants refers to *Planned Parenthood* but notes that "[n]o discovery could change the fact that it is clear from the face of the Complaint and judicially noticeable evidence submitted by the Defendants that the Plaintiff's claims are time-barred." *Halper v. Friedman (In re Halper)*, No. BK 09-23807-GM, 2019 Bankr. LEXIS 2718, at *9 (C.D. Cal. Aug. 26, 2019).

Due to the factual disputes in this case, the Court will order discovery tailored to give Plaintiff the "'opportunity to discover information that is essential to [his] opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). As ordered in further detail below, discovery will be limited to discovery of evidence that will elucidate the provenance of the Pornographic Materials.

### b. IIED

"A prima facie case of intentional infliction of emotional distress requires (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991).

In seeking to strike Plaintiff's IIED claim, AMI cites only to case law that precludes a plaintiff from successfully pleading an IIED claim where his defamation claim fails as a matter of law. *See* MTS at 27 (citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988); *Fellows v. National Enquirer, Inc.*, 42 Cal. 3d 234, 245 (1986)). Because the Court does not find that the defamation claim fails as a matter of law at this stage, the Court also cannot resolve AMI's legal challenge to the IIED claim on this ground. Nor can the Court find, as a matter of law, that AMI's statements, if defamatory, do not constitute "outrageous conduct" intentionally or recklessly causing emotional distress.

With regard to the third element, the California Supreme Court has held that severe emotional distress is a "high bar" that requires "'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993). Here, Plaintiff alleges that he experienced "insomnia, anxiety, loss of appetite, and nausea" as a result of Defendants' "scapegoating" Plaintiff for the salacious revelations about his sister. Compl at ¶¶ 78-79. Courts have found that lost sleep, "discomfort,

Case 2:20-cv-02924-DMG-PVC   Document 32   Filed 12/29/20   Page 15 of 17   Page ID #:326

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 15 of 17 |

worry, anxiety, upset stomach, concern, and agitation" do not constitute severe enough emotional distress for an IIED claim, while "complete disruption of life and diagnosis of depression" and "tightness in chest, heart palpitations, panic attacks, depression, insomnia, and diagnosis of post traumatic stress disorder" do. *Wong v. Jing*, 189 Cal. App. 4th 1354, 1376 (2010) (citing *Saari v. Jongordon Corp.* 5 Cal. App. 4th 797 (1992); *Kelly–Zurian v. Wohl Shoe Co.* 22 Cal. App. 4th 397 (1994). Because Plaintiff's alleged distress is similar to that suffered in *Wong*, the Court finds that it does not meet the "high bar" of showing severe emotional suffering.

Plaintiff thus fails to state a claim for IIED, and the Court **GRANTS**, with leave to amend, the MTS as to this claim.

### c. Conspiracy to Commit Intentional Torts and Aiding and Abetting Commission of Intentional Torts

A conspiracy cause of action requires proof of three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995). The Complaint does not allege the formation and operation of a conspiracy.

Because Plaintiff's Complaint does not establish the legal sufficiency of this claim, the Court **GRANTS**, with leave to amend, the MTS as to the conspiracy claim.

### d. Aiding and Abetting Commission of Intentional Torts

It is undisputed that AMI committed the acts that allegedly constitute intentional torts, and the Complaint alleges that AMI is the principal tortfeasor, not one who "gives substantial assistance or encouragement" to another to commit an intentional tort, knowing the other's conduct constitutes a breach of duty. *Casey v. U.S. Bank Nat'l Ass'n,* 127 Cal. App. 4th 1138, 1144 (2005).

The Court therefore **GRANTS**, with leave to amend, the MTS as to the claim for aiding and abetting.

### 3.   Attorney's Fees

The anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added); *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) ("If an anti-SLAPP motion to strike is granted, the suit is dismissed and the prevailing defendant is entitled to recover his or her attorney's fees and costs."); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 16 of 17 |

1115 (C.D. Cal. 2004) ("The statute is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating him or herself from a baseless lawsuit."). If a court finds that a special motion to strike is "frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion." Cal. Civ. Proc. Code section 425.16(c)(1).

Because the Court denies in part Defendants' anti-SLAPP motion with leave to amend and holds in abeyance the remainder of the MTS until limited discovery is complete, Defendants are not yet the prevailing parties for purposes of the anti-SLAPP statute and therefore an award of fees is not appropriate at this juncture. The MTS is also not frivolous or solely intended to cause unnecessary delay and thus also declines to award fees to Plaintiff at this time.

## IV.
## CONCLUSION

In light of the foregoing, the Court orders as follows:

1. Defendant Howard's MTD is **GRANTED**, and he is **DISMISSED** from the action, with leave to amend.

2. Defendant Pecker is *sua sponte* **DISMISSED** from the action, with leave to amend.

3. Defendant AMI's anti-SLAPP MTS is **GRANTED** with leave to amend with respect to Plaintiff's claims for IIED, civil conspiracy, and aiding and abetting, and those claims are **STRICKEN**.

4. The MTS is otherwise held in abeyance pending targeted discovery that allows Plaintiff to file a supplemental Opposition and Defendants to file a supplemental Reply.

    a. The parties shall have until **March 31, 2021** to conduct targeted discovery regarding the following topics: (1) from what source(s), if any, AMI received any information relating to its Bezos story prior to Plaintiff's admitted involvement in October 2018; (2) who initiated contact between AMI and Plaintiff regarding the Bezos story; (3) when, how, and to what extent Plaintiff shared the Pornographic Materials with anyone affiliated with AMI; and (4) if AMI in fact possesses the Pornographic Materials, when, how, and from what source(s) AMI received them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-2924-DMG (PVCx)** | Date | December 29, 2020 |
|---|---|---|---|
| Title | *Michael Sanchez v. American Media, Inc., et al.* | Page | 17 of 17 |

    b. Plaintiff shall file a supplemental Opposition with supporting exhibits by **April 16, 2021**.

    c. Defendants may file a supplemental Reply with supporting exhibits, if they wish, by **April 30, 2021.**

5. If Plaintiff chooses to file a First Amended Complaint, he shall do so by **January 14, 2021**. Defendants shall file their response within 15 days after the service and filing of the First Amended Complaint, if any.

6. The parties' requests for attorney's fees are **DENIED**.

**IT IS SO ORDERED.**