# EXHIBIT 8

COURT OF APPEAL – SECOND DIST.

F I L E D

Jun 30, 2022

DANIEL P. POTTER, Clerk

Angelica Lopez          Deputy Clerk

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL SANCHEZ, | B309364, B312143 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV04212) |
| v. | |
| JEFFREY PRESTON BEZOS et al., | |
| Defendants and Respondents. | |

     APPEAL from a judgment and an order of the Superior Court of Los Angeles County, John P. Doyle, Judge.  Affirmed.

     Warren Terzian, Thomas D. Warren and Erick Kuylman for Plaintiff and Appellant.

     Paul, Weiss, Rifkind, Wharton & Garrison, Meredith R. Dearborn, William A. Isaacson and Julia Tarver Mason Wood for Defendants and Respondents.

_____

This appeal arises from a defamation action filed by plaintiff Michael Sanchez against defendants Jeffrey Preston Bezos and Gavin de Becker. Plaintiff alleged that defendants falsely told several reporters that plaintiff had provided explicit nude photographs of Bezos to the National Enquirer (the Enquirer) as part of a conspiracy to damage Bezos.

Defendants filed a special motion to strike the complaint under Code of Civil Procedure[1] section 425.16, the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. To demonstrate the merits of his case, plaintiff offered his own declaration asserting that numerous reporters had informed him of defendants' accusations against him. The trial court found the reporters' statements recounted in plaintiff's declaration were inadmissible hearsay, and therefore could not be considered for anti-SLAPP purposes. Because plaintiff offered no other evidence that defendants made defamatory comments about him, the court granted the anti-SLAPP motion and entered judgment in favor of defendants.

Plaintiff raises two arguments on appeal. First, he argues his evidence of defendants' purported defamatory statements was not hearsay because he did not offer the statements for the truth of the matter asserted, but merely to establish the statements were uttered. Second, plaintiff argues that under *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931 (*Sweetwater*), hearsay may be considered for anti-SLAPP purposes if there is a reasonable possibility the hearsay will be cured at trial. Plaintiff contends any hearsay in

---

[1] Unspecified statutory citations are to the Code of Civil Procedure.

2

his declaration can be cured when the reporters testify under oath in deposition or at trial.

We reject these arguments. Had plaintiff himself witnessed defendants make defamatory comments, he could testify to those comments without running afoul of the hearsay rule. In that event, he would offer the evidence not for the truth of the matter asserted but to establish the comments were made. Here, however, plaintiff's declaration recounted not what he himself had witnessed, but what reporters told him they had witnessed. The reporters' statements *were* offered for the truth of the matter asserted, namely that the reporters heard defendants make defamatory comments about plaintiff. The reporters' statements therefore are hearsay.

Plaintiff misreads *Sweetwater*. That case reaffirmed that hearsay, absent an applicable exception, may not be considered for anti-SLAPP purposes. The only examples of "curable" hearsay in that decision were statements made under oath or penalty of perjury. Those statements by analogy fell within the hearsay exception for affidavits and declarations in anti-SLAPP proceedings. The reporters' statements recounted in plaintiff's declaration, in contrast, were not made under oath or penalty of perjury, and the trial court properly declined to consider them.

Accordingly, we affirm the judgment and the subsequent order awarding attorney fees and costs to defendants.

## PROCEDURAL BACKGROUND

On January 31, 2020, plaintiff filed a complaint against defendants asserting causes of action for defamation and intentional infliction of emotional distress. Plaintiff alleged that after the Enquirer published a story revealing an extramarital relationship between plaintiff's sister and Bezos, Bezos directed

de Becker, his "security chief," to uncover who leaked the story to the Enquirer.  Plaintiff, who served as his sister's manager, alleged he "became a target in Mr. de Becker's investigation." Plaintiff alleged defendants defamed him by falsely telling news outlets that plaintiff "was the source of graphic, nude photographs of Mr. Bezos," and that plaintiff "was involved in a conservative conspiracy with high-profile political operatives, including Roger Stone and Carter Page, and the Saudi government to take down Mr. Bezos."

Defendants filed an anti-SLAPP motion.  They contended plaintiff's claims arose from protected First Amendment activity, specifically statements in a public forum about an issue of public interest, and news reporting.  Defendants further contended plaintiff could not show a probability of prevailing on those claims because (a) plaintiff had not identified any instance in which defendants or a media outlet made any of the purportedly defamatory statements about him; and (b) media outlets had reported that plaintiff had in fact leaked information about the relationship between his sister and Bezos, and therefore the purported defamatory statements were substantially true.

In opposition, plaintiff admitted that, to protect his sister's reputation, he provided information to the Enquirer about his sister's and Bezos' relationship "in exchange for [the Enquirer] delaying and softening the story."  This included "a few text messages and non-explicit photographs shared with [plaintiff] by [his] sister."  He contended defendants' accusations against him nonetheless were false and defamatory, because they specifically accused plaintiff of providing explicit, nude photographs of Bezos, which plaintiff asserted he did not do, and further falsely accused him of involvement in a conservative conspiracy to harm Bezos.

4

To establish the merit of his claims, plaintiff submitted his own declaration detailing, inter alia, the purportedly defamatory statements by defendants.  He stated that "through my business relationship with reporters from the *Daily Beast*," "I learned that" de Becker "told them that I was involved in a conservative conspiracy to harm Mr. Bezos and that I was responsible for leaking explicit photos of Mr. Bezos' genitalia."  Plaintiff also averred that "Alexandra Berzon, a reporter for the *Wall Street Journal*, contacted me and told me that Mr. de Becker had told her I was the person who had 'provided the sexually explicit pictures' to the *National Enquirer*, and asked me to confirm the story."  Plaintiff further asserted that "Reporters from *The Sun*, *Page Six*, *The Daily Beast*, and *The Washington Post* all informed me that de Becker had told them I was involved in a right-wing conspiracy with Carter Page and Roger Stone."[2]

Simultaneously with his opposition to the anti-SLAPP motion, plaintiff filed a motion to lift the discovery stay so he could depose and obtain documents from his sister.  Plaintiff contended his sister "has knowledge that Defendants were keenly aware that their statements were baseless and unsupported, yet they continued to recklessly propagate falsehoods about

---

[2]  Plaintiff stated in his declaration, "My sister also confirmed that Mr. de Becker told reporters that I was the one who gave the *Enquirer* Mr. Bezos' genitalia pictures," and, "My friend Carter Page also informed me that Mr. de Becker told reporters for the *Daily Beast* that I was involved in a conservative conspiracy with Roger Stone and Carter Page to harm Mr. Bezos."  Plaintiff does not cite this evidence in support of his position on appeal.  Our focus therefore is on the information he purportedly received from reporters.

[plaintiff]." This evidence, plaintiff claimed, would "augment the record" that defendants acted with actual malice.

Defendants filed an opposition to plaintiff's motion to lift the discovery stay and a reply brief in support of their anti-SLAPP motion. In both, defendants argued, inter alia, that plaintiff's evidence that defendants made the purportedly defamatory comments to reporters was inadmissible hearsay, and therefore plaintiff had not made a prima facie showing of publication, a necessary element of a defamation claim. Defendants argued that because plaintiff had failed to meet this threshold requirement for defamation, plaintiff's requested discovery concerning actual malice was "unwarranted."

