James A. Mitchell (Admitted *Pro Hac Vice*)
  MitchellJ@ballardspahr.com
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel: (646) 346-8006
Fax: (212) 223-1942

Robert S. Gutierrez (State Bar No. 143223)
  GutierrezR@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2909
Tel.: 424.204.4400
Fax: 424.204.4350

Attorneys for Defendants
DAVID PECKER and WORLDWIDE MEDIA
SERVICES GROUP, INC. (successor in name to
American Media, Inc.)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DISTRICT

| | |
|---|---|
| MICHAEL SANCHEZ, an individual,<br><br>                              Plaintiff,<br><br>           v.<br><br>AMERICAN MEDIA, INC., a Delaware corporation; DAVID PECKER, an individual; and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No. 2:20-cv-02924 DMG (PVCx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**CTRM**:   8C<br>**DATE**:   July 7, 2023<br>**TIME**:    2:00 p.m. |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on July 7, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 8C of the above-entitled Court, located at 350 West First Street, Los Angeles, CA, 90012, Defendants Worldwide Media Services Group, Inc. ("WMSG," successor in name to American Media, Inc.) and David Pecker (collectively, "Defendants")[1] will and hereby do move the above-entitled Court, the Honorable Dolly M. Gee, United States District Judge, presiding, for summary judgment on the Second Amended Complaint of plaintiff Michael Sanchez ("Plaintiff") and the sole claim of defamation alleged therein.

This motion is brought pursuant to Federal Rule of Civil Procedure 56 on the grounds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law because, as stated more fully in the accompanying Memorandum of Points and Authorities, the sole remaining issue on Plaintiff's defamation claim in the Second Amended Complaint is whether a press release statement that Plaintiff was the original and sole source for *The National Enquirer*'s January 2019 reporting on the affair between Jeff Bezos and Plaintiff's sister, Lauren Sanchez, was false and defamatory, and there is no genuine dispute that this statement is true and not materially false as a matter of law.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of James Robertson, Andrea Simpson, Dylan Howard, Pia Whitesell, Bradley R. Gershel, and Robert S. Gutierrez, Request for Judicial Notice, [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, the pleadings and papers on file in this action, the matters of which this Court may take judicial notice, and such additional matters and oral argument as may be offered in support of this Motion.

This Motion is made following the conference of counsel pursuant to Local

---

[1] The Complaint lists "The National Enquirer, Inc." as a defendant but, as Defendants previously advised Plaintiff, no such corporate entity currently exists.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1  Rule 7-3 which took place on May 31, 2023.

2

3  DATED:     June 8, 2023            Robert S. Gutierrez
                                      James A. Mitchell (Admitted *Pro Hac Vice*)
4                                     **BALLARD SPAHR LLP**

5
                                      By:   /s/ Robert S. Gutierrez
6                                         ROBERT S. GUTIERREZ
7                                     Attorneys for Defendants DAVID PECKER
                                      and WORLDWIDE MEDIA SERVICES
8                                     GROUP, INC. (successor in name to
                                      American Media, Inc.)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# TABLE OF CONTENTS

Page

3   I.    INTRODUCTION ..................................................................1

4   II.   STATEMENT OF FACTS ......................................................2

5         A.   AMI's Investigation of Jeff Bezos Unrelated to Affair .............2

6         B.   The Origin and Sourcing of the Affair Story ........................3

7         C.   The Origin of AMI's Press Release ....................................8

8         D.   Sanchez's Defamation Claim ............................................9

9         E.   Defendants' Special Motion to Strike ................................10

10        F.   The Court's Dec. 29, 2020 Order On Special Motions to Strike ........10

11        G.   First Amended Complaint And Dismissal of Conspiracy Claim ........11

12        H.   The Declaration Of Nikolaos Hatziefstathiou ......................11

13        I.   The Court's July 13, 2021 Order On Special Motions To Strike .......12

14        J.   The Evidence Disproving Hatziefstathiou's Statements ..............13

15        K.   Hatziefstathiou's Recent Criminal Convictions and
               Imprisonment ..........................................................15

16        L.   The Testimony of Patrick and Pia Whitesell ........................15

17        M.   Sanchez's Second Amended Complaint and Dismissal of
18             Howard ................................................................15

19        N.   Sanchez's Testimony and Statements ................................16

20  III.  ARGUMENT .....................................................................17

21        A.   Legal Standard for Summary Judgment ..............................17

22        B.   The First Or Only Source Statement Is True ........................18

23        C.   The Statements in Hatziefstathiou's Declaration That Whitesell
24             Was AMI's Original Source are Proven Falsities and Should
               Not Be Credited. .....................................................20

25        D.   Even If Sanchez Was Not AMI's First Or Only Source, The
26             First Or Only Source Statement Is Not Materially False ...............23

27  IV.   CONCLUSION ..................................................................25

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Addisu v. Fred Meyer, Inc.*,
   198 F.3d 1130 (9th Cir. 2000).................................................................22

*Air Wisconsin Airlines Corp. v. Hoeper*,
   571 U.S. 237 (2014) ..............................................................................23

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................18

*Appel v. Wolf*,
   No. 21-cv-1466-L-BGS, 2021 U.S. Dist. LEXIS 217984 (S.D. Cal.
   Nov. 9, 2021) .........................................................................................24

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................17, 23

*Heller v. NBCUniversal, Inc.*,
   No. 15-CV-09631-MWF-KS, 2016 U.S. Dist. LEXIS 193316 (C.D.
   Cal. June 29, 2016)................................................................................24

*Jacobson v. Schwarzenegger*,
   650 F.Supp.2d 1032 (C.D. Cal. 2009)...................................................18

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005) ..................................................................22

*Kennedy v. Applause, Inc.*,
   90 F.3d 1477 (9th Cir. 1996) .................................................................22

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ........................................................................18, 23

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..............................................................18, 20, 23

*Maynard v. State Farm Mut. Auto. Ins. Co.*,
   499 F.Supp.2d 1154 (C.D. Cal. 2007)...................................................17

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

*Old Dominion Branch No. 496 v. Austin*,
   418 U.S. 264 (1974) ........................................................................................18

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) ....................................................................24, 25

*Pfeister v. RSUI Indem. Co.*,
   2020 U.S. Dist. LEXIS 244835 (N.D. Cal. Dec. 29, 2020) ..............................22

*Philadelphia Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986) ........................................................................................23

*Scott v. Harris*,
   550 U.S. 372 (2007) ..................................................................................20, 22

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002)........................................................................22

*Wynberg v. Nat'l Enquirer, Inc.*,
   564 F. Supp. 924 (C.D. Cal. 1982)..............................................................2, 24

**California Cases**

*Miller v. Nestande*,
   192 Cal.App.3d 191 (1987) .............................................................................18