Plaintiff filed a reply in support of his motion to lift the discovery stay, arguing, inter alia, that under *Sweetwater*, hearsay was admissible to defeat an anti-SLAPP motion "[a]s long as it is reasonably possible that a witness will ultimately testify to the matter at trial."

The trial court first heard plaintiff's motion to lift the discovery stay, with the hearing on the anti-SLAPP motion scheduled for a later day. The trial court denied plaintiff's motion, finding, as defendants had argued, that plaintiff's evidence that defendants had made defamatory statements to reporters was hearsay, and thus there was "no admissible evidence of publication by the Defendants." The trial court rejected plaintiff's interpretation of *Sweetwater*, and ruled that "hearsay within a declaration is inadmissible."

Prior to the hearing on the anti-SLAPP motion, the parties submitted supplemental briefs. Plaintiff in his brief argued that the defamatory statements described in his declaration were not hearsay because they were not offered for the truth of the matter

asserted.  Alternatively, he again argued under *Sweetwater* that any hearsay problems could be cured at trial by calling the reporters as witnesses.  Defendants disputed these contentions in their supplemental brief.

Following a hearing, the trial court granted defendants' anti-SLAPP motion.  The court noted that plaintiff's opposition had not addressed whether his causes of action arose from protected conduct, and thus plaintiff had conceded the issue.  The court further concluded on the merits that defendants had shown the causes of action arose from protected conduct.

The trial court again ruled that plaintiff had failed to provide "admissible evidence that Defendants published the subject statements."  The court reasoned, "Plaintiff's statements [in his declaration] about what he was told by reporters [citation] constitute hearsay because they relate to out-of-court statements that are being used to prove the truth of the matter asserted— specifically, that Defendants published the subject statements." The court again rejected plaintiff's interpretation of *Sweetwater*.

Having concluded there was no admissible evidence of publication, the trial court struck the defamation claim and the "derivative claim for intentional infliction of emotional distress." The court subsequently entered judgment in favor of defendants, striking the complaint and dismissing the lawsuit with prejudice. Plaintiff timely filed a notice of appeal from the judgment.

Defendants moved for $1,676,919.50 in attorney fees and $36,019.26 in costs.  The trial court found the number of hours billed was "not reasonable," and exercised its discretion "to itself set a reasonable amount of attorneys' fees."  The court awarded $218,385 in fees and the full amount of requested costs, $36,019.26.

Defendants appealed from the fee award and plaintiff cross-appealed.  Defendants dismissed their appeal prior to briefing.  Plaintiff maintained his cross-appeal solely for the purpose of "seek[ing] vacatur of the fee award should [the Court of Appeal] reverse the trial court's grant of the anti-SLAPP motion."  We ordered plaintiff's cross-appeal consolidated with his appeal from the judgment for purposes of oral argument and decision.

## DISCUSSION

### A.    Applicable Law

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern.  [Citations.]  To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'  (§ 425.16, subd. (b)(1).)"  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)

Anti-SLAPP motions "are brought at an early stage of the litigation, ordinarily within 60 days after the complaint is served.  (§ 425.16, subd. (f).)  Discovery is stayed, absent permission from the court.  (§ 425.16, subd. (g).)  Thus, the defendant may test the sufficiency of the plaintiff's claims before incurring the costs and disruptions of ordinary pretrial proceedings."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384, fn. 5.)

"A court evaluates an anti-SLAPP motion in two steps.  'Initially, the moving defendant bears the burden of establishing

that the challenged allegations or claims "aris[e] from" protected
activity in which the defendant has engaged.  [Citations.]  If the
defendant carries its burden, the plaintiff must then demonstrate
its claims have at least "minimal merit." ' [Citation.]" (*Wilson*,
*supra*, 7 Cal.5th at p. 884.)  " '[I]n making its determination, the
court shall consider the pleadings, and supporting and opposing
affidavits stating the facts upon which the liability or defense is
based.' (§ 425.16, subd. (b)(2)." (*Sweetwater*, *supra*, 6 Cal.5th at
p. 941, italics omitted.)  "Although not mentioned in the SLAPP
Act, the Code of Civil Procedure also allows a court to consider, in
lieu of an affidavit, certain written declarations." (*Sweetwater*, at
p. 941.)[3]

If the plaintiff fails to meet the second-step burden,
the court will strike the claim.  (*Wilson*, *supra*, 7 Cal.5th at
p. 884.)  As a general matter, "a defendant that prevails on a
special motion to strike is entitled to attorney fees and costs.
(§ 425.16, subd. (c).)" (*Wilson*, at p. 884.)

---

[3]  An affidavit is " 'a written declaration under oath'
[citation], taken before 'any officer authorized to administer
oaths.' [Citations.]" (*Kulshrestha v. First Union Commercial
Corp.* (2004) 33 Cal.4th 601, 609.)  Because "the oath-and-
affidavit procedure was both cumbersome and widely ignored,"
the Legislature in 1957 enacted section 2015.5, which "allows use
of 'unsworn' declarations made under penalty of perjury" in place
of an affidavit.  (*Kulshrestha*, at pp. 609–610.)  "To qualify as an
alternative to an affidavit, a declaration must be signed and
recite that the person making it certifies it to be true under
penalty of perjury.  The document must reflect the date and place
of execution, if signed in California, or recite that it is executed
'under the laws of the State of California.' [Citations.]"
(*Sweetwater*, *supra*, 6 Cal.5th at p. 941.)

We review de novo the grant or denial of an anti-SLAPP
motion.  (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.)  We review the
trial court's evidentiary rulings for abuse of discretion.  (*Klem v.
Access Ins. Co.* (2017) 17 Cal.App.5th 595, 606.)

The particular cause of action challenged by defendants'
anti-SLAPP motion is defamation, the elements of which are
" '(a) a publication that is (b) false, (c) defamatory, and
(d) unprivileged, and that (e) has a natural tendency to injure or
that causes special damage.' [Citation.]"  (*Taus v. Loftus* (2007)
40 Cal.4th 683, 720.)[4]  "Publication means communication to
some third person who understands the defamatory meaning of
the statement and its application to the person to whom reference
is made.  Publication need not be to the 'public' at large;
communication to a single individual is sufficient."  (*Smith v.
Maldonado* (1999) 72 Cal.App.4th 637, 645 (*Smith*).)

## B.   The Trial Court Properly Granted the Anti-SLAPP Motion

On appeal, plaintiff does not challenge the trial court's
finding that plaintiff's claims arose from activity protected under
the anti-SLAPP statute, the first step of anti-SLAPP analysis.
The issue before us therefore concerns the second step, whether

---

[4] If a plaintiff claiming defamation is a "public figure," the
plaintiff additionally "must show, by clear and convincing
evidence, that the defamatory statement was made with
actual malice—that is, with knowledge that it was false or with
reckless disregard of whether it was false."  (*Mitchell v. Twin
Galaxies, LLC* (2021) 70 Cal.App.5th 207, 218.)  The parties to
the instant case disputed below whether plaintiff was a "public
figure" who had to prove actual malice.  We need not decide that
question to resolve this appeal, and decline to do so.

plaintiff met his burden to demonstrate his claims have minimal merit.