*Taus v. Loftus*,
   40 Cal.4th 683 (2007) ......................................................................................18

*Vogel v. Felice*,
   127 Cal.App.4th 1006 (2005) ..........................................................................18

**Other State Statutes**

18 Pa. C.S.
   § 4906(a) ..........................................................................................................15

**Other Authorities**

Federal Rules of Civil Procedure Rule 56(c) .........................................................17

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Michael Sanchez ("Sanchez") commenced this meritless defamation action ***three years ago*** against American Media, Inc. ("AMI"), David Pecker ("Pecker"), and Dylan Howard ("Howard"), based on the entirely unsupported allegation that Saudi Arabia had hacked into billionaire Jeff Bezos' ("Bezos") cell phone and fed to *The National Enquirer* ("*TNE*") intimate texts and photos Bezos had sent to his then-mistress, Lauren Sanchez ("Ms. Sanchez"), Sanchez's sister, in the early days of their affair (the "Affair"). Sanchez claimed this alleged hacking was the genesis of *TNE*'s January 2019 reporting on the Affair. Sanchez claimed that statements in a March 31, 2019 press release issued by AMI (predecessor in name to defendant Worldwide Media Services Group, Inc. ["WMSG"]), publisher of *TNE*, falsely implicated him as: (i) *TNE*'s source for intimate texts and photos exchanged between Bezos and Ms. Sanchez that *TNE* referenced in its reporting on the Affair; and (ii) *TNE*'s first or only source about the Affair.

After the Court's July 2021 ruling on the special motion to strike filed by WMSG and Pecker ("Defendants") – and after Sanchez amended his Complaint twice and after several extensions of the case when Sanchez had two prior law firms withdraw as his counsel – all that remains for determination in this action is whether the statement that Sanchez was *TNE*'s first or only source for its reporting on the Affair is false and defamatory. The Court did not dismiss this part of Sanchez's defamation claim for two reasons: (i) Sanchez filed a declaration by former *TNE* reporter, Nikolaos Hatziefstathiou ("Hatziefstathiou") which attached purported notes of a telephone conversation in which Howard, *TNE*'s then-Chief Content Officer, supposedly confided in him that Ms. Sanchez's ex-husband, Patrick Whitesell ("Whitesell"), was *TNE*'s original source about the Affair; and (ii) Howard had sent a November 7, 2018 email to Sanchez, stating that *TNE* had been investigating Bezos for weeks prior to making a sourcing deal with Sanchez.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1   As demonstrated herein, neither Hatziefstathiou's declaration nor Howard's

2 email is sufficient to raise a genuine issue.  Since the Court's ruling on Defendants'

3 special motion to strike, Defendants have obtained dispositive proof that

4 Hatziefstathiou's proffered "evidence" – his supposed notes of a call with Howard

5 – are a complete fake.  Whitesell was deposed in this action on March 16, 2022 and

6 presented uncontroverted evidence, further confirmed by his wife Pia's declaration,

7 demonstrating that Hatziefstathiou's claim that Whitesell was *TNE*'s original

8 source about the Affair is utterly false.  Defendants also have uncontroverted

9 evidence demonstrating that Howard's statement about *TNE*'s investigating Bezos

10 prior to its deal with Sanchez was related to AMI's tracking of Bezos **only after –**

11 **and based entirely upon** – its speculation that Sanchez's story was about Bezos

12 because of the information Sanchez had already provided to AMI.

13   Because Sanchez cannot raise a genuine issue, Defendants are entitled to

14 summary judgment on Sanchez's Second Amended Complaint.

15 **II.** **STATEMENT OF FACTS**

16  **A.** **AMI's Investigation of Jeff Bezos Unrelated to Affair**

17   In September of 2018, James Robertson, then an Editor with AMI, asked

18 several then-AMI reporters, including Andy Tillett ("Tillett"), Michael Hammer

19 ("Hammer"), Ralph Ortega ("Ortega"), and Hatziefstathiou, to work on certain

20 reporting about Bezos' historical relationship with his relatives in connection with a

21 potential story concerning his having been named the richest person in the world.

22 To that end, on September 9, 2018, Robertson sent an email to Tillett and Hammer,

23 advising that he wanted a deep dive profile on Bezos with an *Enquirer* edge.  This

24 reporting was not related to AMI's subsequent reporting on Bezos' affair with Ms.

25 Sanchez.  The following day, Robertson asked Ortega and Hatziefstathiou about

26 angles they could pursue on Bezos.  AMI had no information at the time about

27 Bezos having an affair.  Therefore, neither of Robertson's emails made any

28 reference to an affair.  Facts 4-9.

**B.**     <u>The Origin and Sourcing of the Affair Story</u>

On September 10, 2018, Sanchez provided Andrea Simpson, then-Senior News Editor for AMI, with a lead for a possible story.  Sanchez relayed that a friend of his worked for a well-known, Bill Gates-type billionaire who was married and having an affair with a B-list married actress.  Simpson later informed Robertson and Howard (then-Chief Content Officer at AMI) of the story tip from Sanchez.  Facts 10-11.

On September 26, 2018, Sanchez told Simpson that his friend had pitched the story to the *Daily Mail*, and had been offered $300,000.  Sanchez told Simpson that AMI would need to sign a non-disclosure agreement ("NDA") before he could show her evidence of the affair.  Simpson later sent emails to Robertson and Tillett, summarizing her conversation with Sanchez and explaining that the NDA would need to be vague since she did not know the names of the billionaire or actress. Tillett suggested the name of "Evan Spiegel" as the possible mystery billionaire. Simpson responded: "We shall see.  I've been told somewhere between Mark Zuckerberg and Michael Dell.  I'm quite curious."  Facts 12-14.

In a September 26, 2018 communication with Simpson, Sanchez was more specific about the information he had:

> "NDA should say 'text messages & multiple photos that are deemed to be
> of a sexual and/or inappropriate nature involving, per Source's description
> a Bill Gates-type, well-known billionaire who is married and having a
> year-plus affair with a B-list married celebrity.'"

Fact 15.

On September 29, 2018, Simpson asked Sanchez if they could meet to discuss a possible deal for AMI to publish a story about the affair.  A couple of days later, Sanchez cryptically told Simpson that he might need more time because he still didn't have "the package."  On October 3, 2018, Sanchez proposed that they meet, after which Simpson informed Robertson and Tillett that she was meeting

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

with her source to see the evidence of the alleged affair.  Facts 16-18.

In a meeting on October 5, 2018, Sanchez showed Simpson text messages, some containing photos, he said the billionaire had sent the actress.  Sanchez did not show Simpson faces or reveal the names of the billionaire and actress, but assured Simpson that if they made a deal, AMI could send a photographer to capture photographs of secret meetings between the two.  Fact 19.