The trial court concluded plaintiff had not met his burden because the only evidence he offered to prove publication—in this case, to prove that defendants made the purportedly defamatory statements to reporters—was plaintiff's own declaration recounting what the reporters purportedly had told him. This, the trial court ruled, was hearsay and therefore inadmissible to meet plaintiff's burden.

Plaintiff argues, as he did below, that the reporters' statements recounted in his declaration were not in fact hearsay, and if they were, *Sweetwater* would allow the trial court to consider them. We disagree with both arguments.

### 1. Plaintiff's declaration contained hearsay

"Hearsay is an out-of-court statement offered for the truth of the matter asserted and is generally inadmissible." (*People v. Flinner* (2020) 10 Cal.5th 686, 735; see Evid. Code, § 1200 [" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."].)

In contrast, " '[w]hen evidence that certain words were spoken or written is admitted to prove that the words were uttered [or written] and *not* to prove their truth, the evidence is not hearsay. [Citations.]' " (*Hart v. Keenan Properties, Inc.* (2020) 9 Cal.5th 442, 447, italics added.) " ' "That means that the statement must be capable of serving its nonhearsay purpose regardless of whether the [finder of fact] believes the matters asserted to be true. [Citations.]" [Citation.]' [Citation.]" (*Ibid.*)

Plaintiff argues the statements in his declaration fall into this latter, nonhearsay category. The gist of his argument is that

when proving defamation, what matters is not the truth of the defamatory statements, which indeed by definition are false, but that they are uttered.  Put another way, it is the utterance of the defamatory statement, not its truth, that satisfies the publication element of defamation.

Plaintiff is correct that a witness who personally hears a slanderous remark does not run afoul of the hearsay rule by testifying to the content of the remark and its speaker.  Although the slanderous remark is an out-of-court statement, it is not being offered for its truth, but simply for the fact that it was uttered.

Plaintiff, however, has not offered a declaration from anyone who personally heard defendants make any defamatory comments.  Instead, he offered his own declaration describing what reporters purportedly told him defendants said.  Plaintiff's declaration thus contains two levels of out-of-court statements.  Whereas defendants' alleged defamatory comments are not being offered for their truth, the reporters' statements describing those comments and identifying defendants as the speakers *are* being offered for their truth.  If what the reporters told plaintiff is not true, then he has no evidence of publication and no case against defendants.  Accordingly, the reporters' purported out-of-court statements recounted in plaintiff's declaration are hearsay.

*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908 (*Cornell*) supports our conclusion.  The defendant tennis club moved for summary adjudication of the plaintiff's defamation claim, contending the alleged defamatory statements were shared only with other club personnel or members, and thus were subject to the common interest privilege under Civil Code section 47, subdivision (c).  (*Cornell*, at p. 949.)  To defeat the privilege,

12

the *Cornell* plaintiff offered statements from herself and her father "that they had heard from numerous other non-Club members that someone else had told them" the defamatory statements.  (*Ibid.*)

The Court of Appeal agreed with the trial court that the statements by the plaintiff and her father were inadmissible hearsay.  (*Cornell*, *supra*, 18 Cal.App.5th at pp. 950–951.)  As plaintiff does in this case, the *Cornell* plaintiff "relie[d] on the ' " 'well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not . . . whether these things were true or false.' " ' "  (*Id.* at p. 950, quoting *Russell v. Geis* (1967) 251 Cal.App.2d 560, 571 (*Russell*).)  The Court of Appeal was not persuaded:  "While this principle might justify admission of testimony by non-Club members that they were told [the defamatory comments], Cornell does not explain how her and her father's statements about what the non-Club members said they were told also fall into a hearsay exception."  (*Cornell*, at p. 950.)

In the instant case, plaintiff, like the *Cornell* plaintiff and her father, offered not the declarations or testimony of witnesses who directly heard the slander, but his own declaration recounting those witnesses' out-of-court statements.  Plaintiff's declaration, like the statements of the *Cornell* plaintiff and her father recounting what club nonmembers told them, is hearsay.

Plaintiff relies on *Russell*, the case distinguished in *Cornell*, but *Russell* does not support his position.  In *Russell*, the plaintiffs sued their former employer for defamation, alleging he wrongly accused them of embezzlement.  (*Russell*, *supra*, 251 Cal.App.2d at pp. 564–565.)  The appellate court affirmed the trial court's permitting the plaintiffs "to testify to hearsay

statements concerning the effect of defendant's defamatory statements." (*Id.* at p. 571.)  For example, one plaintiff testified "that her daughter came home from school and said she was no longer permitted to play with children she had formerly played with, and that children told her her mother was a thief." (*Ibid.*) The appellate court held these statements properly were admitted because "they were admitted not for the purpose of determining the truth of the statements, but to prove that the statements were, in fact, made." (*Ibid.*)  "There was no error in permitting [the plaintiff] to relate the hearsay statements in her testimony concerning her humiliation and mental suffering." (*Id.* at p. 572.)

Notably, the out-of-court statements admitted in *Russell* were not offered to identify the speaker of the defamatory comments, as they were in the instant case, but to show that the plaintiff herself heard the comments, including from her own child, thus causing her "humiliation and mental suffering." (*Russell*, *supra*, 251 Cal.App.2d at p. 572.)  The truth of the out-of-court statements was immaterial—what mattered was their effect on the plaintiff.

In the instant case, in contrast, plaintiff necessarily offers the reporters' out-of-court statements for their truth, because those statements are the only evidence linking the purportedly slanderous comments to defendants.

Plaintiff also relies on *Luster v. Retail Credit Co.* (8th Cir. 1978) 575 F.2d 609, a diversity case applying Arkansas substantive law.  (*Id.* at p. 613.)  In *Luster*, the plaintiff sued defendant for defamation after an insurance company, Bowes and Company, canceled the plaintiff's coverage in light of a report prepared by the defendant concerning a fire at the plaintiff's

business.  (*Id.* at pp. 611–612.)  As relevant here, a witness, Davidson, was permitted to testify that an insurance intermediary named Newell, now deceased, "told Davidson that a Bowes and Company representative had told Newell that the defendant's report suggested arson and that he assumed it referred to the plaintiff."  (*Id.* at p. 615.)  Citing the Federal Rules of Evidence, rule 801(c)[5] and an evidence treatise, the Eighth Circuit tersely rejected defendant's hearsay objection, concluding the testimony "was not hearsay because it was not admitted to prove the truth of the matter asserted.  It was admitted solely to prove the fact that the words were said.  [Citations.]  A proper limiting instruction was given the jury at the time of the disputed testimony."  (*Luster*, at p. 615.)