On October 7, 2018, Simpson relayed the following to Robertson:

> "Met with source
> He is still not giving me the name or copies of texts.
> But I did see photos from the texts, no faces.
> He says the billionaire is in his 50s.  Prob top 7 in the world.  Just doing a look around and by the body, I think it may be Jeff Bezos.
> Source says his wife is also famous and the mistress's husband is also famous.
> Texts are sexy and he's in love with the mistress—I've been told they plan on separating from their wife/husband soon.
> And if we make a deal, we can send a photog [to] get pics of them secretly meeting up."

Fact 20.

On October 10, 2018, Simpson sent Howard an email concerning her communications with Sanchez about his lead on the mystery billionaire having an affair with a married actress.  Referring to the faceless photos Sanchez had shown her, Simpson wrote: "Just doing a look around and by the man's body, I think it may be Jeff Bezos."  The following day, Facts 21-23.On October 12, 2018, Sanchez asked Simpson about the status of the NDA and advised that his friend was going to go with the *Daily Mail* if AMI did not make a deal by the following day.  Fact 24.  Four days later, Sanchez sent Howard an email stating that he was willing to reveal to him the identity of "Bill" – the placeholder for the billionaire's real identity – if it would help finalize negotiations of an NDA with AMI relating to the information and evidence Sanchez claimed to have about the mystery billionaire's affair.  Sanchez told Howard that *Mail Online* was also interested in the story, and that the price tag for the story was $300,000, rising to $500,000 if the photos and screen shots of messages he would provide AMI were used.  Sanchez

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

also told Howard that he wanted a cut of the photo syndication if AMI photographers obtained photographs of Bezos and Laura Sanchez based on Sanchez's disclosure of their whereabouts. Facts 25-27.

With respect to the billionaire's identity, Simpson sent Howard an email on October 16, 2018, stating in part:

> "Michael said he was going to call you to give you the name.
> Doesn't have authority or permission to give it to me.
> Which is absolutely ridiculous. So you both can discuss separately.
> If/when he gives it to you, please let me know."

Fact 28.

On October 17, 2018, Sanchez sent Robertson an email asking for financial parameters for selling AMI the story about "Jeff Bezos having love affair with a married celebrity," and requesting "at least $300,000 for the story." Fact 29.

The following day, Howard spoke with Sanchez to learn the identity of the "billionaire," and Sanchez revealed that the mystery billionaire was Jeff Bezos. After this conversation, Simpson wrote to Howard:

> "Thanks for talking to Michael. Hope he gave you the name so we have some clearer picture of what we're dealing with. You allowed to tell me?"

Howard responded later that day, replying: "Bezos." This was the first time Simpson's suspicion that the billionaire was Bezos (based on the faceless photos Sanchez had shown her) was confirmed to be accurate. Facts 30- 32.

Sanchez and AMI entered into a Non-Disclosure and Confidentiality Agreement dated as of October 18, 2018. Fact 33.

By October 19, 2018, Howard learned from Robertson that AMI had tracked Bezos' private jet. AMI had tracked Bezos based entirely on Sanchez's tipping Simpson about a mystery billionaire having an affair, and Simpson's suspicion (based on the faceless photographs Sanchez had shown her) that the billionaire might be Bezos. In short, without Sanchez's lead and information, AMI would not have tracked Bezos' private jet. Facts 34-36.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

On October 23, 2018, Sanchez met in New York with Howard and Robertson to discuss the evidence he had about Bezos' affair.  Sanchez revealed that the actress involved was his sister Lauren, and he informed them that he had a below-the-belt selfie that Bezos had texted her.  Sanchez told them that he would show them the photograph at a later date.  Sanchez showed Robertson the contents of a flash drive containing a summary of text messages and several revealing photographs he said Bezos had sent to Lauren.  The photographs included Bezos shirtless, some with a towel around his waist, and two photographs of a woman in a tight, red dress that revealed her cleavage.  That same day, Sanchez sent an email to Robertson attaching this material.  Facts 37-41.

On October 23, 2018, Simpson learned from Howard that the woman having the affair with Bezos was Sanchez's sister.  This was the first time Simpson learned the identity of the woman with whom Bezos was having an affair.  Fact 42.

AMI and Sanchez entered into an Exclusive Publishing Agreement dated October 26, 2018, relating to information, photographs, and text messages documenting an affair between Bezos and Lauren.  Pursuant to that agreement, Sanchez was paid $200,000 – the most money Howard and Robertson believe AMI had ever paid a source for a story.  Fact 43.

On November 1, 2018, Robertson sent an email to Sanchez and Howard, stating that he "would like to be on FaceTime for the big, ahem, reveal."  The reference was to Sanchez's statement at the October 23, 2018 meeting in New York that he would show them Bezos' below-the-belt selfie.  Sanchez responded: "Sounds great.  Looking forward to seeing you and sharing my big, uh, um, news." Facts 44-45.

On November 11, 2018, Sanchez provided Simpson with specifics about the travel plans of Bezos and Lauren, information which she later shared with Robertson.  Fact 46.  The following day, Sanchez sent Robertson an email that stated in part: "Here are the screenshots (some duplicates and some you may not

1  have seen yet)."  Fact 47.

2      On November 17, 2018, Howard sent Sanchez an email after he failed to

3  show up for a planned dinner meeting in Los Angeles earlier that month.  In the

4  email, Howard told Sanchez that his failure to appear had "set us back a week" and

5  that "we have photos of the two subjects prior to any deal with you – as we had

6  been investigating subject for weeks."  The email referred to the fact that, from

7  October 10, 2018 forward, AMI had arranged for Image Direct to track Bezos,

8  based on AMI's speculation that he was the mystery billionaire being referred to by

9  Sanchez, and that by October 19, 2018 (prior to the October 26, 2018 Exclusive

10  Publishing Agreement with Sanchez) Image Direct had tracked Bezos' private jet

11  and obtained photographs of Bezos and Ms. Sanchez.  Facts 48-49.

12      On November 19, 2018, seeking further corroboration of the alleged affair,

13  Robertson asked Simpson if Bezos had given Ms. Sanchez any gifts.  When

14  Simpson inquired, Sanchez informed her that Bezos had given her a drinking flask,

15  which Simpson later relayed to Robertson.  Facts 50-51.

16      On November 21, 2018, Simpson met with Sanchez in Los Angeles.

17  Robertson and Howard participated remotely via FaceTime.  During the meeting,

18  Sanchez showed Simpson a printed photograph of what he said was a below-the-

19  belt selfie of Bezos.  Sanchez said that Bezos had texted the selfie to Ms. Sanchez,

20  and that Lauren had later shared the photo with Sanchez through the Signal

21  messaging app, after which Sanchez printed a screenshot of the photo.  Later that

22  day, Sanchez sent a follow-up email to Robertson and Howard, confirming that he

23  had provided "Confidential Information" to AMI and was "looking forward to

24  hearing Andrea [Simpson] describe" the below-the-belt selfie.  Facts 52-54.