The brief discussion of the hearsay issue in *Luster* is insufficient to sway us from our conclusion.  *Luster* does not state for what purpose Davidson's testimony was offered, so we cannot analogize it to the instant case.  (See *GMO Rice v. Hilton Hotel Corp.* (D.D.C. Sept. 1, 1987, Civ. A. No. 85–1470) [1987 WL 16851 at *2, fn. 2] ["The language of [*Luster*] is far from clear, and it is impossible to determine the purpose for which Davidson's testimony was admitted."].)  *Luster* refers to a limiting instruction given to the jury, but does not state what that instruction was, further impairing our ability to compare *Luster* to the facts before us.  If anything, the Eighth Circuit's reference to a limiting instruction "suggests that [the trial and reviewing

---

[5]  Federal Rules of Evidence, rule 801(c) defines hearsay as a statement that:  [¶]  (1) the declarant does not make while testifying at the current trial or hearing; and  [¶]  (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

15

court in *Luster*] were sensitive to the hearsay potential of
Davidson's testimony, and it further suggests that the limiting
instruction limited the jury's consideration of this testimony to its
proper non-hearsay uses." (*GMO Rice*, at p. *2, fn. 2.)  The
discussion in *Luster* is too thin, therefore, to support plaintiff's
assertion that an out-of-court statement offered to prove the
identity of a purported defamer is not hearsay, an incorrect
conclusion under California law.  (See *Cornell*, *supra*,
18 Cal.App.5th at p. 950.)

Plaintiff's reliance on another Arkansas case, *Wal-Mart
Stores, Inc. v. Dolph* (1992) 308 Ark. 439 (*Dolph*) is also
misplaced.  In that case, the plaintiff, Dolph, sued Wal-Mart for
slander after a loss prevention officer accused her of shoplifting
within earshot of other people in the store.  (*Id.* at p. 440.)   The
primary issue on appeal was whether substantial evidence
supported the jury's finding of publication, that is, that other
people actually heard the officer's accusations.  (*Id.* at p. 441.)
Although "there was no direct testimony from a third party who
heard the slanderous statement," the Arkansas Supreme Court
consulted Rhode Island, South Carolina, and Florida cases, and
held the evidence was "sufficient to raise a reasonable inference
of publication" when the officer made the accusations in an area
of the store with "heavy customer traffic" and Dolph testified
"[t]wo Wal-Mart employees were specifically staring at her" while
the officer was questioning her.  (*Id.* at pp. 441–442.)

In addition to the substantial evidence challenge, Wal-Mart
"raise[d] a collateral hearsay issue relating to publication" in
regard to certain testimony by Dolph.  (*Dolph*, *supra*, 308 Ark. at
p. 442.)  "Dolph testified that her sister's mother-in-law had been
told by one of the Wal-Mart employees that Dolph had been

caught shoplifting." (*Ibid.*)  The trial court admitted the evidence but instructed the jury that "the testimony of Ms. Dolph as to what someone else told her—and you heard the linkage of where it came from—is not being offered for the truth of what Ms. Dolph said was told to Ms. Dolph, but merely for the purpose of showing that she did, in fact, receive some information, whether true or not.  And my instruction to you is, you are not to consider it as being given or stated here for the truth of what Ms. Dolph said, but merely to show that she heard something." (*Id.* at pp. 442–443.)  Wal-Mart argued this evidence constituted "triple hearsay" and was wrongly admitted.  (*Id.* at p. 443.)

The Arkansas Supreme Court disagreed.  (*Dolph*, *supra*, 308 Ark. at p. 443.)  Citing *Luster*, which the Arkansas court interpreted as concerning proof of publication, the court concluded "the testimony of the sister's mother-in-law about what the Wal-Mart employee said was not offered to prove the truth of what was said.  It was offered to prove *the fact* that it was said, which then became some evidence of publication." (*Ibid.*)

In *Dolph*, unlike the instant case, the identity of the defamer was not at issue, because Dolph herself was a direct witness to the defamation and properly could testify to it.  Rather, the key issue in *Dolph* was whether anyone heard the loss prevention officer's accusations—if no one did, there was no publication and hence no defamation.  The *Dolph* court held that Dolph's testimony regarding what a Wal-Mart employee purportedly told Dolph's sister's mother-in-law was admissible to prove dissemination of the slander.  Assuming arguendo that conclusion was correct, it nonetheless does not support the proposition advanced by plaintiff here that out-of-court

statements identifying the source of defamatory comments is admissible nonhearsay.

Plaintiff cites one federal district court case, *Walker v. Wanner Engineering, Inc.* (D. Minn. 2012) 867 F.Supp.2d 1050 (*Walker*), that appears to support his position.  In *Walker*, the plaintiff sued his former employer for defamation contending, among other allegations, that the employer's controller, Grewe, stated at an employee meeting that the plaintiff had been terminated and arrested for stealing from the company.  (*Id.* at p. 1053.)  To prove Grewe made these statements, the plaintiff offered his own deposition testimony that another employee, Granison, had told him what Grewe had said at the meeting.  (*Id.* at p. 1057.)  There is no indication the plaintiff offered any testimony or declaration from Granison himself.

In considering the defendant's summary judgment motion, the district court ruled the plaintiff's testimony admissible under Federal Rules of Evidence, rule 801(c):  "These statements are not being offered for their truth; in fact, [plaintiff] ardently contests the veracity of Grewe's statement, denying that he stole anything from [the employer].  Rather, the statements are being offered to show that Grewe made the statements to the employees.  Accordingly, this statement is nonhearsay and is admissible."  (*Walker*, *supra*, 867 F.Supp.2d at p. 1057.)

Respectfully, we disagree with the reasoning of the district court.  Although the truth of the slanderous comments themselves was not at issue in *Walker*, whether Grewe actually made those comments *was* at issue, and the only evidence of that were Granison's out-of-court statements describing what Grewe said.  Granison's out-of-court statements therefore were offered for their truth, and were hearsay.  We are not bound by federal

18

district court decisions (*See's Candies, Inc. v. Superior Court*
(2021) 73 Cal.App.5th 66, 92), and we decline to follow *Walker*.

Plaintiff argues that the reporters' repetition of de Becker's
alleged statements constitutes republication of the slander, which
he characterizes as "an independent verbal act." (See *Ringler
Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th
1165, 1180 ["when a person repeats a slanderous charge, even
though identifying the source or indicating it is merely a rumor,
this constitutes republication and has the same effect as the
original publication of the slander"].)

We need not decide the legal significance, if any, of the
reporters' purportedly repeating the slander themselves, whether
that be deemed republication or something else.[6]  Regardless, to
prevail in this action plaintiff must make a prima facie showing
that defendants were the origin of those statements.  As
defendants argue, "[T]here is no 'republication' without proof of
the prior publication."  Again, the only evidence that defendants
were the origin of the slander comes from out-of-court statements
by reporters recounted in plaintiff's declaration.  Those out-of-
court statements are of value to plaintiff only if they are true—if
they are false, he has no case against defendants.  The out-of-
court statements therefore are offered for their truth, and are
hearsay.

---

[6]  We note that defamation requires publication to a "third
person" (*Smith*, *supra*, 72 Cal.App.4th at p. 645), and a
slanderous statement made solely to the plaintiff cannot, as a
general matter, satisfy that element.  (See *Dible v. Haight
Ashbury Free Clinics, Inc.* (2009) 170 Cal.App.4th 843, 854.)