25      On November 23 and 27, 2018, Howard requested that Simpson ask Sanchez

26  if he was receiving the cooperation of Bezos and Ms. Sanchez when providing AMI

27  with information about the affair.  On November 27, 2018, after asking Sanchez,

28  Simpson responded: "He says Lauren and Jeff are NOT in cooperation with him.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   Neither one have a clue."  Later that day, Sanchez provided Simpson with personal

2   information about his sister's and Bezos' marital situations, which she passed along

3   to Howard and Robertson.  On November 29 and 30, 2018, Sanchez provided

4   Simpson with more information about Bezos and Ms. Sanchez, including their

5   future travel plans, which she later relayed to Howard and Robertson.  Facts 55-58.

6       On January 9, 2019, the *National Enquirer* published its first article about

7   Bezos' affair with Ms. Sanchez.  Fact 59.

8       On January 22, 2019, Sanchez sent Howard an email suggesting that AMI

9   disclose that Howard or another *TNE* journalist had spotted Bezos and Ms. Sanchez

10  on a VIP platform in July, thus "launching" an investigation into their affair.

11  Sanchez's email followed publication of AMI's January 9, 2019 story about the

12  Affair.

13      Howard knew that Sanchez feared exposure that he tipped off *TNE* to the

14  affair and that Sanchez was falsely denying to the Bezos camp (and later to the

15  media) that he was AMI's source.  Recognizing Sanchez's concern, Howard

16  assured him that "[t]he untold story" of how [AMI] uncovered the story" would be

17  reserved for Howard's "tombstone" – meaning that it was part of his long-standing

18  journalistic ethic not to reveal sources and that he had no intention of disclosing the

19  extraordinary (and then untold) story of how Sanchez was *TNE*'s true source of all

20  the details and information concerning the Affair.  Facts 60-64.

21      Sanchez was AMI's sole source of information about the Affair.  Neither

22  Saudi Arabia nor Ms. Sanchez's ex-husband Patrick Whitesell was a source for

23  AMI's reporting on the Affair.  Facts 65-66, 96.

24      **C.    The Origin of AMI's Press Release**

25      On March 30, 2019, an op-ed piece by Bezos' security consultant, Gavin de

26  Becker, was published in *The Daily Beast*.  Entitled "Bezos Investigation Finds the

27  Saudis Obtained His Private Data, Mr. de Becker wrote:  "Our investigators and

28  several experts concluded with high confidence that the Saudis had access to

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1   Bezos' phone, and gained private information.  As of today, it is unclear to what

2   degree, if any, AMI was aware of the details."  Fact 67.

3       On March 31, 2019, an article appeared in the *Daily Beast* entitled "National

4   Enquirer Says Saudis Didn't Help on Bezos Story" which stated the following:

> "The *National Enquirer's* parent company said it had one and only
> one source for its blockbuster exposé of Jeff Bezos: Michael
> Sanchez, the brother of Bezos' girlfriend Lauren Sanchez.
>
> An American Media Inc. spokesman responded Sunday to a Daily
> Beast op-ed from Bezos' security consultant Gavin de Becker,
> who wrote that his investigation had concluded that the Saudis
> had accessed the Amazon security chief's phone.  The spokesman
> said in a statement (the "Press Release"):
>
> *Despite the false and unsubstantiated claims of Mr. de Becker,*
> *American Media has, and continues to, refute the unsubstantiated*
> *claims that the materials for our report were acquired with the*
> *help of anyone other than the single source who first brought them*
> *to us.  The fact of the matter is, it was Michael Sanchez who tipped*
> *the National Enquirer off to the affair on Sept. 10, 2018, and over*
> *the course of four months provided all of the materials for our*
> *investigation.  His continued efforts to discuss and falsely*
> *represent our reporting, and his role in it, has waived any source*
> *confidentiality.  There was no involvement by any other third party*
> *whatsoever.*

16  Fact 68.

17      **D.**     **Sanchez's Defamation Claim**

18      Sanchez filed this action on March 27, 2020, alleging claims against WMSG,

19  Pecker and Howard for defamation, intentional infliction of emotional distress,

20  conspiracy to commit intentional torts, and aiding and abetting commission of

21  intentional torts.  All of his claims relate to the Press Release.  Specifically,

22  Sanchez alleges that:

23      (1) He did not leak his sister's affair with Bezos to Defendants, and that it

24          was Defendants who first contacted him about the Affair in July 2018,

25          such that the statement that he was *TNE*'s original or only source about

26          the Affair (the "First Or Only Source Statement") is false and defamatory.

27      (2) He did not provide *TNE* with the intimate photos exchanged between

28          Bezos and Ms. Sanchez reported on by AMI, such that the statements that

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

he continued to falsely represent AMI's reporting of the Affair and his role in it, that he "provided all the materials for [AMI's] investigation," and that "[t]here was no involvement by any third party whatsoever" (the "Source of Pornographic Materials Statement") is also false and defamatory.

Facts 69-71.

### E. **Defendants' Special Motion to Strike**

On June 30, 2020, Defendants filed a special motion to strike Sanchez's original Complaint ("MTS") on the grounds that (i) the statement that Sanchez tipped off *TNE* to his sister's affair with Bezos was true; (ii) the press release did not state or suggest that Sanchez provided AMI with Pornographic Materials (even though he did) or "implicate" him as the source of the Pornographic Materials (even though he was). Fact 72.

### F. **The Court's Dec. 29, 2020 Order On Special Motions to Strike**

On December 29, 2020, the Court issued an order granting Defendants' MTS in part and denying it in part, dismissing all of Sanchez's claims against Pecker and Howard with leave to amend, and dismissing his claims against AMI for intentional infliction of emotional distress, civil conspiracy, and aiding and abetting, with leave to amend. The Court held the remainder of the MTS – *i.e.*, Sanchez's defamation claim against AMI – in abeyance, pending targeted discovery on:

(1) From what source(s), if any, AMI received any information relating to the Affair prior to Sanchez's admitted involvement in October 2018;

(2) Who initiated contact between AMI and Sanchez regarding the Affair;

(3) When, how, and to what extent Sanchez shared the Pornographic Materials with anyone affiliated with AMI; and

(4) If AMI in fact possesses the Pornographic Materials, when, how, and from what source(s) AMI received them.