### 2. The hearsay in plaintiff's declaration is inadmissible to meet his second-step anti-SLAPP burden

Plaintiff alternatively argues that if his declaration contains hearsay, under *Sweetwater* the trial court may consider it for anti-SLAPP purposes "if that hearsay can be cured by the time of trial."  Plaintiff claims the hearsay can be cured by calling the reporters as trial witnesses.

We reject plaintiff's broad interpretation of *Sweetwater*.  As we explain, that decision supports the proposition that out-of-court statements made under oath or penalty of perjury, such as in an affidavit, declaration, or transcript of prior court testimony taken under oath, may be considered for anti-SLAPP purposes, despite being hearsay.  The reporters' unsworn out-of-court statements plaintiff offers in the instant case do not meet this requirement.  We begin with a detailed summary of *Sweetwater*.

#### a. Sweetwater

In *Sweetwater*, the plaintiff school district sued to void construction contracts after school district officials and others were indicted in a bribery investigation concerning the awarding of the contracts.  (*Sweetwater*, *supra*, 6 Cal.5th at p. 938.)  Defendants, the parties awarded the contracts, filed an anti-SLAPP motion arguing "the complaint stemmed from constitutionally protected political expression."  (*Ibid.*)

To meet its second-step burden, the school district offered guilty and no-contest plea forms from the bribery investigation, each of which "incorporated a written factual narrative attested to under penalty of perjury."  (*Sweetwater*, *supra*, 6 Cal.5th at pp. 938–939.)  The school district also offered transcript excerpts

from grand jury testimony. (*Id.* at p. 939.)  The trial court overruled the defendants' evidentiary objections and denied the anti-SLAPP motion, and the Court of Appeal affirmed. (*Ibid.*)

The defendants argued before the Supreme Court that the factual narratives attached to the plea forms and the grand jury testimony excerpts were hearsay, admissible only "if they fell within the former testimony hearsay exception." (*Sweetwater*, *supra*, 6 Cal.5th at p. 941.)  The Supreme Court rejected this argument. (*Id.* at p. 945.)

The court agreed the hearsay rule applied to anti-SLAPP proceedings. (*Sweetwater*, *supra*, 6 Cal.5th at pp. 941–942.)  The court noted, however, that sections 425.16, subdivision (b)(2) and 2015.5 "provide an exception to the hearsay rule," and permit courts adjudicating anti-SLAPP motions to consider affidavits and declarations, which otherwise would be hearsay if offered for their truth. (*Sweetwater*, at p. 942.)  "The purpose of the statutory references to affidavits and declarations is to enhance reliability." (*Id.* at p. 941.)  The court held the plea forms and their factual narratives "qualify as declarations" because " 'each individual who signed and dated a plea form attested to the truth of the contents . . . under penalty of perjury under the laws of California.' " (*Id.* at p. 942.)

The Supreme Court further concluded the trial court properly could consider the transcripts of grand jury testimony for anti-SLAPP purposes. (*Sweetwater*, *supra*, 6 Cal.5th at p. 943.)  The Supreme Court explained that "the important aspect" of affidavit and declaration evidence "is that it be made under penalty of California's perjury laws. [Citation.] Sworn testimony made before a grand jury obviously is made under penalty of perjury." (*Ibid.*)  Thus, "a transcript of this testimony

21

is the equivalent of a testifying witness's declaration under
penalty of perjury, assuming the authenticity of the transcript
can be established." (*Ibid.*)

To conclude otherwise, the court stated, "would not serve
the purposes of the SLAPP Act." (*Sweetwater*, *supra*, 6 Cal.5th at
p. 943.) "This sworn testimony is at least as reliable as an
affidavit or declaration." (*Ibid.*) In the anti-SLAPP context, "the
affidavit or declaration is offered to demonstrate that admissible
evidence exists to prove plaintiff's claims. The statements must
reflect that they were made by competent witnesses with
personal knowledge of the facts they swear to be true. A
transcript of a witness's testimony under oath before a grand jury
would serve to establish personal knowledge and competence in
the same manner that an affidavit or declaration could." (*Id.* at
pp. 944–945.)

Further, because anti-SLAPP motions are "filed early in
the case," and "[d]iscovery is stayed once the motion is filed," "it
may not be practicable for a plaintiff to obtain declarations from
various witnesses, particularly those associated with the
defense." (*Sweetwater*, *supra*, 6 Cal.5th at pp. 943–944.)
"[U]nder the present circumstances, even if declarations were
obtained, they would have added little to the evidence already in
plaintiff's possession. It seems doubtful that the Legislature
contemplated dismissal of a potentially meritorious suit for want
of declarations largely duplicating available evidence." (*Id.* at
p. 944.)

"Thus," stated the court, "in determining a plaintiff's
probability of success, the court may consider statements that are
the equivalents of affidavits and declarations because they were
made under oath or penalty of perjury in California," including

the plea forms and grand jury testimony transcripts. (*Sweetwater*, *supra*, 6 Cal.5th at p. 945.)

This conclusion "does not end the inquiry," stated the court, because "[i]n addition to submission in the proper form, courts have long required that the evidence relied on by the plaintiff [in contesting an anti-SLAPP motion] be admissible at trial." (*Sweetwater*, *supra*, 6 Cal.5th at pp. 945–946.) The *Sweetwater* defendants argued the plea forms and grand jury testimony would be admissible at trial only if the school district established the preconditions to certain hearsay exceptions, such as the unavailability of the declarants as witnesses or that the defendants had had an opportunity to cross-examine the witnesses at the grand jury proceeding. (*Id.* at p. 946.) The defendants contended the school district was required to satisfy those preconditions at the anti-SLAPP hearing itself before the trial court could consider the evidence. (*Ibid.*)

The Supreme Court disagreed, holding that "evidence may be considered at the anti-SLAPP motion stage if it is *reasonably possible* the evidence set out in supporting affidavits, declarations or their equivalent will be admissible at trial." (*Sweetwater*, *supra*, 6 Cal.5th at p. 947, italics added.) The distinction, the court explained, is "between evidence that *may* be admissible at trial and evidence that could *never* be admitted." (*Id.* at p. 948.) In a footnote, the court emphasized that "the written statements themselves"—that is, the affidavits, declarations, and their equivalents—"need not be admissible at trial, but it must be reasonably possible that the *facts asserted* in those statements can be established by admissible evidence at trial." (*Id.* at p. 948 fn. 12, some italics omitted.)