Facts 73-74.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

**G.    First Amended Complaint And Dismissal of Conspiracy Claim**

On January 14, 2021, Sanchez filed a First Amended Complaint, alleging claims for defamation and conspiracy to commit intentional torts against all defendants, and asserting a claim for aiding and abetting commission of intentional torts against Pecker and Howard.  On January 28, 2021, the parties filed a Joint Stipulation to Dismiss with prejudice Sanchez's claim for conspiracy to commit intentional torts.  The following day, Pecker and Howard each filed a special motion strike Sanchez's claims against them for defamation and aiding and abetting.  Facts 75-77.

**H.    The Declaration Of Nikolaos Hatziefstathiou**

On April 7, 2021, Sanchez filed the declaration of Nikolaos Hatziefstathiou in support of his Supplemental Opposition to Defendants' MTS.  In paragraph 2, Hatziefstathiou states that, on August 10, 2018, Howard assigned him to investigate Bezos and told him information Howard had supposedly received from a source that Bezos was having an extramarital affair with Lauren Sanchez, then married to WME's Patrick Whitesell.  In paragraph 3, Hatziefstathiou states that, in the following months, he investigated Bezos and "his 'rags to riches' story, up to and including the Affair."  Facts 78-80.

In paragraph 3, Hatziefstathiou states that he received partial byline credit for *TNE's* print edition and byline credit for not fewer than eight stories about the Affair, beginning on January 9, 2019.  Fact 81.

In paragraphs 10 through 12, Hatziefstathiou states (among other things): Howard phoned him on August 10, 2018 and told him: (i) He wanted to discuss in confidence a reporting assignment for a planned story on Bezos; (ii) Whitesell was *TNE*'s source about the Affair and wanted to take advantage of a "get out of divorce free card' that had fallen in his lap – namely, his discovery of the Affair"; (iii) "Whitesell was adamant that his involvement as the source could never be disclosed, under any circumstance;" (iv) Whitesell was having an affair with model

1    Pia Miller; and (v) Hatziefstathiou was not allowed to contact Ms. Miller or any

2    member of Whitesell's immediate family.  Facts 82-85.

3         Hatziefstathiou attached as Exhibit 2 to his declaration what he claimed were

4    contemporaneous notes of his supposed August 10, 2018 phone call with Howard.

5    The notes contain references to "PW" (Patrick Whitesell) and "Pia" (Pia Miller).

6    Facts 90, 92.

7    **I.    The Court's July 13, 2021 Order On Special Motions To Strike**

8         On July 13, 2021, the Court issued an order denying the MTS as to

9    Sanchez's defamation claim against WMSG, Pecker and Howard, and granting the

10   MTS as to the aiding and abetting claim against Pecker and Howard with leave to

11   amend.  Sanchez did not thereafter amend his aiding and abetting claim, leaving his

12   defamation claim the sole remaining claim in this action.  Facts 86-87.

13        Although the Court did not grant the MTS as to all of Sanchez's defamation

14   claim, the Court dismissed the part of the claim relating to the Source of

15   Pornographic Materials Statement:

16             Plaintiff's own deposition testimony undermines part of
               his defamation claim. . . . Plaintiff admitted that he
17             provided AMI with explicit text messages and copies of
               nine of the ten photographs that the parties call
18             Pornographic Materials.  Sanchez Depo. at 37:6-19,
               42:6-16; 44:14-21.  He also showed a picture of male
19             genitals he found on the Internet to AMI reporter Andrea
               Simpson, representing that the image was of Bezos.  *Id.*
20             at 54:4-7. . . . Thus, even though Plaintiff argues that he
               did not provide any racy or explicit photographs to AMI,
21             the evidence is uncontroverted that he in fact did so.
               Plaintiff also has provided no evidence of any other source
22             for those photos.

23             AMI's statement that Plaintiff provided "all of the
               materials for [AMI's] investigation," in the context of him
24             supplying the ten images referred to as "Pornographic
               Materials," is therefore substantially true. . . .
25             [I]n this case, in light of Plaintiff's own testimony, there is
               also no question that the following portion of AMI's press
26             release is true: that he "falsely represent[ed] [AMI's]
               reporting, and his role in it," by denying that he ever
27             possessed the Pornographic Materials.

28             Any defamatory sense of those words—that he sold to a

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1

2

3
tabloid his own sister's intimate texts and racy images of
his own sister and her boyfriend, as well as a "below-the-
belt selfie"—is also substantially true. He therefore
cannot establish a probability of prevailing on a
defamation claim based on that true statement.

4
Fact 88.

5     The Court denied the MTS as to the remaining part of Sanchez's defamation

6  claim relating to the First Or Only Source Statement. The Court's denial was based

7  on: (i) Hatziefstathiou's declaration testimony that Whitesell was *TNE*'s original

8  source about the Affair; and (ii) an email from Howard to Sanchez referring to

9  AMI's investigation of Bezos by *TNE*. The Court found that details proffered in

10  Hatziefstathiou's declaration were sufficient to "survive th[e] lenient standard"

11  under California's anti-SLAPP statute. As to Howard's email, the Court found that

12  Howard's statement to Sanchez that *TNE* had been investigating Bezos for weeks

13  prior to its entering an agreement with Sanchez supported Sanchez's assertion that

14  someone other than he had tipped off AMI about the Affair. Facts 89-92.

15     **J.   The Evidence Disproving Hatziefstathiou's Statements**

16     While Hatziefstathiou did for a time work as a *TNE* reporter, Howard never

17  assigned him to report on the Affair. Hatziefstathiou's assignment with respect to

18  Bezos was limited to the unrelated "deep dive" on Bezos that Robertson had

19  requested on September 9, 2018, relating to Bezos having been named the world's

20  richest person. Hatziefstathiou was not involved in AMI's reporting on the Affair.

21  Whitesell was never a source of AMI for any information or material relating to the

22  Affair, and Howard never told Hatziefstathiou that Whitesell was a source for the

23  Affair. Indeed, Howard has never met with or spoken to Whitesell. Facts 93-97,

24  101.

25     In his then-role as Chief Content Officer, Howard was fully familiar with all

26  aspects of *TNE*'s reporting on the Affair and knows that Whitesell had nothing to

27  do with the sourcing of the story. Many journalists, including Hatziefstathiou, were

28  involved in working on a podcast production involving Howard and WME, but that

had absolutely nothing to do with *TNE*'s reporting on the Affair.  To that point, the podcast production deal was not even initially consummated until November 5, 2018.  Facts 98-100.

Robertson was the person at AMI responsible for deciding which reporters received byline credit for stories.  Hatziefstathiou received shared byline credit for only one article on *TNE*'s online edition, and that article was the result of his work on the unrelated, non-Affair reporting concerning Bezos' family (he interviewed Bezos' aunt), which AMI later determined to publish in conjunction with its various Affair-related articles.  Because Hatziefstathiou was not involved in AMI's Affair-related reporting, his name does not appear on any of *TNE*'s other Affair-related articles.  Facts 102-104.