In support, the Supreme Court cited *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138 (*Fashion 21*), a decision holding that an edited videotape properly could be considered for anti-SLAPP purposes although it "was not properly authenticated" at the time of the anti-SLAPP hearing.  (*Sweetwater*, *supra*, 6 Cal.5th at p. 947, citing *Fashion 21*, at pp. 1146–1148.)  The Supreme Court quoted from *Fashion 21*:  " '[T]he proper view of 'admissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule.  Courts have thus excluded evidence which would be barred at trial by the hearsay rule, or because it is speculative, not based on personal knowledge or consists of impermissible opinion testimony.  This type of evidence cannot be used by the plaintiff to establish a probability of success on the merits because it could *never* be introduced at trial. . . . [¶]  Evidence such as the videotape in this case, which is only excludable on the ground it lacks proper authentication, stands on a different footing in terms of its ability to support the plaintiffs' cause of action. . . . [E]vidence that is made inadmissible only because the plaintiff failed to satisfy a precondition to its admissibility [at trial] could support a judgment for the plaintiff assuming the precondition could be satisfied.' "  (*Sweetwater*, at p. 947, quoting *Fashion 21*, at pp. 1147–1148.)  Because of " 'the high probability Fashion 21 would succeed in offering the videotape into evidence at trial and the "minimal" showing necessary to overcome a SLAPP motion,' " the *Fashion 21* court held the trial court properly considered the videotape at the second step of anti-SLAPP analysis.  (*Sweetwater,* at pp. 947–948, quoting *Fashion 21*, at p. 1148.)

24

The Supreme Court cited other cases illustrating " 'the sort
of evidentiary problem a plaintiff will be incapable of curing by
the time of trial,' " therefore rendering the evidence inadmissible
for anti-SLAPP purposes, such as evidence barred by privilege, or
witness statements that were "incompetent for lack of personal
knowledge." (*Sweetwater*, *supra*, 6 Cal.5th at p. 948, citing
*Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416;
*Evans v. Unkow* (1995) 38 Cal.App.4th 1490; *Wilcox v. Superior
Court* (1994) 27 Cal.App.4th 809.)  The court also found
instructive a case holding that when an expert's opinion failed to
comply with statutory disclosure requirements, the expert's
opinion was "incurably inadmissible at trial" and therefore
"could not properly be considered in ruling on a summary
judgment motion."  (*Sweetwater*, at p. 948, citing *Perry v.
Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536.)

The court concluded that the evidence at issue in
*Sweetwater*, like the evidence in *Fashion 21*, was "potentially
admissible at trial."  (*Sweetwater*, *supra*, 6 Cal.5th at p. 949.)
"[T]here is no categorical bar to statements contained in the
grand jury transcript and plea forms.  Indeed, the statements
themselves appear to be statements against interest.  (Evid.
Code, § 1230.)  Further, there are no undisputed factual
circumstances suggesting the evidence would be inadmissible at
trial.  In *Fashion 21*, the videotape at issue could be admitted at
trial if properly authenticated.  In the videotaped demonstration,
'employees and representatives of Fashion 21 . . . along with'
others were present [citation], suggesting there were identifiable
witnesses who had personal knowledge of the events.  The
signers of those documents or other competent witnesses could
testify at trial to support the [school] District's claims.  That live

testimony would supplant any improper reliance on hearsay. Finally, plaintiff would have the opportunity to satisfy the requirements of any other applicable hearsay exceptions before admission at trial." (*Sweetwater*, at p. 949.)

The court reiterated that because anti-SLAPP motions are filed early in the case and trigger a stay of discovery, "[i]t may not be possible at the hearing to lay a foundation for trial admission, even if such a showing could be made after full discovery. While it may prove difficult at this early stage to obtain declarations from those who have pled guilty in the bribery case, it is not unreasonable to expect that those witnesses may be deposed and/or produced for trial. To strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial would not serve the SLAPP Act's protective purposes. Ultimately, the SLAPP Act was 'intended to end meritless SLAPP suits early without great cost to the target' [citation], *not* to abort potentially meritorious claims due to a lack of discovery." (*Sweetwater*, *supra*, 6 Cal.5th at p. 949.) The court then noted that, "[n]otwithstanding the discovery stay, the court has discretion to order, upon good cause, specified discovery if required to overcome the hurdle of potential inadmissibility." (*Ibid.*)

The court concluded: "In sum, at the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection

is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Sweetwater*, *supra*, 6 Cal.5th at p. 949.)

        b.    *Analysis*

    *Sweetwater* has two main holdings.  First, the Supreme Court extended the statutory hearsay exception for affidavits and declarations in anti-SLAPP proceedings to other evidence submitted under oath or penalty of perjury, such as plea forms and grand jury testimony.  (*Sweetwater*, *supra*, 6 Cal.5th at p. 945.)  Second, while acknowledging the rule that courts may consider affidavits and their equivalents for anti-SLAPP purposes only to the extent they contain evidence admissible at trial, the Supreme Court clarified that parties need not establish all preconditions to admissibility at the anti-SLAPP stage. Rather, "evidence may be considered at the anti-SLAPP motion stage if it is *reasonably possible* the evidence set out in supporting affidavits, declarations or their equivalent will be admissible at trial."  (*Id.* at p. 947, italics added.)

    The question before us is whether it is "reasonably possible" the evidence of publication in plaintiff's declaration "will be admissible at trial."  (*Sweetwater*, *supra*, 6 Cal.5th at p. 947.) The Supreme Court explained that evidence is " ' capable of being admitted at trial' "  if it is " 'competent, relevant and not barred by a substantive rule.' "  (*Id.* at p. 947, quoting *Fashion 21*, *supra*, 117 Cal.App.4th at p. 1147.)

    The evidence of publication in plaintiff's declaration does not meet this test.  The only evidence plaintiff offers to demonstrate defendants made defamatory comments are his recounting of out-of-court statements from reporters.   As discussed *ante*, this is hearsay.  *Sweetwater* itself affirmed the

hearsay rule is a substantive rule barring admission—the Supreme Court favorably quoted *Fashion 21*'s language listing hearsay as an example of evidence that " 'cannot be used by the plaintiff to establish a probability of success on the merits because it could *never* be introduced at trial.' " (*Sweetwater*, at p. 947, quoting *Fashion 21*, *supra*, 117 Cal.App.4th at p. 1147.)

Plaintiff contends it is reasonably possible the evidence in his declaration will be admissible at trial because the reporters themselves can testify, thus curing any hearsay issue. He cites *Sweetwater*'s footnote stating that it is not the declaration itself that must be admissible at trial, but that it "be reasonably possible that the *facts asserted* in those [affidavits, declarations, and their equivalents] can be established by admissible evidence at trial." (*Sweetwater, supra*, 6 Cal.5th at p. 948, fn. 12.) In plaintiff's view, the "facts asserted" in his declaration are that defendants made defamatory comments to reporters, facts the reporters themselves can confirm through testimony at trial.

*Sweetwater* does not support this argument. *Sweetwater* makes clear the importance that statements considered for anti-SLAPP purposes be given under oath or penalty of perjury, absent an applicable hearsay exception. The Supreme Court explained that "the affidavit or declaration is offered to demonstrate that admissible evidence exists to prove plaintiff's claims. The statements must reflect that they were made by competent witnesses with personal knowledge of the facts *they swear to be true*." (*Sweetwater*, *supra*, 6 Cal.App.4th at pp. 944–945, italics added.) Plaintiff has failed to submit statements given under oath or penalty of perjury from any "competent witnesses with personal knowledge" that defendants defamed him. (*Ibid.*) The only facts asserted in plaintiff's declaration of

which he himself has personal knowledge are the statements reporters made to *him* recounting defendants' purportedly slanderous comments, and those reporters' statements are inadmissible hearsay.