On January 9, 2019, Robertson and Simpson exchanged a series of text messages in which Robertson alerted Simpson to the fact that Hatziefstathiou and Tillett would be among the reporters receiving byline credit for *TNE*'s January 28, 2019 print edition, and Robertson advised Simpson of the only reason Hatziefstathiou would be receiving credit: "He's getting a credit for interviews with the family."  In response, Simpson asked, "Nik didn't know the big story tho right?"  Robertson replied, "Correct."  Facts 105-106.

A Records Request Processor at the Internet Archive submitted a declaration attaching copies of screenshots of the Internet Archive's records of the archived files for seven of the eight articles for which Hatziefstathiou states he received a byline.  The archived documents, of which this Court has previously taken judicial notice, reflect a byline of "National ENQUIRER Staff" **without any reference to Hatziefstathiou**.  Fact 107.  Furthermore, Robertson reviewed the various articles from TNE Online, attached as Exhibit A to the Declaration of Bradley R. Gershel, dated June 2, 2023, and confirmed that those articles contain the accurate bylines as they appeared when the *TNE* articles were originally published, *i.e.*, **without any reference to Hatziefstathiou**.  Fact 108.  In fact, Sanchez himself produced in

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1  discovery a copy of an online *TNE* story that contradicts Hatziefstathiou's claim

2  that he received a byline on the story.  Fact 61.

3  **K.      Hatziefstathiou's Recent Criminal Convictions and Imprisonment**

4        In 2015, Haftziefstathiou was convicted in Pennsylvania of three separate

5  counts of charges identified as "False Report to Police," under 18 Pa. C.S. §

6  4906(a).  Fact 109.

7        On October 21, 2021, after the ruling on Defendants' MTS, Hatziefstathiou

8  was convicted of two counts of forgery, two counts of identity theft, three counts of

9  unsworn falsification to authorities, and one count of tampering with public records

10  or information, relating to his creation of a fake, racist email and attributing it to a

11  Delaware County (PA) Adult Probation and Parole supervisor.  Fact 110.

12        On November 24, 2021, Hatziefstathiou was sentenced to two to four years

13  in prison for his October 2021 convictions.  Fact 111.

14  **L.      The Testimony of Patrick and Pia Whitesell**

15        Whitesell, Ms. Sanchez's ex-husband and the person Hatziefstathiou testified

16  in his March 23, 2021 declaration was *TNE*'s original source on the Affair, was

17  deposed in this action on March 16, 2022.  He testified unequivocally that he was

18  not a source to AMI for its reporting on the Affair, and that he only first met his

19  current wife, Pia Miller, in February of 2019 – six months after the supposed

20  August 2018 phone call during which Hatziefstathiou claims Howard told him

21  Whitesell and Pia Miller were having an affair (and reflected in Hatziefstathiou's

22  allegedly contemporaneous notes).  Pia Whitesell (formerly known as Pia Miller),

23  has also provided a declaration confirming that she first met Whitesell in February

24  of 2019.  Facts 112-114.

25

26  **M.      Sanchez's Second Amended Complaint and Dismissal of Howard**

27        On May 6, 2022, Sanchez filed his Second Amended Complaint, containing

28  the same single claim for defamation against the Press Release, but changing prior

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

references to "Pornographic Materials" to "Allegedly Pornographic Materials." The same day, Sanchez and Howard filed a Joint Stipulation to Dismiss Sanchez's claims against Howard with prejudice.  Facts 115-116.

### N.   Sanchez's Testimony and Statements

In paragraph 3 of his Second Amended Complaint, Sanchez alleges that, in or around July of 2018, Simpson contacted him and asked, "What's going on with Lauren and the billionaire?"  Sanchez alleges that Defendants already knew about the Affair and intended to go public with it.  In paragraph 12 of his declaration filed in this action on July 10, 2020, Sanchez stated that, "Shortly after July 18, 2019, Simpson called him and unintentionally revealed that AMI was looking into his sister's affair with Bezos.  When asked at his March 25, 2021 deposition what Simpson had said that led him to believe that AMI was looking into the Affair, Sanchez testified only that, "It was something along the lines of 'What's going on with your sister and the billionaire?'"  At his March 25, 2021 deposition, Sanchez testified that, prior to her affair with Bezos, his sister was having an affair with another billionaire.  Facts 117-120.

In paragraph 13 of his July 10, 2020 declaration, Sanchez stated that he met with Simpson in July of 2018 and "confirmed" that Defendants already had the story about the Affair.  When asked at his March 25, 2021 deposition if he could be specific about how he "confirmed" this, Sanchez testified only that "it's more of an impression that I had that day than anything specific."  Facts 121-122.

At his March 25, 2023 deposition, Sanchez confirmed that the reason he met in New York with Howard and Robertson in late October 2018 was to reveal the identities of the parties to the Affair.  Fact 123.  Sanchez confirmed in still other testimony that AMI had no knowledge of the identity of the billionaire until he revealed it to Howard and Robertson in New York on October 23, 2018.  Fact 124.

In a November 20, 2018 email exchange with Robertson and Howard, Sanchez stated: "[I]f there is anything you need for the story, just let me know and I

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1   will be happy to search through my files to see if any of the other texts, photos

2   and/or screenshots of Signal messages will help with what you need." Fact 125.

3          When asked at his August 2, 2022 deposition if he believed the Saudis

4   hacked Bezos' phone, Sanchez testified, "It goes along with my all-of-the-above-

5   but-not-me theory." Fact 126.  When asked if he recalled that, in documents he

6   produced in discovery, "he mocked the notion that Saudi Arabia was involved in

7   assisting the National Enquirer with respect to this reporting on Mr. Bezos,"

8   Sanchez testified: "I don't recall, but if I did, it was that they were sole source.  I've

9   always believed that, you know, again, all-of-the-above-but-not-me."  Despite his

10  "all of the above but not me theory," Sanchez testified that, as the Court has already

11  found, he was in fact *TNE*'s source.  Facts 127-128.  Sanchez also admitted at his

12  deposition that he has no personal knowledge that Whitesell provided AMI with

13  any photographs or texts relating to the Affair.  Fact 129.

14         In the Court's May 8, 2023 Order granting Ms. Sanchez's and Bezos'

15  motions to quash deposition and document subpoenas served by Sanchez in this

16  action, the Court stated:  "There is undeniably some evidence to suggest that

17  Plaintiff's motive in pursuing these subpoenas extended beyond his pursuit of a

18  defamation claim against AMI and Mr. Pecker.  As demonstrated by Plaintiff's

19  complaint against his former attorney, Mr. Jenkins, Plaintiff was 'cautiously

20  optimistic' that with subpoena power in this case, he could subpoena Mr. Bezos

21  and Ms. Sanchez and obtain a 'global settlement.'"  Facts 130-133.