*Sweetwater*'s only examples of "curable" hearsay were the plea forms and grand jury transcripts. The Supreme Court held these could be considered for anti-SLAPP purposes because (a) they were given under oath or penalty of perjury, and thus effectively fit within the statutory hearsay exception for affidavits and declarations; and (b) the sworn statements within the plea forms and grand jury transcripts were potentially admissible at trial because the original declarants could repeat the statements in live testimony, or because they fell within the hearsay exception for statements against interest. (*Sweetwater*, *supra*, 6 Cal.5th at pp. 945, 949.)

In the instant case, had the reporters submitted their own declarations attesting under penalty of perjury to the defamatory comments defendants purportedly made to them, or testified to those facts under oath in another proceeding, that evidence would be comparable to the plea forms and grand jury transcripts in *Sweetwater*. In those circumstances, the reporters' statements, as reflected in their declarations or testimony, would be "made by competent witnesses with personal knowledge of the facts they swear to be true." (*Sweetwater*, *supra*, 6 Cal.5th at pp. 944–945.) Those statements, moreover, likely would be admissible if the reporters repeated them at trial. The reporters' statements recounted in plaintiff's declaration, however, are insufficient to show "that admissible evidence exists to prove plaintiff's claims" (*id.* at pp. 944–945), because they were not made under oath or penalty of perjury, and the hearsay rule bars plaintiff from

testifying as to what the reporters told him to prove publication of purported defamation by defendants.

It is true *Sweetwater* stated, when explaining why the hearsay nature of the plea forms and grand jury transcripts was curable, that "[t]he signers of those documents *or other competent witnesses* could testify at trial to support the [school] District's claims." (*Sweetwater*, *supra*, 6 Cal.5th at p. 949, italics added.) This does not indicate, however, that unsworn statements from "other competent witnesses" may be considered for anti-SLAPP purposes. Rather, we read this language to mean that when competent witnesses attest under oath or penalty of perjury to certain events, there is sufficient reason to conclude, for anti-SLAPP purposes, that admissible evidence of those events exists, either through the testimony of the attesting witnesses or that of other competent witnesses involved in the events.

Plaintiff argues his declaration adequately identifies admissible evidence despite the hearsay rule, because at trial "[t]he reporters could either confirm what Mr. de Becker told them, or if they did not confirm what he said, [plaintiff] could testify at trial to their prior inconsistent statements." (See Evid. Code, § 1235 ["Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with [Evidence Code] Section 770."].)[7]  In other

---

[7]  Evidence Code section 770 provides, "Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶]  (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶]  (b) The

words, plaintiff contends the reporters' statements in his
declaration inevitably will be admissible at trial, either as direct
testimony from the reporters, or, should the reporters deny
making their earlier statements, as plaintiff's own testimony
describing the reporters' prior inconsistent statements.

In making this argument, plaintiff seeks to assert the prior
inconsistent statement hearsay exception preemptively, before a
witness has actually appeared at trial and provided testimony
inconsistent with the prior statement.  Plaintiff cites no authority
allowing this.  Indeed, if a plaintiff could preemptively assert that
exception, it would eviscerate the hearsay rule for purposes of
anti-SLAPP proceedings, because it is always theoretically
possible the original declarant will appear at trial and contradict
his or her earlier statement.  Yet as *Sweetwater* makes clear,
hearsay is evidence that " 'cannot be used by the plaintiff to
establish a probability of success on the merits because it could
*never* be introduced at trial.' "  (*Sweetwater*, *supra*, 6 Cal.5th at
p. 947, quoting *Fashion 21*, *supra*, 117 Cal.App.4th at p. 1147; see
also *Sweetwater*, at pp. 941–942 ["the hearsay rule applies" in
anti-SLAPP proceedings].)  *Sweetwater* cannot be read to allow a
plaintiff so easily to evade the hearsay rule.

Further, although under *Sweetwater* a plaintiff need not
satisfy all preconditions to admissibility at the time of the anti-
SLAPP hearing, the plaintiff nonetheless must demonstrate it is
"reasonably possible" the evidence "will be admissible at trial."
(*Sweetwater*, *supra*, 6 Cal.5th at p. 947.)  Plaintiff's speculation as
to what might happen at trial is insufficient to show a reasonable

_____

witness has not been excused from giving further testimony in
the action."

possibility that his hearsay testimony will be admitted under the prior inconsistent statement exception.

Plaintiff assumes the only two possibilities are the reporters confirming or denying the evidence in his declaration. These are not the only possibilities.  As a general matter, a party may invoke the prior inconsistent statement exception only if the declarant testifies at trial and has an opportunity, either before or after the introduction of the prior statement, to explain or deny it.  (Evid. Code, § 770.)  The occurrence of these preconditions is far from certain.  The reporters might be unavailable to testify, or plaintiff might fail to compel their presence.  The reporters might testify they do not recall the conversation with plaintiff.  (See *People v. Anderson* (2018) 5 Cal.5th 372, 403 [" 'Ordinarily, a witness's inability to remember an event is not inconsistent with that witness's prior statement describing the event.' "].)  The reporters might invoke the "newsperson's shield law" (*Facebook, Inc. v. Superior Court* (*Touchstone*) (2020) 10 Cal.5th 329, 346, fn. 7), which protects them from disclosing their sources.  (See Cal. Const., art. I, § 2, subd. (b); Evid. Code, § 1070.)  In short, plaintiff's hope that the reporters will appear at trial and either confirm or deny the statements in his declaration is too speculative to demonstrate potentially admissible evidence in support of his defamation claim.

Plaintiff argues that under our holding, "the ability to bring slander cases in California will be greatly circumscribed.  If the plaintiff is not in earshot of the slanderous statement, and if the plaintiff does not have the voluntary cooperation of the third party recipient of the slander to provide a declaration at the time the complaint is filed, he will not be able to survive an anti-

SLAPP motion."  He notes *Sweetwater*'s admonition "not to abort
potentially meritorious claims due to a lack of discovery."
(*Sweetwater*, *supra*, 6 Cal.5th at p. 949, italics omitted.)