22  **III.   ARGUMENT**

23       **A.   Legal Standard for Summary Judgment**

24         Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of

25  summary judgment . . . against a party who fails to make a showing sufficient to

26  establish the existence of an element essential to that party's case, and on which

27  that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

28  317, 322 (1986).  Where the moving party has the burden of proof at trial, "the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F.Supp.2d 1154, 1159 (C.D. Cal. 2007) (citing *Calderone v. United States*, 799 F.2d 242, 249 (6th Cir. 1986). The nonmoving party must respond to the motion with "significant probative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data . . . Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial." *Jacobson v. Schwarzenegger*, 650 F.Supp.2d 1032, 1044 (C.D. Cal. 2009) (citations omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B.   The First Or Only Source Statement Is True

The elements of a libel claim are: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *See Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). "The sine qua non of recovery for defamation . . . is the existence of falsehood." *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 283 (1974). A "public or private figure libeled by allegations relating to matters of public concern must prove those statements to be false." *Miller v. Nestande*, 192 Cal.App.3d 191, 198 (1987). "The plaintiff cannot be said to have carried this burden so long as the statement appears *substantially* true." *Vogel v. Felice*, 127 Cal.App.4th 1006, 1021 (2005) (emphasis in original). "Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) (quoting R. Sack, Libel, Slander, and Related Problems

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

138 (1980)). Defendants have provided overwhelming evidence that the First Or Only Source Statement, *i.e.*, the Press Release statement that Sanchez was AMI's first or only source for *TNE*'s reporting on the Affair, is true.  The overwhelming and uncontroverted evidence includes but is by no means limited to:

- Simpson's September 10 and 11, 2018 emails to Howard and Richardson about her tip from Sanchez (Fact 11);

- Sanchez's September 26, 2018 text to Simpson about "a Bill Gates-type, well-known billionaire who is married and having a year-plus affair with a B-list married celebrity" (Fact 15);

- AMI paying Sanchez $200,000 for the identity of the couple and documentary evidence of the Affair (Fact 43);

- Sanchez's October 23, 2018 meeting in New York with Howard and Robertson to reveal the couple having the Affair (Facts 37-41);

- Sanchez's November 21, 2018 meeting with Simpson where he showed her what he represented was a below-the-belt selfie Bezos had texted to Ms. Sanchez (Facts 52-53);

- Sanchez providing AMI with the couple's travel plans (Facts 46, 58);

- Sanchez admitting at his August 2, 2022 deposition that he was AMI's source for its reporting on the Affair (Fact 128).

It would strain credulity to the point of absurdity to believe – as Sanchez asks this Court – that the legion of emails exchanged at AMI about Sanchez being the first or only source for its Affair reporting were somehow fictional, cleverly manufactured by Defendants years after the fact to conceal the identity of another source.  Because the First Or Only Source Statement is true, Defendants are entitled

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

to summary judgment.

Moreover, the November 7, 2018 email from Howard to Sanchez referenced in the Court's decision on the MTS does not offer any evidence contradicting the conclusion that Sanchez was AMI's only source for the Affair story.  That email, in stating that AMI had been "investigating [Bezos] for weeks" was referring simply to the fact that, after October 10, 2018, AMI (through an agency it hired) had begun tailing Bezos, based solely on speculation from the information that had been provided by that point by Sanchez (including showing faceless photographs) that Bezos was the mystery billionaire.  Similarly, the email's reference to AMI having photos "prior to any deal" with Sanchez is consistent with the fact that the agency had taken photos of Bezos and Ms. Sanchez on October 18, 2018, **prior** to AMI's October 26, 2018 Exclusive Publishing Agreement with Sanchez.

C.    **The Statements in Hatziefstathiou's Declaration That Whitesell Was AMI's Original Source are Proven Falsities and Should Not Be Credited.**

The U.S. Supreme Court has held that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Here, Hatziefstathiou's declaration attesting to Whitesell's purported status as AMI's source for its reporting on the Affair should not be adopted by this Court because it is blatantly contradicted by voluminous and consistent documentary evidence demonstrating that Sanchez was AMI's first and only source for its reporting on the Affair.  Here, the record taken as a whole could not lead a rational trier of fact to find for Sanchez, such that there is no genuine issue for trial. *See Zenith Radio Corp.*, 475 U.S. at 586-87.

Beyond that, the testimony of Patrick and Pia Whitesell demonstrates that Hatziefstathiou's declaration contains obvious falsehoods, and demonstrably

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

fabricated evidence in the form of Exhibit 2 to the declaration, which Hatziefstathiou claims are handwritten notes of a purported August 10, 2018 telephone call with AMI's Howard. Hatziefstathiou tells a tall tale about Whitesell being AMI's actual source for the Affair, also engaged in his own affair with Pia Miller at the time, and supposedly wanting to use his purported knowledge of Bezos' affair with his then-wife Lauren Sanchez to his advantage by leveraging "A get out of divorce free card." Hatziefstathiou's statement in paragraph 11 of his declaration that Howard told him Whitesell was having an affair with Pia Miller is, without question, categorically false, as both Whitesell and Miller (aka Pia Whitesell) testified that they did not even meet until February of 2018, *six months after* Hatziefstathiou's August 2018 supposed notes about their affair.

Not surprisingly, there is absolutely no corroborating evidence supporting Hatziefstathiou's false claim that Whitesell was AMI's original source about the Affair. Simpson, Robertson, Howard, Whitesell, and Miller have all provided consistent testimony that Whitesell was not AMI's source – fully supported by a mountain of documentary evidence in the form of emails and text messages (with and about Sanchez) demonstrating that Sanchez was AMI's first and only source. As both this Court and any rational juror would understand, if AMI did already know about the Affair before Sanchez approached Simpson on September 10, 2018 with a tip about a billionaire having an affair, then, for example:

(i)     Robertson's September 9 and 10, 2018 emails to AMI reporters (asking for a "deep dive" on Bezos) would have mentioned the Affair (Facts 7, 9);

(ii)    Robertson would not have asked in his September 10, 2018 email to Ortega and Hatziefstathiou: "What angles can we pursue?" when reporting on Bezos (Fact 8);

(iii)   AMI would not have paid Sanchez $200,000 (Fact 43);

(iv)    Sanchez would not have texted Simpson on September 26, 2018 about "a Bill Gates-type, well-known billionaire who is married and having a year-plus

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1  affair with a B-list married celebrity" (Fact 15);

2      (v)    Tillett would not have suggested "Evan Spiegel" on September 26,

3  2018 as the possible identity of the mystery billionaire (Fact 14); and

4      (vi)   Simpson would not have asked Howard on October 16, 2018 if he

5  could reveal to her the identity of the billionaire after he learned it from Sanchez

6  (Facts 28, 31).