     The Supreme Court addressed a similar concern in *Wilson*,
in which the defendant filed an anti-SLAPP motion against the
plaintiff's suit for discrimination and retaliation.  (*Wilson*, *supra*,
7 Cal.5th at p. 891.)  Noting that "the plaintiff's second-step
burden is a limited one," the court nonetheless acknowledged
that "in the absence of discovery, even this reduced barrier could
pose particular difficulties for discrimination and retaliation
plaintiffs, whose claims depend on assertions of motive that are
peculiarly within the defendant's knowledge."  (*Ibid.*)

     This problem could be mitigated, stated the Supreme
Court, by the trial court's authority to " 'order[ ], where
appropriate, "that specified discovery be conducted
notwithstanding" the motion's pendency.' [Citation.]"  (*Wilson*,
*supra*, 7 Cal.5th at p. 891.)  "Where a defendant relies on motive
evidence in support of an anti-SLAPP motion, a plaintiff's request
for discovery concerning the asserted motive may often present
paradigmatic 'good cause.'  (§ 425.16, subd. (g).)"  (*Wilson*, at
pp. 891–892; see also *The Garment Workers Center v. Superior
Court* (2004) 117 Cal.App.4th 1156, 1162 (*Garment Workers
Center*) ["the fact [that] evidence necessary to establish the
plaintiff's prima facie case is in the hands of the defendant or a
third party goes a long way toward showing good cause for
discovery"].)  *Sweetwater* also emphasized that
"[n]otwithstanding the discovery stay, the court has discretion to
order, upon good cause, specified discovery if required to
overcome the hurdle of potential inadmissibility."  (*Sweetwater*,
*supra*, 6 Cal.5th at p. 949.)

In this case, plaintiff knew which reporters had the
information he needed, because he identified at least some of
them in his declaration, and could have sought declarations from
them.  To the extent the reporters were uncooperative, plaintiff
could have requested limited discovery of evidence demonstrating
publication.  Plaintiff made no such request, instead asking to
take discovery of his sister to establish the element of actual
malice.  The trial court denied that request given the absence of
evidence of publication, and defendant has not challenged that
denial.

At oral argument, plaintiff contended that a request for
discovery would have been futile, because case law bars discovery
in defamation anti-SLAPP proceedings unless the plaintiff first
can establish a prima facie case of publication based on available
evidence.  In support, plaintiff cited *Garment Workers Center*,
*supra*, 117 Cal.App.4th 1156, and *John Doe 2 v. Superior Court*
(2016) 1 Cal.App.5th 1300 (*John Doe 2*).  We disagree with
plaintiff's reading of those cases.

*Garment Workers Center* addressed whether a trial court
abused its discretion in an anti-SLAPP proceeding by permitting
discovery on the issue of actual malice.  (*Garment Workers
Center*, *supra*, 117 Cal.App.4th at p. 1159.)  Listing factors a
court should consider before granting discovery, the Court of
Appeal stated, "if it appears from the SLAPP motion there are
significant issues as to falsity or publication—issues which the
plaintiff should be able to establish without discovery—the court
should consider resolving those issues before permitting what
may otherwise turn out to be unnecessary, expensive and
burdensome discovery proceedings" on the issue of actual malice.
(*Id.* at p. 1162.)  In that case, the appellate court noted the

defendant "raised a meritorious challenge to the pleadings, contending the complaint failed to state a cause of action for libel," and "there [were] serious questions about the falsity of the statements [the defendant] is alleged to have made." (*Id.* at pp. 1162–1163.)  The appellate court remanded for the trial court to address those issues before considering whether to issue a discovery order on the issue of actual malice. (*Id.* at p. 1163.)

 *John Doe 2*, also an anti-SLAPP case, held that the trial court abused its discretion by allowing discovery to determine the author of anonymous emails, because the libel plaintiff had failed to show that the emails contained "provably false and defamatory statements of fact or that the e-mails caused [the plaintiff] to suffer actual damage." (*John Doe 2*, *supra*, 1 Cal.App.5th at p. 1305.)  *John Doe 2* relied on *Paterno v. Superior Court* (2008) 163 Cal.App.4th 1342, 1349–1351 for the proposition that "a libel plaintiff may not obtain special discovery under the anti-SLAPP statute . . . without first making a prima facie showing of the elements of libel for which the material facts are available to the plaintiff." (*John Doe 2*, at pp. 1311–1312; see *Paterno*, at p. 1351 [party to defamation anti-SLAPP motion not entitled to discovery on the issue of actual malice absent "sufficient evidence to establish a prima facie case of falsity or unprivileged statements"].)

 *Garment Workers Center*, *John Doe 2*, and *Paterno* stand for the proposition that if evidence already available to a plaintiff, without need for further discovery, demonstrates a defamation claim is without merit—for example, because the purportedly defamatory comments identified by the plaintiff are not in fact defamatory—there is no point to ordering discovery on other issues.  Nowhere do these cases suggest, as

plaintiff contends, that a court must deny discovery on the issue of publication even if that evidence rests uniquely in the hands of the defendants or third parties.  Indeed, as we have already quoted, *Garment Workers Center* emphasized "the fact [that] evidence necessary to establish the plaintiff's prima facie case is in the hands of the defendant or a third party goes a long way toward showing good cause for discovery." (*Garment Workers Center*, *supra*, 117 Cal.App.4th at p. 1162.)

It is true that *Garment Workers Center* stated that publication was an "issue[ ] which the plaintiff should be able to establish without discovery." (*Garment Workers Center*, *supra*, 117 Cal.App.4th at p. 1162.)  We read that comment in the context of the circumstances of that case, in which the purported defamation arose in "demonstrations, leafleting, press releases and web site postings," at least some of which presumably would be available to the plaintiff without discovery.  (*Id.* at p. 1160.) *Garment Workers Center* did not involve, and therefore does not preclude, discovery when a plaintiff seeks to establish slander occurring in private conversations to which the plaintiff was not privy.  In short, there was no per se bar to plaintiff requesting discovery to demonstrate publication in the instant case.

Having concluded the trial court correctly ruled that plaintiff had failed to make a prima facie showing of publication, we do not address defendants' alternative argument that the purported slander was substantially true.  Defendants also raise this argument in separately filed motions for sanctions and to dismiss the appeal, which we deny in separate orders.

### C.    We Affirm the Award of Attorney Fees, and the Trial Court May Determine in the First Instance Any Award of Appellate Attorney Fees

As noted, defendants dismissed their appeal challenging the trial court's order awarding them reduced attorney fees. Plaintiff's consolidated cross-appeal does not challenge the substance of that order.  Instead, plaintiff argues that we must reverse the order were we to reverse the grant of the anti-SLAPP motion.  Because we affirm the grant of the anti-SLAPP motion, we also affirm the award of attorney fees and costs.

At oral argument, plaintiff argued that should defendants prevail in the appeal from the grant of the anti-SLAPP motion, we nonetheless should construe the dismissal of their appeal from the fee award as a loss.  Therefore, plaintiff contends, neither party should be deemed prevailing on appeal for purposes of an award of appellate attorney fees under section 425.16, subdivision (c).[8]  (See *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1253–1254 [determining no party prevailed in appeal from grant of anti-SLAPP motion when plaintiffs' notice of appeal was untimely and defendant lost cross-appeal from fee award].)

Plaintiff cites no authority construing a voluntary dismissal of an appeal prior to briefing as a loss for purposes of a prevailing party determination.  Regardless, we leave the issue of attorney fees to the trial court in the first instance, which is in a better position to determine entitlement to and amount of attorney fees. (See *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal*

---

[8]  Plaintiff made a similar argument in a sanctions motion that we deny in a separate order.

*Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.)  We will, however, deem defendants the prevailing party for purposes of appellate costs under California Rules of Court, rule 8.278.

### DISPOSITION

The judgment and the order awarding attorney fees and costs are affirmed.  Defendants are awarded their costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.