7      Given the mountain of evidence that blatantly contradicts the false yarn spun

8  by Hatziefstathiou – including the evidence that his claimed *TNE* bylines are fake

9  (Facts 102-108) – this Court should reject any consideration of Hatziefstathiou's

10 version of the facts when ruling on Defendants' Motion.  *See Scott*, 550 U.S. at

11 380.  *See also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (there

12 is no "genuine issue" where the only evidence presented is "uncorroborated and

13 self-serving" testimony); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.

14 2005) (affirming grant of summary judgment to defendants where plaintiff's

15 testimony was unsubstantiated and replete with improbabilities and

16 inconsistencies); *Pfeister v. RSUI Indem. Co.*, 2020 U.S. Dist. LEXIS 244835, at

17 *11 (N.D. Cal. Dec. 29, 2020) (granting summary judgment to defendants, citing

18 *Jeffreys*, and refusing to credit an "incredible account contradicted by a public-

19 record proceeding"); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th

20 Cir. 2002) (affirming summary judgment to defendants and noting that the Ninth

21 Circuit has refused to find a "genuine issue" where the only evidence presented is

22 uncorroborated and self-serving testimony); *Addisu v. Fred Meyer, Inc.*, 198 F.3d

23 1130, 1134 (9th Cir. 2000) (more than a mere scintilla of contradictory evidence is

24 required to survive summary judgment).

25     The fact that, after leaving AMI, Hatziefstathiou was convicted of crimes

26 that could not be more relevant to one's lack of credibility: two counts of forgery,

27 two counts of identity theft, three counts of unsworn falsification to authorities, and

28 one count of tampering with public records or information – for which he was

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1   sentenced to two to four years in prison (Facts 110-111) – only underscores why

2   the Court should reject entirely Hatziefstathiou's statements that are blatantly

3   contradicted by the record: no reasonable jury could believe him.

4        Even though Defendants do not bear the burden of proof as to the truth or

5   falsity of the First Or Only Source Statement[2] – Defendants have affirmatively

6   demonstrated that no reasonable trier of fact could find other than for Defendants.

7   The Court should therefore grant Defendants' motion for summary judgment.

8   *Celotex Corp.*, 477 U.S. at 323; *Zenith Radio Corp.*, 475 U.S. at 586-87.

9        **D.   Even If Sanchez Was Not AMI's First Or Only Source,**
         **The First Or Only Source Statement Is Not Materially False**

10       The First Amendment requires a showing of more than literal falsity in order

11  for a plaintiff to prevail on a defamation claim.  The falsity must also be shown to

12  be material.  *See Masson*, 501 U.S. at 517.  As instructed by the Supreme Court, a

13  "statement is not considered false unless it 'would have a different effect on the

14  mind of the reader from that which the pleaded truth would have produced.'"  *Id*.

15  (citation omitted).  The critical inquiry is whether the reputational harm occasioned

16  by the alleged falsehood is material.  The requirement that a falsehood be material

17  derives from defamation law's core purpose to protect an individual's reputation.

18  *See Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 252 (2014) ("In

19  defamation law, the reputational harm caused by a false statement *is* its effect on a

20  reader's or listener's mind.") (emphasis in original).

21       This Court has already determined that, despite Sanchez's repeated denials,

22  the Source of Pornographic Materials Statement, *i.e.*, the statement that Sanchez

23  provided AMI with explicit text messages and private photographs exchanged

24  between Bezos and his sister, is true.  Doc. 66 at 7.  As the "gist or sting" of a

25

26  _____

27  [2] The U.S. Supreme Court has long held that the First Amendment mandates that
    the plaintiff bears the burden of proving material falsity whenever the publication at

28  issue relates to a matter of public concern or was published by a member of the
    media.  *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

statement is understood as the effect it has on the mind of the reader (*Masson*, 501 U.S. at 517), the negative impression left by the Source of Pornographic Materials Statement is that Sanchez betrayed a family trust.

Despite the Court's finding that the Source of Pornographic Materials Statement is true, Sanchez argues that he was nevertheless defamed by the separate statement that he provided all of the materials for AMI's investigation into the Affair.  Under libel law, this is a distinction without a difference, because the First Or Only Source Statement is ***not materially false***.  A defendant need only prove that the statement, "although not literally true in every detail, is substantially true in its implication, that the gist of the article, when read as a whole, is true." *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927 (C.D. Cal. 1982).

*Partington v. Bugliosi*, 56 F.3d 1147, 1149-51 (9th Cir. 1995) is particularly relevant here.  In that case, Earle Partington, a well-known criminal defense attorney, sued book and movie defendants for allegedly portraying him as an incompetent attorney in his defense of alleged murderer Buck Walker during the Palmyra trials in the 1980's.  Partington conceded that much of defendants' portrayal of him as poorly representing his client was true, but that some of the depicted events were inaccurate.  The Ninth Circuit affirmed the district court's summary judgment dismissal of the defamation claim, finding that the admittedly true statements would already lead a reader to come to the conclusion that Partington represented his client poorly, such that the additional details challenged as false were just other examples of portrayed behavior that tended to support the same conclusion.  The court reasoned: "We have assumed . . . that Bugliosi's book portrays Partington as having represented Walker poorly.  The additional charge adds little if anything to the gist of Bugliosi's criticisms.  It merely sets forth a comparatively minor incident that tends to support the basic protected characterization."  56 F.3d at 1161.

Here, the additional statement that, beyond having provided AMI with the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

so-called Pornographic Materials relating to the Affair, Sanchez was the first or only source for AMI's reporting on the Affair adds little if anything to the gist of Sanchez's conduct.  As in Partington, "[i]t merely sets forth a comparatively minor incident that tends to support the basic protected characterization" (*id*.), here, that Sanchez betrayed his sister.  That betrayal was well-established by Sanchez's providing of the so-called Pornographic Materials.  Because the First Or Only Source Statement is not materially false, Defendants are entitled to summary judgment for this separate and independent reason.

## IV.  CONCLUSION

Defendants respectfully submit that, given the uncontroverted evidence that the First Or Only Source Statement is true, and certainly not materially false, their Motion should be granted.

DATED:    June 8, 2023            Robert S. Gutierrez
                                 James A. Mitchell (Admitted *Pro Hac Vice*)
                                 **BALLARD SPAHR LLP**

                                 By:   /s/ Robert S. Gutierrez
                                     ROBERT S. GUTIERREZ
                                 Attorneys for Defendants DAVID PECKER
                                 and WORLDWIDE MEDIA SERVICES
                                 GROUP, INC. (successor in name to AMI)

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2909
Telephone: 424.204.4400